```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

------------------------------X  Docket#
FRANCESCO PORTELOS,           :  12-cv-03141-RRM-VMS
          Plaintiff,          :
                              :
   - versus -                 :  U.S. Courthouse
                              :  Brooklyn, New York
CITY OF NEW YORK, et al.,     :
          Defendant           :  December 19, 2012
------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**

**For the Plaintiff:**      Bryan D. Glass, Esq.
                            Glass Krakower LLP
                            100 Church Street, 8th Fl.
                            New York, NY 10007


**For the Defendant:**      Jessica Giambrone, Esq.
                            New York Law Dept.
                            100 Church Street
                            New York, NY 10007


**Transcription Service:**  **Transcriptions Plus II, Inc.**
                            740 Sharon Road
                            Copiague, New York 11726
                            Transcriptions2@verizon.net


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

```
                          Proceedings                           2
 1              THE CLERK:  Portelos v. City of New York, et
 2   al., docket number 12-cv-03141, Civil Cause for an
 3   Initial Conference before Judge Scanlon.
 4              Will the parties please state their appearance
 5   for the record starting with the plaintiff.
 6              MR. GLASS:  Yes, good afternoon.  Bryan Glass,
 7   from Glass Krakower LLP for plaintiff Francesco Portelos,
 8   who is here to my right.
 9              THE COURT:  And for the defendant?
10              MS. GIAMBRONE:  For the defendants, Jessica
11   Giambrone, Assistant Corporation Counsel.
12              THE COURT:  Okay.  So I was getting ready for
13   this conference the other day and I saw that the motion
14   to dismiss had been filed which is why I gave the parties
15   the option of appearing by phone, which Corporation
16   Counsel took me up on, I can understand the defendant and
17   counsel were -- sorry, plaintiff and counsel were in the
18   neighborhood.  So, they're here in person.
19              So, discovery should or shouldn't go forward?
20   Is there some background here as to why it's going to go
21   forward while there's a pending motion to dismiss and --
22              MR. GLASS:  Yes, if I could be heard on that
23   one.
24              THE COURT:  Can you just pull the mic, so
25   she'll be able to hear you and it will be better on the
```

Proceedings                                                    3

1  recording?
2          MR. GLASS:  Yes, Ms. Giambrone wasn't on the
3  case when we first had the initial -- what happened is
4  that we filed the complaint, Christopher Seacord was the
5  previous assistant corporation on the -- counsel on the
6  case.  He wrote a letter asking for a premotion
7  conference --
8          MS. GIAMBRONE:  I'm sorry, I'm just having
9  difficulty hearing.
10         THE COURT:  All right.  Let's see.  Can you
11 just speak --
12         MR. GLASS:  I'll try to speak a little slower
13 and --
14         THE COURT:  Can you hear that?
15         MS. GIAMBRONE:  Yes.
16         THE COURT:  Okay.
17         MR. GLASS:  All right.
18         MS. GIAMBRONE:  Thank you.
19         MR. GLASS:  So what happened is that Ms.
20 Giambrone's predecessor, Mr. Seacord, was originally
21 assigned to the case.  I understand he left the Law
22 Department since.  When he got the complaint, he wrote to
23 Judge Mauskopf and asked if -- permission for a premotion
24 conference to move to dismiss the complaint.  It's a
25 First Amendment retaliation complaint.  And Judge

Proceedings                                                    4

1   Mauskopf had us in for a conference a few months ago.  I
2   don't remember the specific date but -- so Mr. Seacord
3   appeared, I appeared before Judge Mauskopf.  We had a
4   little bit of a discussion.  Judge Mauskopf discouraged
5   Mr. Seacord from filing the motion but said that she
6   couldn't stop him but she said she was not inclined to
7   grant it.  She would not be staying discovery.  And so
8   that we should contact the magistrate assigned to move
9   forward on the case and I understand the magistrate judge
10  changed on this, as well.  Judge Azrack had originally
11  been scheduled for -- to have a conference in this case
12  in September which she canceled, I guess, when it got
13  reassigned to your Honor.
14          So, I made several attempts after that
15  conference to get this conference, so we could start on
16  discovery.
17          In the interim, the City did make the motion
18  anyway to move to dismiss which is now fully briefed and
19  before Judge Mauskopf but it's just that the timing of
20  events has led to us having a conference about the time
21  the motion was submitted but we're prepared to move
22  forward.  We think this case -- I think Judge Mauskopf
23  made it pretty clear that you know, she was not inclined
24  to grant the motion.  That we should contact the
25  magistrate judge.  She said I, as the plaintiff's

Proceedings                                                    5

1   counsel, should contact the magistrate judge to move
2   forward on discovery and we've been anxious to do so.
3            And, you know, it hasn't gotten any better for
4   Mr. Portelos, so given, you know, the passage of time,
5   the City's still sort of in this hold position with his
6   status and reassignment and with that -- no end in sight,
7   and so we want to move forward on this case because we
8   feel that this is a clear case of whistle blower
9   retaliation.  I mean, there's really not even a contest
10  about how all the adverse things that have happened to
11  him have occurred since he made a complaint about some of
12  the school leadership team activities.  And he had raised
13  some concerns about the school.
14            He was a star at the school before he raised
15  this complaint.  And since then, he's been reassigned
16  from his duties.  He's lost significant per session
17  monies.  He's lost summer school.  He's been reassigned
18  across the City for no reason and there's a lot of things
19  at play here that we want to get into to find out why
20  he's in this status.  And this case has even gotten some
21  publicity in the newspaper as you might have seen some of
22  it about, you know, him raising the question about why
23  he's assigned in a rubber room with no end in sight, you
24  know?
25            And he's made every effort to try to move this

