UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

FRANCESCO PORTELOS,

                Plaintiff,

-against-

CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF EDUCATION; DENNIS WALCOTT, CHANCELLOR OF NEW YORK CITY DEPARTMENT OF EDUCATION; LINDA HILL, PRINCIPAL OF I.S. 49, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; ERMINIA CLAUDIO, IN HER OFFICIAL AND INDIVIDUAL CAPACITY AS DISTRICT SUPERINTENDENT,

                Defendants.

**SUPPLEMENTAL**

**COMPLAINT**

ECF CASE

12 CV 3141 (RRM)(VS)

      Plaintiff FRANCESCO PORTELOS, by his attorneys, GLASS KRAKOWER LLP, as and for his Supplemental Complaint against Defendants, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

      1.     Plaintiff brings this action seeking monetary and equitable relief based upon Defendants' violations of 42 U.S.C. Section 1983 and New York Civil Service Law Section 75-b (hereinafter "CLS § 75-b") as a result of maltreatment and retaliatory actions taken against him as a teacher employed by Defendants since reporting school administrators, including his school principal Linda Hill, for various allegations of fraud and misconduct at the school, including, but not limited to, recent retaliatory actions initiated by Defendants through the New York State Education Law 3020-a process to seek termination of his employment.

1

2. Plaintiff seeks economic and compensatory damages and punitive damages to the extent allowable by law, and other appropriate legal and equitable relief pursuant to federal, state, and city law.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions.

4. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the primary unlawful discriminatory conduct occurred at a school within the County of Richmond in the State of New York and Plaintiff is a resident of the County of Richmond.

5. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6. This Court has supplemental jurisdiction over Plaintiff's state and city law claims under 28 U.S.C. § 1367(a).

7. Plaintiff previously served a Written Verified Notice of Claim on Defendants regarding his state and city law claims, which has not yet been adjusted to date.

## PARTIES

8. Plaintiff is a resident of the State of New York, County of Richmond, City of New York.

9. At all times relevant herein, Plaintiff was a "public employee" of Defendants within the meaning of New York State Civil Service Law § 75-b(1)(b).

10. At all times relevant herein, Defendant New York City Department of Education ("NYCDOE") was a "public employer" within the meaning of New York State Civil Service Law § 75-b(1)(a).

11. At all times relevant herein, Defendant Dennis Walcott was the Chancellor of the New York City Department of Education.

12. At all times relevant herein, Defendant Linda Hill was the principal of Berta Dreyfus I.S. 49, a school within the New York City Department of Education.

13. At all times relevant herein between January 2012 and August 2013, Defendant Erminia Claudio was the superintendent of Staten Island's District 31, a district within the New York City Department of Education.

14. All defendants routinely conduct business within the Eastern District of New York.

## STATEMENT OF FACTS

15. Up until the 2011-12 school year, Plaintiff had a documented stellar performance record since he commenced employment as a teacher with the NYCDOE in September 2007.

16. After a successful career in Environmental engineering and inspection, Plaintiff began work as a Science Technology Engineering and Math ("STEM") teacher for the NYCDOE at Berta A. Dreyfus I.S. 49, a middle school in Staten Island, NY, under the supervision of Principal Linda Hill. He received stellar performance reviews, and was praised by the principal and others for starting a school-based website for the school among many other achievements.

17. Beginning in September 2011, Plaintiff began attending School Leadership Team ("SLT") meetings at the school.

18. On or about December 13, 2011, Plaintiff was taking minutes for the monthly SLT meeting. He inquired as to why the school's Comprehensive Education Plan ("CEP") and budget had not been reviewed at all for the last four months. In response, Principal Hill stated that she had already submitted these documents in December 2011.

19. After researching the Chancellor's Regulations and New York State Education Law, Plaintiff believed that there were violations regarding the adoption of the CEP and budget at the school. Consequently, he notified SLT Chairperson Susanne Abramowitz and United Federation of Teachers ("UFT") Chapter Leader Richard Candia of these violations. Yet, no steps were ever taken to rectify or address these violations.

20. In January 2012, shortly after raising questions about these fraudulent activities at the school, Plaintiff suddenly began facing a hostile work environment at the school from school administration. For example, he began having his class lessons questioned and criticized by administration for the first time, after years of positive praise, as well as experiencing repeated verbal abuse from the administration.

21. Also in January 2012, Plaintiff began observing incidents of double dipping by the school administration. Specifically, Plaintiff raised concerns about budget allocations, the Principal's after school per session activities, and the Assistant Principal's practice of having her timecard locked up in a drawer.

22. Plaintiff reported these activities to the Office of the Special Commissioner of Investigation ("SCI") on January 26, 2012, via an anonymous email. He also provided

SCI with three years worth of school activities to cross-reference with time sheets to document the fraudulent activities by school administration.

