**GLASS KRAKOWER LLP**
ATTORNEYS AND COUNSELORS AT LAW
A Limited Liability Partnership
100 CHURCH STREET, 8TH FLOOR
NEW YORK, NY 10007
212-537-6859
FAX NO. 845-510-2219
E-mail: bg@glasskrakower.com

*Bryan D. Glass*
    Partner

September 22, 2015

*Via ECF*
Honorable Roslynn R. Mauskopf
United States District Judge
Eastern District of New York
225 Cadman Plaza East, 505 North
Brooklyn, NY 11201

            Re:    Portelos v. NYCDOE et al., 12 CV 3141 (RRM) (VMS)
                   Plaintiff's Response in Opposition to Defendants' Request for Leave to Move for Summary Judgment

Dear Judge Mauskopf:

        I am the attorney for Plaintiff in the above-referenced First Amendment retaliation action. We submit this letter in response to the Defendant's December 29, 2014 request for a pre-motion conference to obtain leave to move for summary judgment pursuant to FRCP Rule 56. We believe there clearly are numerous material issues of fact that warrant scheduling of a trial in this matter, and the Second Circuit's recent decision in *Matthews v. City of New York*, No. 13-2915-cv, 2015 WL 795238 (2d Cir. Feb. 26, 2015), clearly supports a valid First Amendment claim and a trial of this action. *See Matthews, supra* (when a public employee engages in speech pertaining to a subject that does not fall within the employee's duties, and does so in a manner in which ordinary citizens would be expected to engage, the employee speaks as a citizen whose speech is protected, not as a public employee).

**Background**

        Plaintiff, a teacher employed by the DOE and formerly teaching at Intermediate School 49 ("I.S. 49") in Staten Island, brings this action seeking monetary and equitable relief based upon Defendants' violations of 42 U.S.C. Section 1983 and New York Civil Service Law Section 75-b ("CSL § 75-b") as a result of retaliatory actions taken against him as a teacher employed by Defendants since reporting school administrators, including his school principal Linda Hill, for various allegations of fraud and misconduct at the school. The principal eventually retired after one of the allegations for financial misconduct raised by Plaintiff was substantiated against her. Defendants' request for leave to move for summary judgment should be denied as futile because Plaintiff has a triable First Amendment retaliation claim, as the speech in question was made by Plaintiff as a concerned parent and member of the community on matters of public concern, specifically, fraud and misconduct in connection with the school's budget, and the evidence will amply show that Plaintiff suffered numerous retaliatory acts as a result of his speech, including retaliatory attempts to terminate his employment. Further, Plaintiff's state law claim, pursuant to CSL § 75-b, should be tried by a jury because Plaintiff has alleged ample material issues of facts to support the cause of action.

**I.      PLAINTIFF HAS A TRIABLE 1ST AMENDMENT RETALIATION CLAIM**

        In order to prevail on a First Amendment retaliation claim, a plaintiff must demonstrate that he engaged in speech protected by the First Amendment, that he suffered an adverse employment action, and that a causal connection between the two existed, "in that the speech was a substantial or motivating

factor for the adverse employment action." *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 313 (2d. Cir. 2005). In determining whether a public employee has engaged in constitutionally protected speech, the court must determine "whether the employee spoke as a citizen on a matter of public concern." *Woodlock v. Orange Ulster B.O.C.E.S.*, 281 F. App'x 66, 68 (2d. Cir. 2008) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). The inquiry into whether an individual was speaking as a citizen "is a practical one." *Garcetti*, 547 U.S. at 424-25. Speech by a public employee retains some possibility of First Amendment protection when it "is the kind of activity engaged in by citizens who do not work for the government." *Id.* At 423. Factors that have been considered by courts, but none of which are dispositive, are whether the speech occurred in the workplace; whether the speech concerns the subject matter of the employee's job; the plaintiff's job description; the person to whom the speech was directed; and whether the speech resulted from special knowledge gained through the plaintiff's employment. *See Garcetti*, 547 U.S. at 420-21; *see also Caraccilo v. Village of Seneca Falls*, 582 F.Supp.2d 390, 405 (W.D.N.Y. 2008).

