Docket No.  12 Civ. 3141 (LDH)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FRANCESCO PORTELOS,

Plaintiff,

-against-

CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF EDUCATION; DENNIS
WALCOTT, CHANCELLOR OF NEW YORK CITY
DEPARTMENT OF EDUCATION; LINDA HILL,
PRINCIPAL OF I.S. 49, IN HER OFFICIAL AND
INDIVIDUAL CAPACITY,

Defendants

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*

Attorney for Defendants
100 Church Street, Room 2-173
New York, NY 10007

Of Counsel:  Courtney Fain
Tel:  (212) 356-0879
Email: cfain@law.nyc.gov
Matter No. 2012-029495

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT

POINT I

PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM FAILS AS A MATTER OF LAW ............................................................................. 10

A. Legal Standard ................................................................................ 10

B. Plaintiff Cannot Establish Retaliation by Defendant City ................................................................................ 11

C. All Defendants Are Entitled to Summary Judgment With Respect to Plaintiff's First Amendment Retaliation Claim ...................................... 12

    1. Plaintiff's Speech Related to the School Leadership Team and Adoption of the School's Comprehensive Education Plan Was Not Protected Speech ........................................ 12

    2. Plaintiff Cannot Show That His Reports to SCI Under the Pseudonym Liz Simpson Were A Substantial Motivating Factor for Any Employment Action Prior to Mid-April 2012 ......................................... 16

    3. The Undisputed Facts Show that Plaintiff was Disciplined for the Disruption Caused by his Speech, and not the Underlying Speech ....................... 16

D. Alternatively, Plaintiff Cannot Establish Liability Against Chancellor Walcott, the City, or the DOE .............................................................. 16

**Page**

    1.    Plaintiff Cannot Establish Individual
Liability Under § 1983 Against
Chancellor Walcott .......................................................... 19

    2.    Plaintiff Cannot Establish Municipal
Liability Against the City or DOE ................................... 20

POINT II

PLAINTIFF'S CIVIL SERVICE LAW CLAIM
FAILS AS A MATTER OF LAW ........................................................ 21

A.    Plaintiff is not Eligible for the Protections of
Civil Service Law § 75-b .......................................................... 22

B.    Individual Public Employees May Not be
Sued Under § 75-b ..................................................................... 23

CONCLUSION ............................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                        **Pages**

*Back v. Hastings on Hudson*,
    365 F.3d 107 (2d Cir. 2004)................................................................................19

*Black v. Coughlin*,
    76 F.3d 72 (2d Cir. 1996)..................................................................................19

*Blackman v. New York City Transit Auth.*,
    491 F.3d 95 (2d Cir. 2007)................................................................................11

*Borough of Duryea v. Guarnieri*,
    564 U.S. 379 (2011).........................................................................................17

*Burkybile v. Bd. Of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*,
    411 F.3d 306 (2d Cir. 2005)..............................................................................16

*Cotarelo v. Vill. Of Sleepy Hollow Police Dep't*,
    460 F.3d 247 (2d Cir. 2006)..............................................................................11

*Cox v. Warwick Valley Cent. School Dist.*,
    654 F.3d 267 (2d Cir. 2011)..............................................................................10

*Dillon v. Morano*,
    497 F.3d 247,251 (2d Cir. 2007)..................................................................11, 16

*Ehrlich v. Dep't of Educ. of the City of New York*,
    2013 N.Y. Misc. LEXIS 5202, 2013 NY Slip Op 32875(U)
    (N.Y. Sup. Ct. Nov. 7, 2013) ............................................................................23

*Ehrlich v. Dep't of Educ. of the City of New York*,
    Case No. 11 Civ. 4114 (RMB), 2012 U.S. Dist. LEXIS 17258
    (S.D.N.Y Feb. 6, 2012) .....................................................................................14

*Franks v. State of New York Office of Mental*
    *Retardation & Developmental Disabilities*,
    86 A.D.3d 183 (N.Y. App. Div. 3d Dep't 2011) ................................................24

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)............................................................................10, 13, 15

*Green v. Bauvi*,
    46 F.3d 189 (2d Cir. 1995)................................................................................19

*Jett v. Dallas Indep. Sch. Dist.*,
    491 U.S. 701 (1989)..........................................................................................20

**Cases**                                                                                          **Pages**

*Kerwin v. New York State Office of Mental Health*,
   665 F. Supp. 1034 (E.D.N.Y. 1987) ................................................................23

*Matthews v. City of New York*,
   779 F.3d 167 (2d Cir. 2015)................................................10, 12, 13, 15, 17

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978)................................................................................20, 21

*Moore v. City of New York*,
   2010 U.S. Dist. LEXIS 19183 (S.D.N.Y. Mar. 1, 2010) ...........................21

*Munafo v. Metro. Transp. Auth.*,
   Civ. No. 98 CV-4572 (ERK), 00-CV-0134 (ERK),
    2003 U.S. Dist. LEXIS 13495 (E.D.N.Y. Jan. 22, 2003) ......................22

*Patterson v. Cnty. of Oneida*,
   375 F.3d 206 (2d Cir 2004)...................................................................20, 21

*Pickering v. Board of Educ.*,
   391 U.S. 563 (1968)...........................................................................11, 17, 19

*Pitton v. New York City Dep't of Educ.*,
   2015 U.S. Dist. LEXIS 161685 (E.D.N.Y. Dec. 1, 2015) ........................15

*Portelos v. New York City Bd. of Educ.*,
   Index No. 85023/14, 2015 N.Y. Misc. LEXIS 342 (N.Y. Sup. Jan. 28, 2015) .......................9

*Rosenberg v. City of New York*,
   Case No. 09-cv-4016 (CBA), 2011 U.S. Dist. LEXIS 112818
    (E.D.N.Y. Sept. 30, 2011)........................................................................11

*Shanahan v. New York*,
   Civ. No. 10 Civ. 0742, 2011 U.S. Dist. LEXIS 6384 (S.D.N.Y. Jan. 24, 2011) ...................24

*Sousa v. Roque*,
   578 F.3d 164 (2d Cir. 2009)...................................................................15

*Ullah v. New York City Dep't of Educ.*,
   Civ. No. 11 Civ. 3868 (GBD)(MHD), 2014 U.S. Dist. LEXIS 112288
   (S.D.N.Y. Aug. 8, 2014) ........................................................................13

*Ullah v. New York City Dep't of Educ., et al.*,
   No. 11-civ- 3868 (GBD)(MHD),
   Report and Recommendation (S.D.N.Y. May 6, 2014)................................ 13-14