```
                         Proceedings                          6
 1  case along, to have the City move the case along and he's
 2  just stuck in this limbo.
 3           So, you know, we're prepared to move forward.
 4  We did the 26(a)(1) and Ms. Giambrone and I did exchange
 5  your initial conference questionnaire and we could give
 6  that to you.
 7           THE COURT:  Yes, can you hand it up?
 8           MR. GLASS:  And so we filled it out jointly and
 9  I think we're prepared to move forward.
10           THE COURT:  Okay.  Ms. Giambrone, do you agree
11  that that's the -- in terms of discovery going forward,
12  that's the posture?
13           MS. GIAMBRONE:  Yes, I mean I will admit that I
14  have not heard every single word clearly but I believe
15  the crux of what counsel was saying was that
16  Judge Mauskopf had indicated to my predecessor she would
17  not stay discovery and that is my understanding.
18           THE COURT:  Okay.
19           MS. GIAMBRONE:  So, based upon that we are
20  prepared to proceed.
21           THE COURT:  All right.  So, he just handed up
22  -- what's the proposed draft, initial conference
23  questionnaire.  So, initial disclosures have already been
24  done?  I mean on this it's proposed or not --
25           MS. GIAMBRONE:  We have not, your Honor, and I
```

```
                           Proceedings                         7
 1   actually did file a letter motion earlier based upon
 2   question 1 of the initial conference questionnaire that
 3   we should explain why we have not yet --
 4            THE COURT:  Okay.
 5            MS. GIAMBRONE:  -- submitted Rule 26(a)(1)
 6   disclosures.
 7            THE COURT:  Well, I last looked at ECF last
 8   night, so --
 9            MS. GIAMBRONE:  Yes.
10            THE COURT:  -- do you want to just give me the
11   quick version?
12            MS. GIAMBRONE:  Sure, your Honor.  I mean
13   essentially our office was closed for a week during the
14   hurricane --
15            THE COURT:  That's fine.
16            MS. GIAMBRONE:  -- and the last couple of weeks
17   have just been really jammed up and I am working part-
18   time for the moment.
19            THE COURT:  There have been -- I understand
20   that the Corporation Counsel is adversely affected by the
21   storm, so that's fine.  So is this January 9 date
22   practical?
23            MR. GLASS:  Well, we -- the plaintiff has
24   already disclosed, so --
25            THE COURT:  All right.  So how about from the
```