23.     On January 27, 2012, Principal Linda Hill fully suspended the account access for the website Plaintiff owned and ran for the school's use.

24.     On or about January 29, 2012, Principal Linda Hill sent a lengthy email to the entire staff making negative references about Plaintiff including calling him "divisive". Further, on or about January 29, 2012, Plaintiff sent an email to District 31 Superintendent Erminia Claudio requesting her intervention regarding the issues raised at the December 13, 2011 SLT meeting. Plaintiff did not realize, at the time, that the allegations of double dipping also may have involved Superintendent Claudio, as her required approval signature was absent from every per session request submitted by Principal Linda Hill. Superintendent Claudio assured Plaintiff that she would speak to Principal Hill about this. However, within 24 hours after their communications, Plaintiff received his first two summonses for disciplinary meetings, and the first three of over 30 investigations were called in against him to various DOE investigative agencies, of which Plaintiff was the subject or target.

25.     Despite Plaintiff's letter to SCI being reported by him as anonymous, the retaliatory actions towards Plaintiff suddenly and dramatically intensified after his email to SCI and his communications with Superintendent Claudio. His personal email and website, which he had developed specifically for the school, were suspended, and he received three unwarranted disciplinary letters within 10 days in February 2012. Further, Principal Hill specifically told Plaintiff that she knew he had been inquiring about her per session activities to Superintendent Claudio.

26. On or about February 28, 2012, SCI investigators came to Plaintiff's school and seized a computer from his classroom. They also came to his home to seize school equipment that he had been authorized by the school to take home for lessons and research.

27. This pattern of harassment continued in March 2012. Plaintiff created a website where he would publicly chronicle the workplace bullying he was now being subjected to. On March 9, 2012, school administration discovered the Plaintiff's site, www.protectportelos.org, and initiated an investigation with SCI falsely claiming it violated DOE policy. Plaintiff was out on mandatory jury duty for the next four school days and returned on Friday, March 16, 2012. Immediately upon his return, he received a 90 minute teaching observation from school administration, and subsequently his first ever Unsatisfactory-rated observation report.

28. On or about March 19, 2012, District 31 Superintendent Erminia Claudio requested that Plaintiff be immediately removed and reassigned from the school building. According to former NYCDOE Executive Director of Human Resources this request was not approved, because there were not enough allegations to warrant the removal.

29. In late March and early April of 2012, several more investigations were initiated where the Plaintiff was the subject.

30. On or about April 18, 2012, Plaintiff reported corporal punishment allegations against Assistant Principal Denise Diacomanolis and False Accusation allegations against SLT Chairperson, Susanne Abramowitz, and UFT Chapter Leader Richard Candia, to the Special Commissioner of Investigation ("SCI") and Office of Special Investigation ("OSI").

6

31. In retaliation for Plaintiff's reports to these agencies, on or about April 26, 2012, Plaintiff received a letter from NYCDOE Executive Director Of Human Resources, Andrew Gordon, not to report to class because he was under investigation. As of that date, Plaintiff had been reassigned from his teaching duties to a reassignment center, despite no disciplinary charges being filed against him at that time. He has not been allowed to return to retrieve his personal possessions from his classroom, and as of May 2012, his NYCDOE email and payroll/benefits accounts have been suspended so that he cannot receive official NYCDOE correspondence. In addition, his personal email account has been blocked from sending to any NYCDOE email account, and he also has been blocked from emailing the school staff on a separate school email account.

32. Plaintiff was initially reassigned to the Petrides Complex located a few minutes from his house and school. After two days, Superintendent Erminia Claudio and other staff, located in the same complex, made false allegations about the Plaintiff's behavior and he was sent to another office 6 districts, two boroughs and 20 miles away for over a year. Plaintiff's initial assignment in the new location was a small basement storage room with only two small gated windows.

33. Despite Plaintiff being impugned repeatedly by school administration and even being removed from duties at the school and transferred to another borough, Plaintiff was elected the United Federation of Teachers' school chapter leader by the teachers of I.S. 49 on June 13, 2012, beginning in the 2012-13 school year for a three year term. He has also survived several recall elections at the school in attempts to remove him as chapter leader of I.S. 49 despite not being in the school for over 550 days.

34. On or about June 6, 2012, Plaintiff filed for protection under the Whistleblower Law, New York City Administrative Code §12-113 with SCI.

35. On or about August 24, 2012, Plaintiff received notice that he was to continue to report to a district office located more than six districts and two boroughs away from his school and home.

36. Upon arrival to his reassignment center, on or about September 4, 2012, the site supervisor placed him in isolation in a conference room. Plaintiff was instructed that the isolated conference room was to be his assigned location and that he was not to sit or interact with the other employees.