Defendants have made wholly conclusory statements that all of the factual underpinnings of Plaintiff's speech became available to him as a result of his role as educator and School Leadership Team ("SLT") member without fully considering these factors. A closer examination of the facts, however, reveals that Plaintiff's speech was clearly in the nature of a concerned citizen, and community parent, on a matter of public concern. Beginning in September 2011, Plaintiff began attending School Leadership Team (SLT) meetings at the school. The SLT is comprised roughly equally of teachers and parents. The parents vote in parent members and teachers vote in teacher members. However, the Plaintiff, a new father in the future zoned school for his newborn son, showed so much enthusiasm for improving the troubled school, that he was never elected for the SLT as per Chancellor's Regulation A-655. Instead he was appointed by the SLT chairperson. On December 13, 2011, while Plaintiff was taking minutes for the monthly SLT meeting, he, along with the other members of the SLT, learned that Principal Hill had submitted the school's Comprehensive Education Plan ("CEP") and budget proposal without approval of the SLT. *Complaint* ¶17. After researching the Chancellor's Regulations and New York State Education Law, Plaintiff believed that there were violations regarding the adoption of the CEP and budget at the school. *Id.* ¶18. For this reason, Plaintiff notified the SLT Chairperson Susanne Abramowitz and UFT Chapter Leader Richard Candia, as well as fellow community parents, of these violations, believing that this would and should be brought to the attention of the appropriate authority. *Id.* ¶18.

Contrary to the Defendants' contention, this was not the only reporting Plaintiff made prior to any negative retaliatory actions taken against him. In the following month, January 2012, he observed Principal Hill working an after school program, in which she was paid overtime and then starting the January SLT meeting, without her clocking out of the after school program, which constituted fraudulent double dipping. It should be noted that all members of the SLT are paid a stipend for their time. However, because no steps were ever taken to rectify or address these violations, *id.* ¶18, Plaintiff subsequently reported these violations to the New York City Office of the Special Commissioner of Investigation ("SCI") in late January 2012. *Id.* ¶21. Also contrary to the Defendants' contention, Plaintiff's speech was not of the type normally made as part of a teacher's official duty. *Nowhere in his job description was he required to raise concerns about the school's budget, or investigate budgetary misconduct and inappropriate actions by the school's administration.* Nor have the Defendants pointed to any specific duties of Plaintiff as an employee of the DOE necessary to engage in such behavior. Thus, this situation is clearly distinguishable from the case *Ying v. City Univ. of New York* cited by Defendants, where the plaintiff made complaints that there were underage students enrolled in her *own* class. *See* 2011 U.S. Dist. LEXIS 144928 (E.D.N.Y. Dec. 16, 2011). There, the plaintiff's speech specifically pertained to an issue involving *her own* students and classroom. In contrast, Plaintiff's speech involved matters affecting his entire school and community.

Plaintiff's speech can be further distinguished from each supporting authority Defendants have cited. His speech did not concern issues for which "there is no relevant citizen analogue," but rather was motivated by his concerns as a member of the community and parent, and by information available to the public. *See Matthews; supra; Massaro v. New York City Dep't of Educ.*, 2012 U.S. App. LEXIS 10911 (2d. Cir. May 31, 2012) (Plaintiff's complaints concerned internal safety and medical absence-related

2

forms, "for which there is no relevant citizen analogue." Further, her complaints concerned her ability to properly execute her duties as a teacher).  Neither was Plaintiff's speech "part and parcel" of his official duties as a teacher, as a teacher's duties clearly do not encompass reporting on budgetary irregularities.  Plaintiff was not speaking generally as an advocate for his students, nor as an employee as part of his duties, but as a citizen concerned about budgetary irregularities and potential misconduct affecting not just his classroom or school, but the entire community.

Plaintiff's speech was also not made as part of any official duties as a member of the SLT.  The SLT is comprised equally of staff and parents and is therefore *not* limited to school employees.  Plaintiff originally joined the SLT because he is a new parent, as well as teacher, and wanted to be in a position to make positive changes in his community, like any concerned parent.  The purpose of the SLT is to create school goals and align them with the budget. The meetings are open to the public, and as evidenced by the structure of the SLT, members of the community who are not teachers are part of these meetings.  Plaintiff's speech was made because he was concerned that the $7.7 million budget, which is publicly posted online and derives from taxpayer dollars, was not being spent properly.  He was not motivated by his duties as a teacher or member of the SLT but rather as a taxpayer and member of the community.  The content of the speech was misconduct of the school's budget, paid by taxpayer money and public funds, matters which clearly affect the entire community.  The speech was first to the SLT Chairperson, who could easily have been approached by a non-teacher SLT member, and later to SCI, a City agency outside the NYCDOE.  Nowhere did the Plaintiff's official duties state or even imply that he should take such action.  *Cf. Matthews*, 2012 U.S. LEXIS 10463.  Finally, the context of Plaintiff's speech was made as a member of the community concerned about his local taxpayer dollars. In addition Plaintiff exposed governmental failure to properly investigate the violations he alleged and he reported misuse of tax dollars as he publicly shared how he and many others were being paid to sit and do nothing.