**Cases**                                                                          **Pages**

*Waters v. Churchill,*
    511 U.S. 661 (1994)..................................................................................11, 17, 18

*Weintraub v. Bd. of Educ. of City Sch. Distr. of City of. N.Y.*
    593 F.3d 196 (2d Cir. 2010).........................................................................10, 13

**Statutes**

N.Y. Civ. Serv. L. 75-b .....................................................................................21, 22, 23

## PRELIMINARY STATEMENT

Plaintiff Francesco Portelos, a tenured teacher employed by the New York City Department of Education (the "DOE"), brings retaliation claims pursuant to 42 U.S.C. § 1983 (First Amendment) and New York Civil Service Law § 75-b.  Specifically, Plaintiff alleges that he engaged in speech protected by the First Amendment and conduct protected by the New York Civil Service Law § 75-b when he (i) reported alleged violations regarding the School Leadership Team's adoption of the Comprehensive Education Plan in December 2011; (ii) reported concerns about alleged financial misconduct by administrators at I.S. 49 under the pseudonym "Liz Simpson" in January and March 2012; (iii) spoke publicly about alleged misconduct at I.S. 49 and by the DOE generally beginning in March 2012; and (iv) made allegations of corporal punishment against an assistant principal in June 2012 and December 2012.  As a result, Plaintiff alleges that the DOE (i) subjected him to unwarranted discipline, review, and investigation beginning in January 2012; (ii) reassigned him from I.S. 49 and banned him from all school activities and per session opportunities in April 2012; and (iii) threatened his job security by bringing disciplinary charges pursuant to Education Law § 3020-a in May 2013.

As set forth in more detail below, Defendants now move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing Plaintiff's claims in their entirety.  First, Defendant City is entitled to summary judgment as it is not a proper party to this case.  Second, Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim because (i) not every instance of speech in which Plaintiff engaged was protected; (ii) Plaintiff is precluded from arguing that his speech as Liz Simpson resulted in retaliation; and (iii) the undisputed factual record shows that Plaintiff's reassignment, and charges pursuant to § 3020-a stemmed not from Plaintiff's speech, but the disruption caused by his conduct.  Moreover, Plaintiff has failed to establish individual liability under § 1983 against

Chancellor Walcott or municipal liability under § 1983 against the City or DOE. Finally, Plaintiff's claim under New York Civil Service Law § 75-b fails as a matter of law because Plaintiff, a member of a collective bargaining unit, is not eligible for the protections of the law and individual employees are not subject to liability.

<u>**STATEMENT OF FACTS**</u>

Plaintiff began working for the DOE in May 2007, and was appointed as a full-time Science, Technology, Engineering, and Math ("STEM") teacher at I.S. 49 (also known as the Berta A. Dreyfus School) in Staten Island in September 2007. *See* Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, dated May 4, 2016 ("Rule 56.1 Statement"), ¶¶ 10, 12. At all times during his employment with the DOE, Plaintiff has been a member of the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO ("UFT"), and subject to the terms of its collective bargaining agreement with the DOE. *See id.* ¶ 4.

This litigation stems from a dispute that began in June 2011, when Principal Linda Hill ("Principal Hill") decided not to appoint Plaintiff to be Tech Coordinator for I.S. 49. *See id.* ¶¶ 23-29. In a series of emails throughout the summer, Plaintiff criticized Principal Hill's decision not to replace the outgoing Tech Coordinator (Mr. Matthew Valia) with him, and to instead divide Mr. Valia's duties among several teachers at the school. *See id.* ¶ 24. As a result of that decision, Plaintiff did not receive the five compensatory periods Mr. Valia had received, and was instead offered one period where he wouldn't be expected to engage in pedagogy, and could instead devote his time to resolving technological issues at the school. *See id.* ¶¶ 26-27. He declined the offer, noting in various communications that Principal Hill's actions had been a "slap in the face," his relationship with the administration was "deteriorating," and he had "lost sleep" over the fact that he had not been appointed Tech Coordinator. *See id.* ¶¶ 25, 28-29.

Thus, Plaintiff went into the 2011-2012 school year frustrated with the administration at I.S. 49.  *See id*. ¶ 29.  He nonetheless assumed two leadership roles at the school.  *See id*. ¶¶ 15, 30.  First, in September Plaintiff was appointed to a faculty member position on the I.S. 49 School Leadership Team ("SLT").  *See id*. ¶ 30.  The SLT is an advisory body of selected faculty members (who are compensated for their time) and parents that works collaboratively to develop education policies and ensure implementation of said polices.  *See id*. ¶¶ 31, 33-36.  Second, Plaintiff became a member of the I.S. 49 UFT consultation committee and was elected as an I.S. 49 UFT delegate in November 2011.  *See id*. ¶ 15.  At that time, Dr. Richard Candia was UFT Chapter Leader at I.S. 49.  *See id.* ¶ 16.

Even while he assumed these roles, however, Plaintiff's relationship with certain of his colleagues continued to fracture.  For example, in November 2011 Plaintiff took it upon himself to investigate Sarah Blanchard, one of the teachers who had assumed some of the duties previously performed by the Tech Coordinator.  *See id*. ¶¶ 43-48.  Plaintiff was fixated on the belief that Ms. Blanchard impermissibly had been given compensatory (*i.e.*, free) periods.  *See id*. ¶ 44.  As part of his investigation, he went to the third floor and walked repeatedly by Ms. Blanchard's classroom in order to ascertain whether she was teaching.  *See id*. ¶ 46.  He also made inquiries of the administration as to her schedule.  *See id*. ¶ 47.  Ms. Blanchard was concerned by Plaintiff's actions, and reported them to Principal Hill.  *See id*. ¶ 48.  Further, Plaintiff also began what would become his practice of recording conversations with his superiors and colleagues without their consent.  *See id*. ¶¶ 49, 73, 76.

Although Plaintiff's teaching performance in the fall of 2011 time was rated satisfactory, it was not without issue.  *See id*. ¶ 54.  Notably, Assistant Principal Anne Marie Martino conducted a formal observation of Plaintiff on December 6, 2011, and expressed

concerns about Plaintiff's classroom management, such as the "strong need to address the problem of multiple students calling out [his] name simultaneously for assistance." *See id.* ¶¶ 53-54.