```
                         Proceedings                              8
 1   City?
 2             MS. GIAMBRONE:  Yes, your Honor.
 3             THE COURT:  All right.  So, 1/9/13 for initial
 4   disclosures and then the initial document requests and
 5   interrogatories February 1, 2013.
 6             MS. GIAMBRONE:  Yes.
 7             MR. GLASS:  Is that the deadline for serving or
 8   for answering?
 9             THE COURT:  Serving.
10             MR. GLASS:  Okay.  Well, we'll do ours before
11   that but that's fine.
12             THE COURT:  So then the clock just starts on
13   the thirty days.
14             MR. GLASS:  Okay.
15             THE COURT:  Okay?  Yes, if you get them out,
16   then they have to respond.  All right.  Is twenty-five
17   interrogatories sufficient?
18             MR. GLASS:  That should be fine.
19             THE COURT:  All right.
20             MS. GIAMBRONE:  Yes.
21             THE COURT:  Who else would be joined here?
22   Let's see you have March 1, 2013 is the joinder date.
23   What would that be?
24             MR. GLASS:  I don't think there would be a
25   joinder additional parties.  I think there might be --
```

```
                          Proceedings                            9
 1   well, there's an AP involved perhaps.  I don't know if
 2   we're going to do anything but we would like to at least
 3   reserve the right to do it if we --
 4             THE COURT:  Is the investigative agency
 5   involved in this?
 6             MR. GLASS:  Well, the -- yes, I mean SCI which
 7   is -- I don't know if they have to be named separately
 8   though.  I mean, it's a DOE action taking this but I
 9   guess, I mean --
10             THE COURT:  So you should decide --
11             MR. GLASS:  I guess I should look into -- yes.
12             THE COURT:  -- whether you are or you aren't
13   but sometimes I see them listed separately.  I don't
14   know.
15             MR. GLASS:  Yes, I mean I don't know.
16             THE COURT:  I just read the complaint and I see
17   there's a --
18             MR. GLASS:  I mean he works for the --
19             THE COURT:  -- couple of paragraphs about SCI,
20   right?
21             MR. GLASS:  Yes.  He does work for DOE but SCI,
22   I guess is an external agency that I think they consider
23   part of the City of New York.  Did I name the City as a
24   defendant?
25             THE COURT:  That's your legal question to deal
```

Proceedings                                             10

1  with but --
2          MR. GLASS:  Well, but the City of New York is a
3  defendant and my understanding is the SCI is an agency of
4  the City of New York.  I'll look into it but I am sure --
5          THE COURT:  I'm not offering any opinion.  I
6  just want to know who else might be added.
7          MR. GLASS:  Okay.
8          THE COURT:  The 3/1/13 -- I mean is there
9  anybody else besides them?  Do you need anything from
10 discovery that would tell you that you're -- anyone else
11 you want to bring in?
12         MR. GLASS:  As far as maybe additional parties?
13         THE COURT:  Uh-hum.
14         MR. GLASS:  I mean, I think I know who the
15 parties are.  I don't really --
16         THE COURT:  All right.  So, we'll just go with
17 that 3/1/13.  You know, you're both proposing only four
18 depositions, so it doesn't really -- you know, as long as
19 you're not over the ten, you don't really need to deal
20 with it now.  So you're saying close of fact discovery,
21 6/3/13.
22         MR. GLASS:  Yes, that's --
23         THE COURT:  Is that practical?  It seems like
24 it should be.
25         MS. GIAMBRONE:  Yes, it should be.

```
                        Proceedings                      11
```

1           THE COURT:  Okay.  Expert witnesses?
2           MS. GIAMBRONE:  I don't think they're
3  applicable.
4           MR. GLASS:  I mean, I originally said no.  You
5  know, he has had some medical related damages to this, so
6  I want to reserve the possibility of it.
7           THE COURT:  But they would be the treating
8  physicians or --
9           MR. GLASS:  Yes.
10          THE COURT:  All right.  I think I consider them
11 to be witnesses that should fall before the fact
12 discovery deadline because you know about them.
13          MR. GLASS:  Okay.
14          THE COURT:  You can produce the records.  If
15 you're doing a summary expert report, you know, you can
16 do that.  If somehow your treating physician becomes
17 somebody who is really testifying in an expert capacity
18 above -- way above and beyond, you know, what he or she
19 actually treated for, you can come back but if they're
20 just treating physicians, you should deal with them in
21 the fact discovery period.
22          MR. GLASS:  Okay.
23          THE COURT:  So then really no experts, at least
24 what you look at now.  So obviously there's the motion to
25 dismiss pending but summary judgment, if the motion to