37. Upon information and belief, newly reassigned teachers to Plaintiff's reassignment center were instructed by Ovella Wilson, the Director of Operations of Children First Network 210, to "stay away" from Plaintiff because he is "trouble." All other reassigned teachers were placed together across the hall while Plaintiff was left in solitary confinement. Newspaper clippings with the Plaintiff's picture and a big red flag were also posted around his confinement. He brought these newspaper clippings to his supervisor, Shawn Thompson, who made no effort to remove them.

38. Throughout the Fall of 2012, Plaintiff continued to chronicle his wrongful reassignment on his blog and via various social media outlets in an effort to raise public awareness regarding the misuse of taxpayer funds and maltreatment of educators.

39. On or about October 4, 2012, Plaintiff set up an Android tablet with a camera to video his isolation and the fact that he was being paid not to teach while simultaneously continuing to receive no disciplinary charges. Plaintiff also shared the video recording live on the Internet. This spurred a media frenzy and Plaintiff appeared on several news

channels, newspapers, and several internet news sites. In response, the NYCDOE released a press statement stating, among other things, that "Francesco Portelos has been extremely difficult to work with...."

40. On or about October 9, 2012, in response to the heightened media attention to the reassignment centers after the public became aware of the continued existence of these locations of educator exile, Plaintiff was given the task of writing lesson plans for the substitutes who were teaching his classes. After a month of writing lesson plans, he was informed that his substitutes were never given his lesson plans and he was just given the meaningless task to keep him busy and appease the public with most of the lesson plans never collected.

41. On or about November 6, 2012, an SCI investigator informed Plaintiff that he was now the subject of a new investigation regarding a website the Plaintiff owns.

42. On or about December 6, 2012, Plaintiff spoke at the Staten Island District 31 Community Education Council (CEC) in order to raise awareness about misconduct at I.S. 49, including that relating to a video of an assistant principal at the school inappropriately touching children. Upon information and belief, because CEC meetings are audio recorded, Superintendent Erminia Claudio submitted the recording of Plaintiff to SCI in an attempt to add more allegations against him.

43. On or about January 7, 2013, Plaintiff attended a public CEC meeting for District 31 and publicly spoke about security issues at Berta Dreyfus IS 49. The following day, he also wrote about these security concerns on his website. Four months later, on or about May 1, 2013, in an interview with an OSI investigator, Plaintiff was informed that Principal Linda Hill had submitted his January 8, 2013 blog post about security concerns to

9

OSI and he was now the subject of a new investigation. Audio recordings of his public speech were again sent to SCI by Superintendent Erminia Claudio to be used for additional allegations against Plaintiff.

44. On or about February 5, 2013, at an SLT meeting, Defendant Principal Linda Hill furnished a document drafted by a DOE attorney stating that no SLT members were to communicate with Plaintiff about agenda items, share minutes with him, or discuss any items about the SLT with him. The SLT falls under the New York State Open Meetings Law and this letter was in violation of that law. Plaintiff was not allowed to attend this meeting by Defendants.

45. In early Spring 2013, more frivolous allegations were initiated and investigations were opened in which the Plaintiff was the subject.

46. On or about April 25, 2013, SCI published a 15-page report on Plaintiff. The report contained vague conclusions that there "may have been some conflicts of interest." Within two hours of the report being published, NYCDOE released a press statement indicating they would move to terminate the Plaintiff. According to the policies of the DOE and the UFT, the DOE had 15 days to formally charge Plaintiff or send him back to school. The DOE exceeded that timeline as well. A public copy of the SCI report has been permanently posted on the NYCSCI.org website.

47. After the issuance of the report, Superintendent Claudio attempted to hold a disciplinary hearing with the Plaintiff regarding the findings of an April 25, 2013 SCI report. The meeting was twice postponed because Superintendent Claudio would not allow the Plaintiff to audio record the hearing or bring his attorney as per his right under New York

State law.  The hearing never took place and the Plaintiff was later formally charged with 38 disciplinary specifications seeking his termination.

48.     On or about May 6, 2013, Plaintiff sent an email to David Brodsky, Director of Labor Relations for the NYCDOE, informing him that Plaintiff would be attending the Berta Dreyfus IS 49 SLT meeting as a public citizen, as per the New York State Open Meetings Law.  Mr. Brodsky denied Plaintiff access by instructing School Safety Agents not to allow Plaintiff to attend the public meeting.  Upon information and belief, this occurred after Robert Freeman, the Director of the New York State Committee on Open Government, informed Mr. Brodsky that the SLT falls under the Open Meetings Law.

49.     On or about May 17, 2013, Plaintiff was served 38 disciplinary specifications pursuant to Section 3020-a of the New York State Education Law seeking termination of his employment.  Included in the specifications were allegations regarding his actions at the public CEC meetings and emailing his neighbors about misconduct taking place at IS 49.  He was also charged with bringing public notoriety to the NYCDOE.