Based on the above, sufficient facts clearly exist under the applicable case law to withstand Defendants' motion for summary judgment, as Plaintiff has a triable First Amendment claim. Furthermore, there is no real dispute that Plaintiff was subject to multiple adverse actions, including attempts to end his employment through the Section 3020-a disciplinary process.  *See Jeter v. NYCDOE* 06 CV 3687 (E.D.N.Y. 2012) (denying summary judgment on Title VII and Section 1981 retaliation claim against tenured teacher brought up on retaliatory 3020-a charges)

## II.     PLAINTIFF HAS A VALID  TRIABLE CLAIM UNDER CSL § 75-B

In order to state a claim under CSL § 75-b, a plaintiff must disclose a violation of a law, rule or regulation that endangers public health or safety, or which he reasonably believes constitutes an improper government action, to a governmental body, and show a causal connection between the disclosure and an adverse personnel action. *Wetzel v. Town of Orangetown*, 2008 U.S. Dist. LEXIS 112370, *35-37 (S.D.N.Y. May 16, 2008).  Plaintiff has met his burden in bringing this claim.  He clearly suffered an adverse personnel action, as he faced an increasingly hostile work environment from school administration after years of consistently positive praise, Complaint ¶19; his personal email and website, which he had developed specifically for the school, were suspended, *id.* ¶22; SCI investigators came to Plaintiff's school and seized a computer from his classroom as well as to his home to seize school equipment that he had been authorized by the school to take home for lessons and research, *id.* ¶23; he received his first ever Unsatisfactory-rated observation report, *id.* ¶24; he has been reassigned from his teaching duties to a reassignment center 20 miles away, despite no disciplinary charges being filed against him for over a year, *id.* ¶26; and his personal email account was blocked from sending to any NYCDOE email account. *Id.* ¶26.  Plaintiff brought this to the attention of SCI, a non-DOE government body.  He has specifically alleged violations of the Chancellor's Regulations and NYS Education Law regarding the adoption of I.S. 49's Comprehensive Education Plan and budget. *Id.* ¶¶17-18. Further, there is a clear causal connection between these two, as Principal Hill specifically told Plaintiff that she knew he had been inquiring about her per session activities to Superintendent Erminia Claudio, and these adverse actions occurred almost immediately after Plaintiff made his protected speech. *Id.* ¶22.

Defendants argue that even if Plaintiff did raise legitimate questions or concerns about violations of law, there is no indication that he gave the DOE a reasonable time to take the appropriate action.  This

argument is without merit. There is no strict standard for what constitutes a reasonable time, as indicated by the Defendants' vague and unspecific argument. Here, Plaintiff followed the standard SLT procedure by notifying the SLT Chairperson, Susan Abramowitz, of his concerns. He also notified his UFT Chapter Leader and parents of students at his school, as well as the PTA of the school. *Id.* ¶¶ 17-18. At this point, Plaintiff reasonably believed that this information would be transmitted to the Principal and any other relevant DOE designee. Further, this was a time-sensitive matter. The CEP was set to be implemented in 2012. Because Plaintiff did not become aware of these violations until mid-December, he was forced to act quickly. Given the circumstances, Plaintiff provided the DOE with more than ample time to rectify or address the situation, but no action was taken.

Finally, Defendants argue that CSL § 75-b is inapplicable to the Plaintiff because his union's contract afforded him an ample procedural mechanism to challenge the employment actions about which he complains. Plaintiff in fact did pursue these grievances. His Step 1 grievance regarding unwarranted letters in his file was filed in March 2012, and denied by his Principal. The Step 2 grievance was denied by the Chancellor's representative and failed to address Petitioner's retaliation allegations. His Step 1 grievance regarding the location of his reassignment took place on May 8, 2012, and he received a denial letter on June 6, 2012. His Step 2 grievance took place on September 20, 2012, and he was denied once against on October 18, 2012. Most recently, he grieved the time he has been in the reassignment center without being issued charges on November 16, 2012. CSL § 75-b applies to those who are not protected by a CBA grievance procedure. Plaintiff has not been protected by these grievance procedures because they are controlled by the very people who are retaliating against him. CSL § 75-b is the proper mechanism by which he can properly be protected for his whistleblower actions.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' leave to file a summary judgment motion, and promptly schedule a trial in this matter. Thank you for your consideration of this request.

Respectfully submitted,

s/

Bryan D. Glass, Esq.
Attorney for Plaintiff

c:    Laura Rowntree, Esq., Assistant Corporation Counsel, Attorney for Defendants (via ECF)