One of the primary responsibilities of the SLT is the development of the Comprehensive Education Plan ("CEP"), which is a document setting forth achievement goals for the school. *See id.* ¶ 32. On November 27, 2011, Principal Hill sent an email to the entire I.S. 49 staff, informing it that the CEP was due soon, and further outlining the three educational goals set forth in the CEP for the 2011-2012 school year. *See id.* ¶ 55. The SLT next met on December 13, 2011, at which meeting Plaintiff asked the members in attendance whether they would be discussing the CEP. *See id.* ¶¶ 56-57. Principal Hill was not present at the time, but later informed the SLT that a draft of the CEP had been submitted on December 1, 2011. *See id.* ¶¶ 59-60. There were no further discussions about the CEP at the meeting, but Plaintiff later emailed certain parent members of the SLT, as well as Ms. Abramowitz and Dr. Candia, that he had been informed that the submission of the CEP without the input of the SLT was in violation of the Chancellor's Regulations and New York State law. *See id.* ¶¶ 62-63.

The SLT next met on January 9, 2012. *See id.* ¶ 65. The draft CEP was discussed, and Plaintiff noted his objections, including his view that goals set forth were insufficient for the school, and suggested that there should be a fourth goal for the CEP geared toward the students who were not targeted in the first three goals. *See id.* ¶¶ 66-67. Plaintiff continued to engage Ms. Abramowitz and Principal Hill on this goal. *See id.* ¶¶ 68-69.

The relationship between Plaintiff and his colleagues at I.S. 49 deteriorated further in January and February 2012. On or about January 25, 2012, Plaintiff assisted the police in finding an iPhone that had been stolen from a teacher, and subsequently posted about the

event on his Facebook account.  *See id.* ¶ 70.  His postings made their way to the New York Post, which contacted Plaintiff regarding the incident.  *See id.* ¶ 71.  Principal Hill was concerned about the notoriety Plaintiff's post had brought to the school, and on January 26, 2012, met with Plaintiff.  *See id.* ¶¶ 72-73.  Plaintiff thereafter got into a heated argument with Ms. Abramowitz and Dr. Candia regarding the incident, and they subsequently filed complaints about Plaintiff's conduct during that meeting.  *See id.* ¶¶ 74, 79.

   The following day (January 27, 2012), Plaintiff attended a UFT meeting at I.S. 49, during which he informed those present that someone was giving Principal Hill members' Facebook posts, and asked Dr. Candia "et tu, Brutus?"  *See id.* ¶ 80.  Later that evening, Dr. Candia informed Plaintiff by email that he was no longer a member of the I.S. 49 UFT Consultation Committee, and requested Plaintiff's resignation as an I.S. 49 UFT Delegate.  *See id.* ¶ 81.  Plaintiff forwarded the email to all members of the UFT at I.S. 49, which included nearly the entire staff of I.S. 49.  *See id.* ¶ 82.  In doing so, Plaintiff defied an earlier directive from Principal Hill that Plaintiff not send mass emails through the Dreyfus49.com[1] email system without her prior approval.  *See id.* ¶ 42.  She therefore immediately suspended Plaintiff's email account on Dreyfus49.com.  *See id.* ¶ 83.  Plaintiff responded by unilaterally rescinding the administrator rights of all other personnel at I.S. 49, including Principal Hill.  *See id.* ¶ 84.

   On February 1, 2012, Plaintiff met with Principal Hill and Assistant Principal Aguirre to discuss allegations of professional misconduct, including (i) Plaintiff's use of his Dreyfus49 email account to send a mass email on January 27, 2012, without prior approval by Principal Hill and (2) Plaintiff's behavior at his meetings with Dr. Candia, Ms. Abramowitz, and

---

[1] Plaintiff had created the Dreyfus49.com website in October 2009, and was owner of the domain name.  *See id.* ¶¶ 37-39.  However, it was used by all faculty members and students at I.S. 49, each of whom had e-mail addresses on the Dreyfus49.com domain.

other teachers on January 26, 2012.  *See id.* ¶ 87.  Plaintiff received a letter to his file with respect to both incidents.  *See id.* ¶ 88.

On February 9, 2012, Plaintiff impermissibly remained at I.S. 49 until 5:57 p.m., in violation of Principal Hill's instruction in January 2012 that, as part of the school safety protocol, no one was permitted in the building before 6:30 a.m. or after 5:30 p.m. without prior approval by Principal Hill.  *See id.* ¶¶ 86, 89.  Plaintiff was issued a letter to his file for insubordination as a result.  *See id.* ¶93.

On February 14, 2012, Plaintiff, Principal Hill, Superintendent Claudio, and a UFT district representative met to discuss the recent issues at I.S. 49, including access to and ownership of Dreyfus49.com.  *See id.* ¶¶ 90.[2]  Plaintiff agreed at that meeting to transfer ownership of Dreyfus49.com to Principal Hill.  *See id.* ¶ 91.  However, despite repeated requests that he do so, Plaintiff never transferred ownership, and ultimately terminated the Dreyfus49.com website on March 19, 2012.  *See id.* ¶¶ 95-96.  Prior to doing so, however, he used his administrator rights to access the email accounts of his colleagues to search and read their private emails, including those discussing him.  *See id.* ¶ 98.  On or about March 9, 2012, Plaintiff launched his personal website, ProtectPortelos.org, on which he chronicled his dispute with the administration of I.S. 49 and the DOE, and posted confidential DOE documents and emails.  *See id.* ¶¶ 94, 98.

Against this backdrop, the office of the Special Commissioner of Investigation ("SCI") began its investigation of what would amount to more than 35 complaints involving misconduct at I.S. 49 between January 2012 and March 2013.  *See id.* ¶ 123.  The scope of SCI's

---

[2] The meeting occurred following Plaintiff's email of January 29, 2012, to Superintendent Erminia Claudio, in which he informed her that he believed he was "under attack" after raising concerns about the SLT and union meetings.  *See id.* ¶ 85.

investigation ultimately included, but was not limited to, allegations that Plaintiff (1) engaged in personal business during time in which he was supposed to be teaching; (2) made changes to the Dreyfus49.com website, including with respect to administrator rights; (3) reviewed and distributed private email messages sent over the Dreyfus49 service; (4) inappropriately posted student information on his personal website and on YouTube; (5) inappropriately installed software on school computers; and (6) falsely reported that a teacher was uncertified.  *See id.* at NYCE-0004912 – NYCE-0004920.  *See id.* ¶ 125.