```
                       Proceedings                        12
 1  dismiss is not successful.
 2              MS. GIAMBRONE:  Yes.
 3              THE COURT:  Okay.  So, let me just look at
 4  Judge Mauskopf's rules for one second, although you all
 5  probably have looked at it more recently than I have.
 6              (Pause)
 7              THE COURT:  All right.  So you need to ask for
 8  a premotion conference with her.  So, let's say -- let me
 9  just pull up the calendar here.  Let's say by 6/28.  It's
10  just a three paged letter and then you should look at her
11  rules for the timing for the response.
12              MS. GIAMBRONE:  Yes.
13              THE COURT:  And then let's have a status
14  conference.  Let me just find a date.  Any preferences?
15  The week of May 13th?  It's the middle of the month?
16              MS. GIAMBRONE:  No, that should be fine for me.
17              THE COURT:  Okay.  So let's --
18              MR. GLASS:  Can we have the afternoon?
19              THE COURT:  The afternoon?  Let's do 2:15 on
20  May 14th.  So, that will be May 14th, which is the
21  Tuesday.  And Ms. Giambrone, can you call with the
22  plaintiff on the phone?
23              MS. GIAMBRONE:  I'm sorry?
24              THE COURT:  Can you call -- for that
25  conference, the 2:15 --
```

```
                          Proceedings                      13
 1              MS. GIAMBRONE:  Yes.
 2              THE COURT:  -- call with plaintiff's counsel
 3  and the number here is 718-613-2300.
 4              MS. GIAMBRONE:  I'm sorry, was that at 2:15,
 5  your Honor?
 6              THE COURT:  Yes.
 7              MR. GLASS:  That would be a phone conference,
 8  you said?
 9              THE COURT:  Phone conference.
10              MR. GLASS:  Okay.
11              THE COURT:  And it will be just to see if there
12  are any outstanding discovery issues.  I mean, if you
13  know significant ones or any, you know, come up before
14  that are appropriate to deal with ahead of that, feel
15  free to put in a letter in.
16              MR. GLASS:  Well, I would like to maybe just
17  raise one concern.
18              THE COURT:  Wait. Hang on.  Let's just finish
19  this schedule for a second.  Is there any -- is e-mail an
20  issue in this case?  Anyone?  Electronic discovery?
21              MS. GIAMBRONE:  Yes, I think there might be.
22              THE COURT:  All right.  Do you have an
23  electronic discovery plan, proposed order?  No.  All
24  right?  Let's say by -- we should get one together by
25  January 16th, if you need one.
```