50.     On or about June 20, 2013, Plaintiff attended an arbitration hearing the Plaintiff initiated to have him moved back to his own district.  During testimony given by DOE employees and evidence submitted, Plaintiff saw that reasons for his exile so far away from home and school were due to false accusations made by Superintendent Erminia Claudio and other DOE personnel.

51.     From September 2012 to April 2013, Plaintiff continued his reassignment in a "rubber room"—without having received any charges or closure regarding his ongoing investigations—requiring him to drive approximately 40 miles extra each day. Upon

information and belief, the NYCDOE surpassed its own agreed upon timelines in failing to charge Plaintiff while keeping him in a reassignment center.

52. In September 2013, Defendants furnished electronic discovery to Plaintiff, which included approximately 3,000 pages of emails between Principal Linda Hill, Superintendent Erminia Claudio and many other recipients that are both employed and not employed by Defendants. Plaintiff read countless false and slanderous statements made about him. In one email in particular, Principal Linda Hill compared Plaintiff to Adam Lanza, the man who murdered 26 kindergarten students and staff at a school in Sandy Hook, Connecticut. In several emails to DOE executives, Superintendent Claudio falsely stated that Plaintiff was sending threatening emails to her. At one point, she ordered extra security when Plaintiff was expected to publicly speak about issues pertaining to an asbestos hazard created by Principal Linda Hill.

53. To date, Plaintiff has lost, *inter alia,* per session work and tutoring opportunities, personal property and possessions, and promotional advancement opportunities.

**FIRST CLAIM FOR RELIEF**
**RETALIATION AGAINST PLAINTIFF FOR EXERCISING FREEDOM OF SPEECH IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS**

54. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

55. While acting under color of State Law, Defendants violated Plaintiff's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to raising questions about city and state law violations by school

administration, in the form, *inter alia*, of school administration placing unwarranted disciplinary letters in his personnel file, issuing Plaintiff unwarranted unsatisfactory observations, suspending Plaintiff's personal email account and website, terminating his per session and tutoring work opportunities, transferring him to a teacher reassignment center more than an hour commute from his house, seizing his property, and threatening his job security by bringing 38 disciplinary specifications against him.

56.     As a proximate result of Defendants' retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer a loss of past and future income, monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, physical consequences of the severe emotional distress, and damage to his professional reputation, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
## RETALIATION IN VIOLATION OF
## NEW YORK STATE CIVIL SERVICE LAW § 75-B

57.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

58.     Plaintiff raised questions about city and state law violations by the school administration, and thereby engaged in a protected activity as defined in New York Civil Service Law § 75-b(2)(a).

59.     Defendants had notice that Plaintiff participated in such protected activities.

60.     Defendants retaliated against Plaintiff by engaging in adverse "personnel actions" as defined by New York Civil Service Law § 75-b(1)(d).  Specifically, Defendants

13

subjected Plaintiff to a retaliatory hostile work environment, including but not limited to: placing unwarranted disciplinary letters in his file, suspending Plaintiff's personal email account and website, depriving him of per session and tutoring opportunities, reassigning from his teaching duties, and otherwise threatening his livelihood and job security by bringing disciplinary specifications against him.

61.  As a proximate result of Defendants' retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer a loss of past and future income, monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, physical consequences of the severe emotional distress, and damage to his professional reputation, in an amount to be determined at trial.

## JURY DEMAND

62.  Plaintiff hereby demands a trial by Jury.

## PRAYER/DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor against Defendants as follows:

a)  On Plaintiff's First Claim for Relief—Retaliation against Plaintiff for exercising freedom of speech in violation of Plaintiff's First Amendment rights, damages in an amount to be determined at trial;

b)  On Plaintiff's Second Claim for Relief—Retaliation in violation of NY Civil Service Law § 75-b, damages in an amount to be determined at trial;

c)  On all Claims for Relief:

14

    a.    Judgment declaring that Defendants acts violated Plaintiff's rights as secured by federal, state, and city law prohibiting retaliation in employment;

    b.    Enjoining defendants from any further acts adversely affecting the terms and conditions of Plaintiff's employment including his compensation and privileges;

    c.    Compensatory damages to compensate Plaintiff for breach of contract, economic loss, damage to name, profession, career and reputation, pain and suffering, emotional distress and mental anguish, embarrassment, indignity, and dislocation, in an amount to be determined at trial;

    d.    Punitive damages against one or all of the Defendants;

    e.    Statutory attorneys' fees, interest, costs, and disbursements, and

    f.    For such other and further legal, equitable or other relief as the Court deems just and proper.

DATED:    New York, New York
December 3, 2013

                GLASS KRAKOWER LLP
                100 Church Street, 8th Floor
                New York, NY 10007
                (212) 537-6859

        By:    _____s/_____
                Bryan D. Glass, Esq.