SCI's investigation also included a report initiated on January 26, 2012, by Liz Simpson, who sent an email to SCI alleging that Principal Hill was improperly receiving double payment for afterschool activities.  *See id.* ¶ 99.  Liz Simpson sent additional email correspondence to SCI on March 20, 2012, reiterating her original concerns, and making additional allegations against Assistant Principal Diacomanolis.  *See id.* ¶ 100.  Plaintiff subsequently acknowledged that he sent the emails to SCI under the pseudonym "Lizzy Simpson," although Principal Hill was not aware of the reports to SCI regarding alleged financial misconduct until at least April 2012.  *See id.* ¶¶ 101-102.

On April 25, 2012, Plaintiff was notified that, as a result of the pending investigations he was (i) being reassigned from I.S. 49; (ii) not to return to I.S. 49 without prior written permission; and (iii) no longer permitted to perform per session or other after school activities pending resolution of the investigation.  *See id.* ¶ 103.  He was originally reassigned to the Petrides Center, located on Staten Island, but was subsequently reassigned to a Network office in Ozone Park, Queens, after "he refused to stay in certain areas of [Petrides] and one day was found outside of [Superintendent Claudio's] office listening to various conversations …"

*See id.* ¶ 104.  The decision to reassign Plaintiff was made by Andrew Gordon, then-Executive Director, HR Connect and Employee Relations at the DOE.  *See id.* ¶ 105.

While reassigned, Plaintiff continued his crusade against the administration of I.S. 49.  For example, in June 2012, Plaintiff reported that Denise Diacomanolis, an Assistant Principal at I.S. 49, touched children in an inappropriate manner.  *See id.* ¶¶ 108, 110.  Principal Hill immediately forwarded the report to SCI.  *See id.* ¶ 109.  In the course of SCI's investigation of the allegation, Plaintiff informed SCI that he had taken a video of Ms. Diacomanolis "placing her hands on" a student in April 2012.  *See id.* ¶ 111.  Of course, that was two months prior to the date on which Plaintiff filed his complaint with SCI.   *See id.* ¶¶ 108, 111.   Ultimately, the allegation against Ms. Diacomanolis was not substantiated.  *See id.* ¶ 112.

Plaintiff also engaged in the following conduct upon his reassignment:

- In September 2012 he falsely reported that Ms. Wolfson, a teacher at I.S. 49 and, notably, at the time the fiancé of Dr. Candia, was not properly licensed (*see id.* ¶¶ 113-114, 133(g));

- Throughout the fall of 2012, he manipulated I.S. 49's historical websites to direct all visitors to his personal website on which he chronicled his disputes with I.S. 49 and the DOE about the school (*see id.* ¶¶ 115-116, 133(g)-(h));

- In December 2012, he publicly shared the video purporting to show Ms. Diacomanolis touching a student (*see id.* ¶¶ 117, 133(j));

- In January 2013, he made an unsubstantiated allegation that Assistant Principal Joanne Aguirre engaged in corporal punishment against a student (*see id.* ¶¶ 118-119); and

- In June 2013, he made an unsubstantiated complaint of race, color, and gender/sex discrimination against Principal Hill, which complaint was based on his review of her confidential emails on the Dreyfus49.com email system (*see id.* ¶¶ 120-122).

On April 25, 2013, the SCI concluded that some of the conduct attributed to Plaintiff was substantiated, and referred its findings to the DOE for further action.  *See id.* ¶¶

128-129.    Plaintiff was subsequently charged with having engaged in misconduct, insubordination, conflicts of interest, criminal conduct, conduct unbecoming his profession, and neglect of duty.  *See id.* ¶ 130.  After more than 20 days of hearings, Arbitrator Felice Busto sustained 11 charges brought against Plaintiff, and fined Plaintiff $10,000 for his misconduct. Specifically, Arbitrator Busto concluded that Plaintiff "[h]ad a disruptive and/or negative impact on students, staff, and/or administration at I.S. 49 and the [DOE]" and "[c]aused negative publicity, ridicule, and notoriety to I.S. 49 and the [DOE]," and that he engaged in misconduct throughout the 2011-2012 and 2012-2013 school years when he: (i)  unilaterally rescinded the rights of all administrators of Dreyfus49.com, including Principal Hill in January 2012; (ii) refused to transfer control and/or ownership of Dreyfus49.com to Principal Hill or the DOE after agreeing to do so in February 2012; (iii) disclosed on his personal website confidential witness statements made by Dr. Candia and Ms. Abramowitz; (iv) prior to terminating Dreyfus49.com, searched his colleagues email accounts on that domain for emails containing the term "Portelos" (*see id.* at 52-54); (v) recorded a video of a student at I.S. 49 without permission or authority and subsequently made that video available to parents; (vi) falsely reported to a parent that a teacher at I.S. 49 was unlicensed; and (vii) altered the historical websites for I.S. 49 to direct viewers to his personal websites on which he chronicled his dispute with the DOE.  *See id.* ¶¶ 132-134.

Plaintiff's application to set aside the findings of the arbitrator in the § 3020-a proceeding was denied by Justice Troia of the Supreme Court of New York County, Richmond County.  *See Matter of Portelos v. New York City Bd. of Educ.*, Index No. 85023/14, 2015 N.Y. Misc. LEXIS 342, at *7 (N.Y. Sup. Jan. 28, 2015).  *See id.* ¶ 135.

## ARGUMENT

### POINT I

### PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM FAILS AS A MATTER OF LAW

#### A.   Legal Standard

In order to survive summary judgment, "[a] plaintiff asserting a First Amendment retaliation claim must establish that: '(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech.'"  *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)).   The question as to whether a public employee engaged in protected speech turns in the first instance on whether the employee was speaking as a private citizen on a matter of public concern.  *See Garcetti v. Ceballos*, 547 U.S. 410, 420-22 (2006).  In determining whether an employee spoke as a private citizen, the court first considers whether the speech fell within the employee's official responsibilities and, second, whether a civilian analogue exists.  *See Matthews*, 779 F.3d at 173 (citing *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 203-04 (2d Cir. 2010)). With respect to the first consideration, "speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description or in response to a request by the employer."  *Weintraub*, 593 F.3d at 203.  As to the second prong, "[s]peech has a 'relevant civilian analogue' if it is made through 'channels available to citizens generally,'" as opposed to those channels that are within the exclusive purview of employees.  *See Matthews*, 779 F.3d at 175 (internal citations omitted).