```
                          Proceedings                          14
```

1    MR. GLASS:  I'm sorry.  I'm not that familiar
2    with what's involved with that?
3          THE COURT:  Just look -- you just need to come
4    to an agreement on how you're going to do the electronic
5    discovery.  So, for example, if they are asking for, you
6    know, all e-mails that your client sent relating to X,
7    you know, how you're going to locate them.  Are you just
8    going to give them access to the e-mail account?  Are you
9    going to run a search?  Are you going to do a term
10   search?  Are you going to print out all the e-mails?  Are
11   you going to do the metadata for the different --
12         MR. GLASS:  I assume that works both ways,
13   though, right?  I think --
14         THE COURT:  Yes, it does.
15         MR. GLASS:  It's not going to be so much an
16   issue I think for us turning over our e-mails but the
17   City might have some issues, I guess.
18         THE COURT:  I don't --
19         MR. GLASS:  There's a lot of --
20         THE COURT:  I don't know.  I mean, I can't tell
21   from the scenario.  I mean, I see there's some union
22   related activities, I mean with those e-mails.  It's all
23   speculation but just by the 16th, because you're issuing
24   these requests for interrogatories by the 1st of the next
25   month and I think in shaping them, you need to know what

Proceedings                                                15

1   you are really looking for in term -- or how you're going
2   to get what you're looking for.  Otherwise, the
3   interrogatories and the document requests become
4   impractical.
5           You said you wanted one issue -- if it's short,
6   I will deal with it now, if it's not, I won't and we'll
7   find another time just because I want to pick up the
8   settlement conference that's ongoing.
9           MR. GLASS:  Yes, it's just my experience with
10  these kind of cases with the City, since a lot of this
11  delves into ongoing investigations that are on both
12  sides, you know, he filed some and they have some against
13  him -- like for example, Andrew Gordon (ph.) is the HR
14  director, I believe, at the Department of Education.  We
15  have e-mails from him suggesting he is responsible for
16  his reassignment.  Are they going to object to producing
17  Andrew Gordon, for example, who --
18          MS. GIAMBRONE:  I'm sorry, your Honor, I am
19  really having trouble hearing.
20          THE COURT:  Yes, so what he is saying is that
21  in these kinds of cases, he's -- discovery has run up
22  against some problems because there's ongoing
23  investigations of complaints made by either side and the
24  example he was giving was somebody named Andrew Gordon,
25  who is in the human resources department with the DOE.

```
                         Proceedings                     16
 1            MS. GIAMBRONE:  Right.
 2            THE COURT:  So, is the City going to object to
 3  either producing him or object to other production
 4  issues?
 5            MS. GIAMBRONE:  I mean, if there's a pending
 6  investigation, I am not quite sure if the agency might
 7  have -- I mean, the Office of School Investigations might
 8  have issues divulging the contents of those
 9  investigations.
10            THE COURT:  Yes, I think I -- I mean, I
11  appreciate that it's flagged but I think what it means is
12  sort of twofold.  You need to have your own conversation
13  -- you know, get the discovery requests out there, see
14  what the responses are, have -- and then twofold, meaning
15  have your conversations with Corp Counsel.  Corp Counsel,
16  you have it with plaintiff's counsel and then come to me
17  if there's an issue.  But I think these kinds of
18  investigative privileged issues, I can't decide it in the
19  abstract.
20            MR. GLASS:  Yes, no, I was just --
21            THE COURT:  They are too fact specific and so
22  -- but I think it is -- you're both on notice about
23  bringing these things, you know, forward earlier on
24  because they can be complicated and slow things down.
25            MR. GLASS:  What would be the best procedure
```

Proceedings 17

1 because I anticipate, for example, let's say I want to
2 get a higher level official at SCI deposed and the City
3 objects, what -- how would you prefer we bring that to
4 your attention?
5     THE COURT: You can write a letter, put it in a
6 letter and either ask --
7     MR. GLASS: Okay.
8     THE COURT: -- you can ask for a conference if
9 you need a conference or just put a letter in and the
10 City will have under the local rules, a couple of days to
11 respond and then either all decide based on the letters
12 or have another telephone conference or in person.
13     MR. GLASS: Okay.
14     THE COURT: But my experience is those are so
15 fact specific to your -- the plaintiff's need for the
16 information, the status of the investigation and the
17 privilege or you know, interests that the City is trying
18 to protect anticipating it doesn't help except --
19     MR. GLASS: Yes, right.
20     THE COURT: -- for everybody to get going.
21     MR. GLASS: I expect it will come up in this
22 case.
23     THE COURT: Okay.
24     MR. GLASS: I just want to know how to bring it
25 to your attention.

```
                           Proceedings                          18
 1          THE COURT:  Yes, the letters are fine.
 2          MR. GLASS:  Okay.
 3          THE COURT:  All right.  Anything else?  No.
 4          MR. GLASS:  I think that's about it.
 5          THE COURT:  No.  Thank you all for coming.
 6          MS. GIAMBRONE:  Thank you, your Honor.
 7          THE COURT:  All right.  Happy New Year.
 8          MS. GIAMBRONE:  Same to you.
 9              (Matter concluded)
10                    -o0o-
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

19

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **20th** day of **February**, 2013.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.