Moreover, at the summary judgment stage a plaintiff found to have engaged in protected speech still must point to "sufficient evidence . . . in the record to 'warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action.'"  *See Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007) (quoting *Cotarelo v. Vill. Of Sleepy Hollow Police Dep't*, 460 F.3d 247, 251 (2d Cir. 2006)).

Finally, even where an employee speaks as a private citizen on a matter of public concern, the court must balance "the interests of the [employee] as a citizen, on commenting upon maters of public concern and the interest of the [DOE], as employer, in promoting the efficiency of the public service it performs through its employees."  *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).  Thus, a plaintiff cannot prevail in his First Amendment retaliation claim where any adverse employment action was based not on the substance of the speech, but the disruption, or reasonable prediction of disruption, caused by the speech.  *See Waters v. Churchill*, 511 U.S. 661 (1994); *Blackman v. New York City Transit Auth.*, 491 F.3d 95 (2d Cir. 2007).

**B.    Plaintiff Cannot Establish Retaliation by Defendant City**

While Plaintiff brings his First Amendment retaliation claim against the City, it is undisputed that he is employed by the DOE.  *See* Supplemental Complaint, dated December 3, 2013 ("Supplemental Complaint" or "Supp. Compl."), Doc. 41, ¶ 15; Rule 56.1 Statement ¶ 1. Moreover, Plaintiff does not allege in the Supplemental Complaint that the City, or any City employee, engaged in retaliatory activity.  Therefore, the City is entitled to summary judgment as to all claims.  *See, e.g.*, *Rosenberg v. City of New York*, Case No. 09-cv-4016 (CBA), 2011 U.S. Dist. LEXIS 112818, *9-10 (E.D.N.Y. Sept. 30, 2011).

In an attempt to salvage Plaintiff's claim against the City, counsel for Plaintiff informed the Court on April 20, 2016, that Plaintiff declined to withdraw his claim against the

11

City because he intends to argue that Plaintiff was retaliated against by the Special Commissioner of Investigation for the New York City School District ("SCI"), which is an agency of the City.  *See* Letter from Bryan D. Glass, dated April 20, 2016, Doc. 100.   But nowhere in the Supplemental Complaint does Plaintiff plead conduct by SCI that was motivated by retaliation for having engaged in protected speech.  Moreover, the undisputed evidence shows that SCI's role was limited to the investigation of the complaints that were put before it, including those made by Plaintiff.  *See* Rule 56.1 ¶¶ 123-129.   At the conclusion of its investigation, SCI issued its findings to the DOE.  *See id.* ¶ 128.  The decision to rely upon those findings in bringing charges against Plaintiff, however, rested solely with the DOE.  *See id.* ¶ 130.   Thus, Plaintiff cannot establish that SCI took adverse action based upon speech protected by the First Amendment, and Defendant City is entitled to summary judgment.  *See Matthews*, 779 F.3d at 172.

**C.   All Defendants Are Entitled to Summary Judgment With Respect to Plaintiff's First Amendment Retaliation Claim**

As set forth in more detail below, Plaintiff's First Amendment retaliation claim also fails as a matter of law against all Defendants because (1) not every instance of speech in which Plaintiff engaged was protected; (2) Plaintiff is precluded from arguing that his speech as Liz Simpson resulted in retaliation; and (3) the undisputed factual record shows that Plaintiff's reassignment and charges pursuant to § 3020-a stemmed not from Plaintiff's speech, but rather from the disruption caused by his conduct.

**1.   Plaintiff's Speech Related to the School Leadership Team and Adoption of the School's Comprehensive Education Plan Was Not Protected Speech**

Plaintiff alleges that he first engaged in speech protected by the First Amendment in December 2011 when he raised concerns among members about alleged violations of the

Chancellor's Regulations and New York State Education Law in connection with the School Leadership Team's ("SLT") adoption of the Comprehensive Education Plan ("CEP") in December 2011. *See* Supp. Compl., ¶¶ 18-20. However, Plaintiff's speech was clearly "part-and-parcel" of his official duties as a teacher on the SLT, and is not protected under the First Amendment. *See Ullah v. New York City Dep't of Educ.*, Civ. No. 11 Civ. 3868 (GBD)(MHD), 2014 U.S. Dist. LEXIS 112288, *6-8 (S.D.N.Y. Aug. 8, 2014) (adopting findings of Report and Recommendation, noting that "[t]o the extent Plaintiff alleges that he suffered retaliation in violation of the First Amendment for speech that he engaged in as part of the School Leadership Team, the Report correctly found that such speech is not protected.") (citing *Garcetti*, 547 U.S. at 421 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.")). Moreover, there is no civilian analogue for Plaintiff's speech. *See Matthews*, 779 F.3d at 173; *Weintraub*, 593 F.3d at 203-04.

With respect to whether Plaintiff was speaking pursuant to his official duties, the SLT is "responsible for developing an annual school Comprehensive Educational Plan (CEP) that is aligned with the school-based budget for the ensuing school year." *See* Rule 56.1 Statement, at ¶¶ 31-32. Therefore Plaintiff's speech, which raised concerns about whether the SLT was fulfilling its duties under the Chancellor's Regulations, necessarily fell within his duties as a member of the SLT, and is not protected. *See Matthews*, 779 F.3d at 173; *Weintraub*, 593 F.3d at 203-04; *Ullah v. New York City Dep't of Educ., et al.*, No. 11-civ- 3868 (GBD)(MHD), Report and Recommendation (S.D.N.Y. May 6, 2014) at 49, n.11 (finding that plaintiff's speech relating to disagreements in SLT meetings "'on the issues of management of budget, missed preps of the teachers, low morale of the teachers and staff, [and] student discipline problems' …

13

was clearly 'pursuant to his official duties because it was 'part-and-parcel of his concerns' about his ability to 'properly execute his duties,' as a public school teacher" and chairman of the School Leadership Team.").[3]

While Plaintiff tries to couch his involvement in the SLT as one of a concerned community member, the factual record confirms that Plaintiff's involvement on the SLT stemmed from his duties as a teacher.[4]  First, Plaintiff was appointed to the SLT in his capacity as a teacher, and received compensation for his time on the SLT.  *See* Rule 56.1 Statement at ¶¶ 34, 36.  Moreover, he did not have any children in the school.  *See id.* ¶ 3.[5]  Membership in the SLT is controlled, and SLT meetings are not open to the public.  *See Portelos v. Bd. of Educ. of the City School Dist. of the City of New York*, Index No. 100813/13, Decision/Order (N.Y. Sup. Nov. 7, 2013) (holding that the SLT is not a public body, and its meetings, therefore, do not have to be open to the public pursuant to New York State Public Officer's Law § 103 (the Open Meetings Law)), at 5-6.[6]  Thus, Plaintiff, who assumed additional professional responsibilities when he accepted his position on the SLT, was not involved as a community member, but as a teacher.

---

[3] A copy of the Report and Recommendation, which was adopted in *Ullah v*, 2014 U.S. Dist. LEXIS 112288, at*6-8, is attached as Exhibit LL to the Fain Declaration.

[4] Indeed, in seeking to fulfill his duties on the SLT, Plaintiff necessarily also was executing his duties as a public school teacher in advocating on behalf of his students, and did not engage in protected speech for that reason as well.  *See Ehrlich v. Dep't of Educ. of the City of New York*, Case No. 11 Civ. 4114 (RMB), 2012 U.S. Dist. LEXIS 17258, *8-9 (S.D.N.Y Feb. 6, 2012) ("courts have routinely held as a matter of law that a teacher's advocacy on behalf of her students falls squarely within her official duties as a teacher") (collecting cases).

[5] Even if his children were at the school, parents are prohibited from serving on the SLT as parent members in schools in which they are employed.  *See id.* ¶ 35.

[6] A copy of the Decision/Order is attached as Ex MM to the Fain. Decl.

14

Moreover, the manner in which Plaintiff raised his concerns about the SLT further strengthens a finding that he did not engage in protected speech, as there is no civilian analogue to Plaintiff's speech. *See Matthews*, 779 F.3d at 173. Frustrated with what he perceived to be the non-involvement of the SLT in the drafting of the CEP (something he would only know about as a member of the SLT or teacher at I.S. 49), Plaintiff reported his concerns exclusively among the membership of the SLT, including with the three mandatory members of the SLT (the Chairperson, UFT Chapter Leader, and Principal). *See* Rule 56.1 Statement, ¶ 63. Thus, Plaintiff, whose express responsibilities as a member of the SLT included formulation of the CEP, chose to report his concerns through avenues available to him as a member of the SLT and not to the general public. The fact that he did so, and that his speech was part-and-parcel to his responsibilities, warrants a finding that Plaintiff did not engage in protected speech when he raised concerns among the SLT with respect to the CEP. *See Pitton v. New York City Dep't of Educ.*, 2015 U.S. Dist. LEXIS 161685, *24-26 (E.D.N.Y. Dec. 1, 2015) ("Because plaintiff spoke about an issue directly related to her functional job duties and took an avenue available to her as a Network Leader, and not available to the public, plaintiff's speech is distinguishable from that in *Matthews*.").

Because Plaintiff's speech related to the SLT was not protected speech, it cannot, as a matter of law, form the basis of First Amendment retaliation claim. *See Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009) ("If the court determines that the plaintiff either did not speak as a citizen or did not speak on matter of public concern, 'that employee has no First Amendment cause of action based on his or her employer's reaction to the speech.") (quoting *Garcetti*, 547 U.S. at 418).

2.     **Plaintiff Cannot Show That His Reports to SCI Under the Pseudonym Liz Simpson Were A Substantial Motivating Factor for Any Employment Action Prior to Mid-April 2012**

Moreover, Plaintiff's First Amendment retaliation claim also fails because the factual record shows that, with respect to the reports of alleged financial misconduct by the administration under the pseudonym Liz Simpson, Plaintiff cannot point to "sufficient evidence . . . in the record to 'warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action'" prior to mid-April 2012. *See Dillon*, 497 F.3d at 251. Specifically, there is nothing in the factual record showing that the DOE knew the true identify of "Liz Simpson" at the time Plaintiff filed the complaints. Indeed, Arbitrator Busto determined at the § 3020-a Hearing that Principal Hill did not learn about the allegations made by Plaintiff/Liz Simpson until mid-April 2012, and that "[t]here is no credible evidence that she knew he had reported these allegations anonymously on January 26, 2012 and that she was retaliating against him for doing so." *See* Opinion and Award, dated April 30, 2014, in the Matter of New York City Department of Education v. Francesco Portelos Pursuant to Education Law § 3020-a, SED File No. 22,380, attached as Ex. R to the Fain Decl., at 43, n.17. Plaintiff, therefore, is precluded from arguing that his speech as "Liz Simpson" resulted in retaliation. *See Burkybile v. Bd. Of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 313 (2d Cir. 2005) (holding that the findings at a § 3020-a hearing are entitled to preclusive effect).

3.     **The Undisputed Facts Show that Plaintiff was Disciplined for the Disruption Caused by his Speech, and not the Underlying Speech**

As discussed above, Plaintiff's speech stemming from his involvement in the SLT is not protected and Plaintiff is precluded from arguing that his speech as "Liz Simpson" resulted in retaliation. *See supra*, Point I.C.1 and Point I.C.II. Therefore, the only remaining instances of protected speech at issue in the Supplemental Complaint are Plaintiff's (i) speech beginning in

16

March 2012 about alleged misconduct at I.S. 49 and by the DOE generally and (ii) allegations of corporal punishment against an assistant principal in June 2012 and December 2012.  Moreover, the only allegedly adverse employment actions at issue are (i) any investigation and discipline following the launch of Plaintiff's blog on March 9, 2012; (ii) Plaintiff's reassignment from I.S. 49 and banning from all school activities and per session opportunities on April 25, 2012; and (iii) the initiation of disciplinary charges pursuant to Education Law § 3020-a in May 2013.[7]

However, the undisputed factual record clearly shows that, even if Plaintiff engaged in protected speech and that speech was a factor in any adverse employment action, the reasonable anticipation of disruption caused by Plaintiff's speech, which must be understood in the context of the disruption caused by his conduct generally, both warranted his reassignment from I.S. 49 and the Petrides Center and also supported the DOE's decision to bring charges seeking termination pursuant to Education Law § 3020-a.  Therefore, to the extent Plaintiff is found to have engaged in protected speech and to have been subject to adverse action, Defendants are nonetheless entitled to summary judgment because their interest in maintaining efficient operations at I.S. 49 and within the DOE generally outweighed Plaintiff's First Amendment interests.  *See Waters v. Churchill*, 511 U.S. 661, 675, (1994) (recognizing "we have given substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern"); *Pickering*, 391 U.S. at 568 (1968); *see also Borough of Duryea v. Guarnieri*, 564 U.S. 379, 386-387 (2011) ("'When someone who is paid a salary so that she will contribute to an agency's effective operation begins

---

[7] Because Plaintiff cannot establish retaliation with respect to his SLT speech and reports as Liz Simpson, Plaintiff cannot rely on any alleged adverse action that occurred before March 9, 2012 (when Plaintiff began chronicling his dispute with the DOE on his personal website) to form the basis of Plaintiff's First Amendment retaliation claim, as he is certainly cannot establish a causal nexus between speech that followed the adverse action.  *See Matthews*, 779 F.3d at 172. Therefore, his letters to the file in February 2012 are not at issue.

to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her.' Restraints are justified by the consensual nature of the employment relationship and by the unique nature of the government's interest.")   (quoting *Waters*, 511 U.S. at 675).

Beginning in the fall of 2011, Plaintiff engaged in a personal crusade against his colleagues, the administration at I.S. 49, and the DOE generally.  Indeed, as early as September 2011, and months before even Plaintiff alleges that he engaged in any protected speech, Plaintiff recognized that his relationship with the administration at I.S. 49 was deteriorating.  *See* Rule 56.1 Statement, ¶ 29.  Frustrated by Principal Hill's decision not to name him Tech Coordinator, Plaintiff embarked on a bitter campaign that involved, but was not limited to: (i) stalking his colleague in hopes of finding some wrongdoing for which he could file a grievance (*see id.* ¶¶ 43-48); (ii) fighting with the UFT and SLT leadership (*see id.* ¶¶74-82); (iii) recording conversations without the consent of participants (*see id.* ¶¶ 49-50, 73, 76); (iv) reading the personal emails of his colleagues (*see id.* ¶¶ 97, 133(d)-(e)); (v) posting confidential DOE documents on his personal website (*see id.* ¶¶ 98, 133(c)); (vi) revoking Principal Hill's administrator rights with respect to the Dreyfus49.com website (*see id.* ¶ 84, 133(a)); (vii) refusing to turn over ownership of the Dreyfus49.com website (*see id.* ¶¶ 91, 95-96m 133(b)); (viii) redirecting individuals from I.S. 49's historical websites to his own websites on which he chronicled his battle with the DOE (*see id.* ¶¶ 115-116, 133(h)-(i)); (ix) refusing to stay in designated areas and trying to listen to private conversations (*see id.* ¶ 104) and (x) making a series of false, unsubstantiated reports against his colleagues (*see id.* ¶¶ 108-112, 113-114, 118-122).  Indeed, at the conclusion of his § 3020-a hearing, the arbitrator determined that Plaintiff's conduct "[h]ad a disruptive and/or negative impact on students, staff, and/or administration at

I.S. 49 and the [DOE]" and "[c]aused negative publicity, ridicule, and notoriety to I.S. 49 and the [DOE]," and fined him $10,000.00.   *See id.* ¶ 134.

Defendants' legitimate concerns about the disruption caused by Plaintiff's speech and conduct justified his reassignment and the seeking of disciplinary charges, and Defendants are therefore entitled to summary judgment with respect to his First Amendment retaliation claim.   *See Pickering*, 391 U.S. at 568 (1968)

### D.   Alternatively, Plaintiff Cannot Establish Liability Against Chancellor Walcott, the City, or the DOE

Alternatively, Chancellor Walcott, the City, and the DOE are also entitled to summary judgment because Plaintiff cannot establish individual liability under § 1983 liability against Chancellor Walcott or municipal liability against the City or DOE.

### 1.   Plaintiff Cannot Establish Individual Liability Under  § 1983 Against Chancellor Walcott

To establish individual liability under § 1983, a plaintiff must show "(a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right."  *Back v. Hastings on Hudson*, 365 F.3d 107, 122 (2d Cir. 2004).  It is well-settled that an individual defendant cannot be held liable under § 1983 "merely because he held a high position of authority."  *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Therefore, a plaintiff asserting a § 1983 claim against an individual defendant must show that the individual was "personally involved in the unconstitutional conduct."  *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995).

Here, the factual record is bereft of any evidence that Chancellor Walcott was personally involved in any of the alleged actions against Plaintiff.  On the contrary, the undisputed facts show that although Plaintiff emailed Chancellor Walcott regarding his complaints, those communications were referred to the DOE's Division of Human Resources,

19

and Chancellor Walcott was not personally involved in Plaintiff's reassignment or in the seeking of § 3020-a charges.  *See* Rule 56.1 ¶¶106-107.  Therefore, Plaintiff cannot show that Chancellor Walcott "caused [Plaintiff] to be deprived of [his First Amendment] right," and his claim against Chancellor Walcott necessarily fails has a matter of law.  *See Back*, 365 F.3d at 122.

### 2.   Plaintiff Cannot Establish Municipal Liability Against the City or DOE

Where a plaintiff asserts a claim of discrimination under § 1983 against a municipality, the plaintiff must establish that "the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir 2004) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733-36 (1989) & *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-694 (1978)).  While a plaintiff need not identify an express rule or regulation, a plaintiff must show "a discriminatory practice of municipal officials" that was "so persistent or widespread as to constitute a custom or usage with the force of law," or "a discriminatory practice of subordinated employees . . . so manifest as to imply the constructive acquiescence of senior policy making officials."  *See Patterson*, 375 F.3d at 226 (internal citations omitted).  Municipal liability however, may not "be premised on a theory of respondeat superior." *Id*.

Here, Plaintiff's claims under 42 U.S.C. § 1983 against the City[8] and DOE fail as a matter of law because Plaintiff has not identified, and the evidence does not show, that any alleged retaliation was the result of an official policy or custom, or that any of the alleged decision-makers was a final policy maker such that their actions may result in municipal liability for either the City or DOE.   Thus, Plaintiff cannot demonstrate the existence of an identified

---

[8] As set forth above in Point I, the City is also entitled to summary judgment because it is not Plaintiff's employer and was not a decision-maker with respect to any alleged retaliatory conduct.

municipal policy or practice that was the "moving force [behind] the constitutional violation." *See Monell*, 436 U.S. at 694; *see also Moore v. City of New York*, 2010 U.S. Dist. LEXIS 19183, *14-19 (S.D.N.Y. Mar. 1, 2010) (dismissing § 1983 claims against the City and DOE, noting that there was no identified "policy, practice, or custom that caused the alleged violations of [plaintiff's] constitutional rights", that the superintendent, principal, and vice principal were not final policy makers, and that the Chancellor was not involved in the alleged violations of Constitutional rights").

### POINT II

### PLAINTIFF'S CIVIL SERVICE LAW § 75-B<br>CLAIM FAILS AS A MATTER OF LAW

New York Civil Service Law § 75-b ("Section 75-b" or "§ 75-b") prohibits public employers from retaliating against employees who disclose to a governmental body information "(i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action." *See* N.Y. Civ. Serv. L. 75-b(2)(A). However, by its express terms, § 75-b provides that only those public employees who are not covered by a collective bargaining agreement grievance procedure can bring action under the statute. *See* N.Y. Civ. Serv. L. § 75-b(3). Moreover, the definition of "public employer" set forth in § 75-b does not include individual employees. *See id.* at § 75-b(1)(a). Here, Plaintiff's claim under § 75-b fails as a matter of law and must be dismissed because (1) Plaintiff is a member of a bargaining unit whose collective bargaining agreement provides for a grievance procedure to redress his claim and (2) individual employees are not subject to suit under § 75-b.

**A.      Plaintiff is not Eligible for the Protections of Civil Service Law § 75-b**

As set forth in the statute, a public employee who is covered by a collective bargaining agreement that (1) contains provisions preventing an employer from taking adverse employment actions and (2) provides for final and binding arbitration to resolve grievances related to such actions must assert any violation of Civil Service Law § 75-b through the grievance process set forth in the collective bargaining agreement.  N.Y. Civ. Serv. L. §75-b(3)(b); *see Munafo v. Metro. Transp. Auth.*, Civ. No. 98 CV-4572 (ERK), 00-CV-0134 (ERK), 2003 U.S. Dist. LEXIS 13495, *93-94, (E.D.N.Y. Jan. 22, 2003) ("An employee may bring suit under § 75-b in a court of competent jurisdiction only where a collective bargaining agreement does not substitute its own grievance procedure for the relief encapsulated by the statute.") (collecting cases).

Here, Plaintiff is a member of the UFT and was at all times relevant to this litigation subject to the grievances procedures set forth in the collective bargaining agreement between the Board of Education of the City School District of the City of New York and the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO, effective October 31, 2009 (the "CBA").  *See* Rule 56.1 ¶¶ 4-6.   The CBA provides plaintiff with a dispute resolution process, culminating in arbitration, to resolve grievances[9] and special complaints.[10]   Thus, under the provisions of the CBA, Plaintiff was required to grieve any

---

[9] The term "grievance" is defined to include complaint that an employee "has been treated unfairly or inequitably by reason of any act or condition which is contrary to established policy or practice governing or affective employees…"  *See id.* ¶ 7; Fain Decl., Ex. B, at 122.

[10] "A 'special complaint' is a complaint by an employee in the bargaining unit that persons or groups are engaging in a course of harassing conduct, or in acts of intimidation, which are being directed against him/her in the course of his/her employment and that the school principal or community or assistant superintendent has not afforded the employee adequate relief against such course of conduct or acts of intimidation."  *See* Rule 56.1 ¶ 9; Fain Decl., Ex. B, at 135.

alleged complaint encompassed by § 75-b. He has not alleged or established that he did so, and his claim under § 75-b necessarily fails as a matter of law and must be dismissed. *See Ehrlich v. Dep't of Educ. of the City of New York*, 2013 N.Y. Misc. LEXIS 5202, *7-8, 2013 NY Slip Op 32875(U), 7 (N.Y. Sup. Ct. Nov. 7, 2013) ("Because Ehrlich is covered by a CBA containing a grievance procedure governing and directing the informal resolution of disputes under the Agreement, she may not sue the DOE directly, but, instead, is bound to follow the grievance procedure outlined in the CBA and exhaust all administrative remedies prior to seeking judicial relief. Accordingly, the Court finds that Ehrlich's failure to exhaust her remedies under the CBA warrants dismissal of her [§ 75-b] retaliation claim.") (internal citations omitted).[11]

### B.    Individual Public Employees May Not be Sued Under § 75-b

Even if Plaintiff is deemed eligible to bring a claim under § 75-b, his claim nonetheless fails against the Individual Defendants because individual employees may not be sued under the statute. Section 75-b defines and limits "public employer" to include only:

> (i) the State of New York, (ii) a county, city, town, village, or any other political subdivision or civil division of the state, (iii) a school district or any governmental entity operation a public school, college or university, (iv) a public improvement or special district, (v) a public authority, commission, or public benefit corporation, or (vi) any other public corporation, agency, instrumentality or unit of government which exercises governmental power under the laws of the state.

*See* Civil Service Law § 75-b(1)(a). Thus, on its face, the statute does not permit suit against individuals. *Id.*; *see Kerwin v. New York State Office of Mental Health*, 665 F. Supp. 1034, 1039 (E.D.N.Y. 1987) ("Public employees in their individual capacities do not belong to the class of defendant defined by the statute. A public employee, regardless of rank, is not the employer of a

---

[11] Notably, the very CBA that covers Plaintiff in this litigation was at issue in *Ehrlich*, and thus has been found to preclude a teacher's claim under New York Civil Service Law 75-b where the teacher did not first exhaust her administrative remedies.

fellow employee.  Therefore, a public employee in his individual capacity may not be sued under § 75-b."); *see also Shanahan v. New York*, Civ. No. 10 Civ. 0742, 2011 U.S. Dist. LEXIS 6384, *31 (S.D.N.Y. Jan. 24, 2011) ("Nor may a plaintiff assert a Section 75-b claim against individuals.  Section 75-b allows suits only against 'public employers'"); *Franks v. State of New York Office of Mental Retardation & Developmental Disabilities*, 86 A.D.3d 183, 188 (N.Y. App. Div. 3d Dep't 2011) (holding that "[c]onsistent with the statutory language … we have previously held that the statute does not apply separately to individual public employees" and affirming dismissal of individual defendants from the § 75-b cause of action").

Accordingly, Plaintiff's claim under Civil Service Law § 75-b must be dismissed against the Individual Defendants.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court issue an Order granting Defendants' motion for summary judgment and dismissing Plaintiff's claim in its entirety, with prejudice, and awarding Defendants such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            May 4, 2016

                              **ZACHARY W. CARTER**
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-173
                              New York, N.Y. 10007
                              (212) 356-0879
                              cfain@law.nyc.gov

                              By:  _____/s/_____
                                   Courtney Fain
                                   Assistant Corporation Counsel

TO:    GLASS KRAKOWER LLP
       100 Church Street, 8th Floor
       New York, New York 10007
       212.537.6859
       Attention: Bryan Glass