UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

FRANCESCO PORTELOS

                                              Plaintiffs,

v.

CITY OF NEW YORK; NEW YORK DEPARTMENT OF
EDUCATION; DENNIS WALCOTT, CHANCELLOR OF
NEW YORK CITY DEPARTMENT OF EDUCATION;
LINDA HILL, PRINCIPAL OF I.S. 49, IN HER
OFFICIAL AND INDIVIDUAL CAPACITIES, ERMINIA
CLAUDIO, IN HER OFFICIAL AND INDIVIDUAL
CAPACITIES AS DISTRICT SUPERINTENDANT,

                                              Defendants.

---------------------------------------------------------------------- x

**DEFENDANTS LOCAL
RULE 56.1 STATEMENT OF
UNDISPUTED MATERAL
FACTS**

No. 12 CV 3141 (LDH)(VS)

        Pursuant to Rule 56.1 of the Local Civil Rules of this Court, defendants City of New York (the "City"), Board of Education of the City School District of the City of New York (also known as and being sued herein as the New York City Department of Education ("DOE")), Chancellor Dennis Walcott, Principal Linda Hill, and Superintendent Erminia Claudio (collectively, "Defendants"), by their attorney ZACHARY W. CARTER, Corporation Counsel of the City of New York, submit the following statement of material facts as to which they contend there is no genuine issue to be tried.

**Plaintiff Francesco Portelos**

        1.     Plaintiff is a tenured teacher, employed by the DOE since May 2007.  *See* Deposition Testimony of Francesco Portelos, taken on April 24, 2014, September 26, 2014, and October 22, 2014 ("Portelos Tr."), attached as Ex. A to the Declaration of Courtney P. Fain, dated May 4, 2016 (the "Fain Declaration" or "Fain Decl."), at 36:7-12; 40:2-3.

2. Prior to his employment with the DOE, Plaintiff was employed as an environmental engineer at Environmental Planning and Management. *See id.* at 31:3-7.

3. Plaintiff has two minor children, neither of whom are students at I.S. 49. *See id.* at 9:6-11.

**Collective Bargaining Agreement**

4. At all times during his employment with the DOE, Plaintiff has been a member of the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO ("UFT"). *See id.* at 71:11-17.

5. The UFT is party to a collective bargaining agreement with the DOE that governs the terms and conditions of the employment of teachers by the DOE. *See* Collective Bargaining Agreement between the Board of Education of the City School District of the City of New York and the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO, effective October 31, 2009 (the "CBA"), attached as Ex. B to the Fain. Decl.

6. Article 22 of the CBA requires that bargaining unit members follow a multi-step dispute resolution procedure, culminating in arbitration, with respect to grievances. *See id.* at 122-134.

7. A "grievance" is defined to include a complaint that an employee "has been treated unfairly or inequitably by reason of any act or condition which is contrary to established policy or practice governing or affecting employees…" *See id.* at 122.

8. Article 23 of the CBA provides for an alternative, expedited dispute resolution procedure relating to special complaints. *See id.* at 135-136.

9. As set forth in Article 23, "[a] 'special complaint' is a complaint by an employee in the bargaining unit that persons or groups are engaging in a course of harassing

conduct, or in acts of intimidation, which are being directed against him/her in the course of his/her employment and that the school principal or community or assistant superintendent has not afforded the employee adequate relief against such course of conduct or acts of intimidation." *See id.* at 135.

**Plaintiff's Employment at I.S. 49**

10.     Plaintiff began his employment with the DOE as a substitute teacher at I.S. 49 (also known as the Berta A. Dreyfus School) in May 2007.  *See* Fain Decl., Ex. A (Portelos Tr.), at 36:7-12.

11.     I.S. 49 serves students in sixth, seventh, and eighth grades.  *See id.* at 38:6-8.

12.     Plaintiff was appointed as a full-time STEM (Science, Technology, Engineering and Math) teacher at I.S. 49 as of September 2007.  *See id.* at 36:7-10; 37:13-18.

13.     Plaintiff was hired by Linda Hill, principal of I.S. 49.  *See id.* at 36:13-22.

14.     Plaintiff became a tenured teacher in September 2010.  *See id.* at 40:2-3.

15.     In the fall of 2011, Plaintiff was elected as a UFT delegate at I.S. 49 and began attending UFT consultation committee meetings.  *See id*. at 68:2-3; 71:7-10.

16.     Dr. Richard Candia, also a teacher at I.S. 49 at that time, was the UFT chapter leader at the school.  *See id*. at 208:8-10.

**The I.S. 49 Tech Coordinator**

17.     Until June 2011, Matthew Valia, another technology teacher at I.S. 49, served as the school's Tech Coordinator, which was a compensatory position whereby Mr. Valia taught five fewer class periods per teaching cycle than other teachers and used that time to resolve technology issues for the school.  *See id.* at 46:6-21; 49:19-20; 77:11-13, 17-25.

18.     Plaintiff assisted Mr. Valia in the performance of his duties as Tech Coordinator.  *See id.* at 46:22-24; 47:7-21; 49:21-23.

19.     Plaintiff did not receive any compensatory periods for the time spent assisting Mr. Valia.  *See id.* at 82:21-83:1.

20.     Mr. Valia left I.S. 49 in June 2011, and Michael Rossicone took over many of his teaching duties.  *See id.*79:16-21.

21.     However, the role of Tech Coordinator was not filled.  *See id.* at 103:14-16.

22.     Instead, Mr. Valia's duties relating to resolving technology issues for the school were divided among Plaintiff, Mr. Rossicone, and Sarah Blanchard (another teacher who had assisted Mr. Valia).  *See id.* at 82:13-18

23.     Plaintiff disagreed with Principal Hill's decision to appoint Mr. Rossicone to assume some of the duties previously performed by Mr. Valia, and was "upset" that he (Plaintiff) was not named Tech Coordinator.  *See id.* at 80:1-16; 81:19-25.

24.     Plaintiff expressed his desire for the position, and dissatisfaction with Principal Hill's decision not to appoint him Tech Coordinator, in a series of emails throughout the summer of 2011.  *See id.* at 82:1-9; *see also* Email from Plaintiff to Principal Hill, dated July 2, 2011 ("July 2, 2011 Email"), attached as Ex. C  to the Fain Decl.

25.     Plaintiff referred to Principal Hill's decision not to consult him about the Tech Coordinator position as a "slap in the face."  *See* Fain Decl., Ex. C (July 22, 2011 Email), at PD00034154.

26.     Plaintiff also requested that, beginning in September 2011, he receive the five compensatory periods to which Mr. Valia had been entitled.  *See* Fain Decl., Ex. A (Portelos Tr.), at 82:6-9.

27.     However, Principal Hill informed Plaintiff, Mr. Rossicone, Ms. Blanchard, that they would receive four compensatory periods for the technology duties, with two to Mr. Rosscione and one each to Plaintiff and Ms. Blanchard.  *See id.* at 82:13-18.

28.     On October 8 2011, Plaintiff informed Principal Hill that because he did not receive the five compensatory periods, he would no longer assist in the technology program for the school.  *See id.* at 85:5-18; 86:12-22; 113:1-5; *see also* Email from Plaintiff to Linda Hill, dated October 8, 2011, attached as Ex. D to the Fain Decl.

29.     The dispute over the appointment to Tech Coordinator led to "relations between the admin and [Plaintiff] [to] have deteriorated more … [.]" *See*  Email from Plaintiff to Michael Rossicone, Sarah Blanchard, and Steven Filatro, dated September 23, 2011, attached as Ex. E to the Fain Decl.

**The School Leadership Team**

30.     In September 2011, Plaintiff was appointed to the vacant position on the I.S. 49 School Leadership Team ("SLT") that had been held by Mr. Valia.  *See* Ex. A (Portelos Tr.) at 97:27-98:5.

31.     SLTs are advisory bodies that work collaboratively with schools to develop education policies and ensure implementation of said polices.  *See* Chancellor's Regulation A-655, attached as Ex. F to the Fain Decl., at 1.

32.     The SLT is responsible for developing the Comprehensive Education Plan ("CEP").  *See id.*

33.     Although the SLT generally is composed of faculty members and selected parents of students in the school, the only three mandatory members of the SLT are the school's principal, the Parent Association president, and the UFT Chapter Leader.  *See id.* at 2-3.

34.     Plaintiff's role on the SLT was as a teacher.  *See* Fain Decl. at Ex. A (Portelos Tr.), at 131:25-132:1; *see also* SLT Sign-In Sheets for Meetings on September 13, 2011, October 11, 2011, November 15, 2011, and December 13, 2011 ("SLT Sign-In Sheets"), attached as Ex. G to the Fain Decl.

35.     Parent members of the SLT must be elected by the school Parent Association, and parents may not serve as parent members in schools in which they are employed.  *See* Fain Decl., Ex. F, at 3.

36.     Plaintiff received compensation for his time spent participating in the SLT.  *See* Fain Decl., Ex. A (Portelos Tr.), at 96:14-16.

**Plaintiff's Ownership and Oversight of School Website**

37.     In October 2009, Plaintiff created a website for I.S. 49, with the domain name Dreyfus49.com.  *See* Fain Decl., at Ex. A (Portelos Tr.), at 88:6-11; 89:17.

38.     Plaintiff owned the domain name, paid the yearly dues to maintain the domain, and was an administrator for the website.  *See id.* at 89:25-90:8, 93:6-8.

39.     All faculty members and students at I.S. 49 had e-mail addresses on the Dreyfus49.com domain.  *See* Deposition Testimony of Linda Hill, taken on April 19, 2013 ("Hill Tr."), attached as Ex. H to the Fain Decl., at 110:24-111:8.

40.     As administrator, Plaintiff could read all of the emails sent through the domain, including those of faculty members.  *See id.* at 93:20-24.

**Plaintiff's Conduct and Performance Throughout the Fall of 2011**

41.     On November 4, 2011, Plaintiff sent an email to the I.S. 49 staff requesting that they not call for technology assistance during class time.  *See id*. at 233:21-25; *see also* Email Chain between Linda Hill and Plaintiff, dated November 4, 2011, attached as Ex. I to the Fain Decl.

42.     Principal Hill replied to the email, reminding Plaintiff that she had instructed that he not send out emails to the faculty without her consent.  *See* Fain Decl., Ex. A (Portelos Tr.) at 114:19-23; 115:24-25; *see also* Fain Decl., at Ex. I.

43.     Also in November 2011, Plaintiff began an investigation of Ms. Blanchard, one of the teachers who had assumed some of the duties previously performed by Mr. Valia in his role as Tech Coordinator.   *See* Fain Decl., Ex. A (Portelos Tr.) at 111:6-20; 112:19-21.

44.     Plaintiff believed that Ms. Blanchard impermissibly had been given compensatory (i.e., free) periods when she was supposed to be teaching.  *See* Fain Decl., Ex. A (Portelos Tr.) at 111:13-17; *see also* Email from Plaintiff to Mala Ruzi, dated December 21, 2011 (December 21st Email), attached as Ex. J to the Fain Decl.

45.     Plaintiff launched his investigation of Ms. Blanchard because he wanted to file a grievance in connection with Principal Hill's decision not to assign him the Tech Coordinator role (and with it, the five compensatory periods).  *See* Fain Decl., Ex. A (Portelos Tr.), at 110:2-13.

46.     Throughout his tenure at I.S. 49, Plaintiff's classroom was Room 229, on the second floor of the building, but as part of his investigation, he went to the third floor and

walked repeatedly by Ms. Blanchard's classroom in order to ascertain whether she was teaching. *See id.* at 69:16-20, 110:21-25, 112:19-21.

47.     He also made inquiries with respect to her schedule with the administration.  *See* Fain Decl., Ex. J (December 21st Email).

48.     Ms. Blanchard was concerned by Plaintiff's actions, and reported them to Principal Hill.  *See* Fain Decl., Ex. H (Hill Tr.), at 202:24-203:10.

49.     In late November or early December 2011, Plaintiff recorded, without Principal Hill's consent, a conversation between him and Principal Hill that took place in Principal Hill's office.  *See* Fain Decl., Ex. A (Portelos Tr.) at 98:21-99:3, 99:19-21.

50.     The tape-recorded conversation pertained to comments allegedly made by Ms. Aguirre, an Assistant Principal at I.S. 49, regarding Plaintiff's election as UFT delegate.  *See id.* at 99:8-16.

51.     Plaintiff asked Principal Hill whether "anyone in the administration [had] a problem with [him]" and she responded "not that I know of."  *See id.* at 101:13-18.

52.     Plaintiff did not keep a copy of the recording because "it was of no use to [him]."  *See id.* at 100:23-101:6.

53.     On December 6, 2011, Assistant Principal Anne Marie Martino conducted a formal observation of Plaintiff's teaching.  *See* Formal Teacher Observation, dated December 9, 2011, attached as Ex. K to the Fain Decl.

54.     While Plaintiff's observation was rated as satisfactory, the summarized comments noted concerns about his classroom management, such as the "strong need to address the problem of multiple students calling out your name simultaneously for assistance." *See id.* at PERS 0087.

**The December 13, 2011 SLT Meeting**

55.     On November 27, 2011, Principal Hill sent an email to the entire staff at I.S. 49, informing it that the I.S. 49 CEP was due soon, and further outlining the three educational goals set forth in the CEP for the 2011-2012 school year.  *See* Email from Linda Hill to allsaff@drefus49.com, dated November 27, 2011, attached as Ex.  L to the Fain Decl., at PD00049278.

56.     The SLT met on December 13, 2011.  *See* Fain Decl., Ex. A (Portelos Tr.), at 125:6-12; Fain Decl., Ex. G (SLT Sign-In Sheets), at SLT Minutes 000019.

57.     Prior to Principal Hill's arrival at the SLT meeting, Plaintiff asked the members in attendance if they would be discussing the CEP.  *See* Fain Decl., Ex. A (Portelos Tr.), at 166:4-7.

58.     When Principal Hill arrived, Suzanne Abramowitz, another faculty member and Chairperson for SLT, informed Principal Hill that the SLT was discussing the CEP. *See id*. at 166:13-16.

59.     Principal Hill informed the members of the SLT that she had submitted the CEP on December 1, 2011.  *See id*. at 126:15-16; 166:17-22.

60.     The version of the CEP submitted in December 1, 2011, was a draft.  *See* Fain Decl., Ex. H, at 177:24-178:1, 178:17-18.

61.     The deadline for the final version of the CEP was in April 2012.  *See id*. at 178:3-7.

62.     There was no further discussion about the CEP with Principal Hill at the December 13, 2011, SLT meeting.  *See id*. at 168:8-11.

63.     On or about December 14, 2013, following the SLT meeting, Plaintiff emailed certain parent members of the SLT as well as Ms. Abramowitz and Dr. Candia, that he had been informed that the submission of the CEP without the input of the SLT was in violation of the Chancellor's Regulations and New York State law.  *See id*. at 176:12-177:23.

64.     Plaintiff did not make any inquiries regarding the school budget in December 2011.  *See id*. at 188:8-18; 191:20-192:2.

**The January 9, 2012 SLT Meeting**

65.     The SLT met again on January 9, 2012.  *See* Fain Decl., Ex. A (Portelos Tr.), at 185:13-14; SLT Meetings for January 10, 2012, Meeting, attached as Ex. M to the Fain Decl.

66.     The CEP was discussed, and Plaintiff noted his objections, including that the goals set forth were, in his view, insufficient for the school.  *See* Fain Decl., Ex. A (Portelos Tr.), at 178:18-25, 198:15-21.

67.     Plaintiff also opined that there should be a fourth goal for the CEP, geared toward the remaining students who were not targeted in the first three goals.  *See id*. at 201:2-7; *see also* Fain Decl., Ex. M, at SLT Minutes 000021.

68.     Plaintiff subsequently met with Ms. Abramowitz and Principal Hill, at his request, to discuss the fourth goal of the CEP.  *See* Fain Decl., Ex. A (Portelos Tr.), at 208:23-209:12.

69.     Plaintiff was encouraged to work on identifying a fourth goal, but he had not identified one at that point.  *See id*. at 209:13-22; 210:16-22.

**Events During January, February, and March 2012**

70.     On or about January 25, 2012, Plaintiff assisted the police in finding an iPhone that had been stolen from a teacher, and subsequently posted about the event on his Facebook account.  *See id*. at 225:22-226:16, 228:3-10.

71.     The New York Post contacted Plaintiff regarding the incident.  *See id.*. at 226:17-22.

72.     On January 26, 2016, Plaintiff met with Principal Hill regarding the call from the New York Post, and Principal Hill expressed concern that Plaintiff was posting information about incidents at the school on Facebook.  *See id*. at 231:20-232:1, 232:10-15, 232:2-9.

73.     Plaintiff recorded this meeting without Principal Hill's consent.  *See id*. at. 237:21-24.

74.     Plaintiff subsequently met with Ms. Abramowitz and Dr. Candia, and the three had a "heated" discussion.  *See id*. at 235:12-19, 241:19-20.

75.     Following that meeting, Plaintiff, Ms. Abramowitz, and Dr. Candia went into another classroom where other teachers were meeting.  *See id*. at 241:3-7.

76.     Plaintiff's phone was in his pocket, and he recorded both meetings without informing others.  *See id*. at 237:21-24; 242:10-13.

77.     After those meetings had ended, Plaintiff went to Principal Hill's office, where Principal Hill, Ms. Abramowitz, and Ms. Aguirre were meeting.  *See id*. at 243:24-244:5.

78.     Plaintiff was told he was a "hindrance to the community," and reference was made to his Facebook posts regarding the school and his colleagues.  *See id*. at 244:5-14.

79.     On January 27, 2012, Dr. Candia and Ms. Abramowitz submitted written statements regarding Plaintiff's conduct on January 26, 2012.  *See* Written Statement of Richard Candia, dated January 27, 2012, attached as Ex. N to the Fain Decl.; Written Statement of Susanne Abramowitz, attached as Ex. O to the Fain Decl.

80.     Also on January 27, 2012, Plaintiff attended a UFT meeting at I.S. 49, during which he informed those present that someone was giving Principal Hill the Facebook posts of UFT members, and asked Dr. Candia "et tu, Brutus?"  *See* Fain Decl., Ex. A (Portelos Tr.), at 264:10-16, 266:9-15.

81.     In an email on that same date, Dr. Candia, the I.S. 49 UFT Chapter Leader, informed Plaintiff that he was no longer a member of the I.S. 49 UFT consultation committee, and requested Plaintiff's resignation as an I.S. 49 UFT delegate.  *See* Email Correspondence between Plaintiff and Richard Candia, dated January 27, 2012, attached as Ex P to the Fain Decl..

82.     Plaintiff forwarded the email, through his Dreyfus49.com account, to all members of the UFT at I.S. 49, which included nearly the entire staff of I.S. 49.  *See id.*; *see also* Fain Decl., Ex. A (Portelos Tr.) at 273:3-274:2.

83.     Principal Hill immediately suspended Plaintiff's email account on Dreyfus49.com on grounds that Plaintiff once again "disobeyed [her] directive [to not email the staff without her approval] by replying to a message sent to [Plaintiff] from a staff member to the entire staff, without informing [Principal Hill] …"  *See* Email Correspondence between Plaintiff and Linda Hill, dated January 29, 2012, attached as Ex. Q to the Fain Decl.

84.     On January 28, 2012, Plaintiff accessed Dreyfus49.com, and unilaterally rescinded the administrator rights of all other personnel at I.S. 49, including Principal Hill.  *See*

Opinion and Award, dated April 30, 2014, in the Matter of New York City Department of Education v. Francesco Portelos Pursuant to Education Law § 3020-a, SED File No. 22,380 ("3020-a Award"), attached as Ex. R to the Fain Decl., at 75-77.

85.     On January 29, 2012, Plaintiff emailed Superintendent Erminia Claudio, informing her that he believed he was "under attack" after raising concerns about the SLT and union meetings.  *See* Fain Decl., Ex. R (3020-a Award), at 22.

86.     Also on January 29, 2012, Principal Hill informed the faculty at I.S. 49 that as part of the school safety protocol, no one was permitted in the building before 6:30 a.m. or after 5:30 p.m. unless he or she had first submitted a written request for approval to Principal Hill.  *See* Email from Linda Hill to allstaff@dreyfus49.com, dated January 29, 2012, attached as Ex. S to the Fain Decl., at PD00045650.

87.     On February 1, 2012, Plaintiff met with Principal Hill and Assistant Principal Aguirre to discuss two allegations of professional misconduct: (1) Plaintiff's use of his Dreyfus49 email account to send a mass email on January 27, 2012, without prior approval by Principal Hill and (2) Plaintiff's behavior at his meetings with Dr. Candia, Ms. Abramamowiz, and other teachers on January 26, 2012.  *See* Letter from Joanne Aguirre to Plaintiff, dated February 7, 2012, attached as Ex. T to the Fain Decl.; Letter from Linda Hill to Plaintiff, dated February 7, 2012, attached as Ex. U to the Fain Decl.

88.     Plaintiff received a letter to file with respect to both incidents.  *See* Fain Decl., Exs. T & U.

89.     On February 9, 2012, Plaintiff remained at I.S. 49 until 5:57 p.m. without prior approval from Principal Hill.  *See* Letter from Linda Hill to Plaintiff, dated February 17, 2012 ("February 17th Letter"), attached as Ex. V to the Fain Decl.

13

90.     On February 14, 2012, Plaintiff, Principal Hill, Superintendent Claudio, a UFT district representative met to discuss the recent issues at I.S. 49, including access to and ownership of Dreyfus49.com.  *See* Fain Decl., Ex. A (Portelos Tr.), at 292:13-293:9; *see also* Letter from Linda Hill to Plaintiff, dated March 12, 2012 ("March 12th Letter"), attached at Ex. W to the Fain Decl.

91.     At that meeting, Plaintiff agreed to transfer ownership of Dreyfus49.com to Principal Hill.  *See* Fain Decl., Ex. A (Portelos Tr.), at 293:6-9

92.     Also at the February 14, 2012 meeting, Principal Hill discussed Plaintiff having been in the school building past 5:30 p.m. in contravention to her directive on January 29, 2012.  *See* Fain Decl., Ex. V (February 17th Letter).

93.     Plaintiff was issued a letter to his file for insubordination as a result.  *See id.*

94.     On or about March 9, 2012, Plaintiff launched his personal website, ProtectPortelos.org.  *See* Email from taximomsla@aol.com to Principal Hill, dated March 10, 2012, attached as Ex. X to the Fain Decl.

95.     Despite repeated requests that he comply with his promise to transfer ownership of Dreyfus49.com to Principal Hill, Plaintiff had not done so by mid-March, 2012. *See* Fain Decl., Ex. R (3020-a Award), at 80; *see also* Fain Decl., Ex. W (March 12th Letter).

96.     Plaintiff never transferred ownership, but instead terminated the Dreyfus49.com website on March 19, 2012.  *See* Fain Decl., Ex. R (3020-a Award), at 80.

97.     Prior to the termination, however, Plaintiff improperly accessed the email accounts of Principal Hill and Dr. Candia to search for emails discussing him.  *See id.* at 52-56.

98.     Plaintiff also posted the confidential written statements of Dr. Candia and Principal Hill, referenced above in ¶ 78, on his personal website.  *See id.* at 49-61.

**Allegations of Financial Misconduct by Administrators at I.S. 49**

99.     On the evening of January 26, 2012, Liz Simpson sent an email to the Special Commissioner of Investigation ("SCI") alleging that Principal Hill was improperly receiving double payment for afterschool activities.  *See* Case Form, dated February 1, 2012, attached as Ex. Y to the Fain Decl.

100.    Liz Simpson sent additional email correspondence to SCI on March 20, 2012, reiterating her original concerns, and making additional allegations against Assistant Principal Diacomanolis.  *See* Case Form, dated April 4, 2012, attached as Ex. Z to the Fain Decl.

101.    Plaintiff subsequently acknowledged that he sent the emails to SCI under the pseudonym "Lizzy Simpson."  *See* Fain Decl., Ex. A (Portelos Tr.) at 247:19-21.

102.    Principal Hill was not aware of the reports to SCI regarding alleged financial misconduct until at least April 2012.  *See* Fain Decl., Ex. R (3020-a Award), at 43, n.17

**Plaintiff's Reassignment from I.S. 49 in April 2012**

103.    On April 25, 2012, Plaintiff was notified that, as a result of a pending investigation he was (i) being reassigned from I.S. 49; (ii) not to return to I.S. 49 without prior written permission; and (iii) no longer permitted to perform per session or other after school activities pending resolution of the investigation.  *See* Letter from Andrew Gordon to Plaintiff, dated April 25, 2012, attached as Ex. AA to the Fain Decl.

104.    Plaintiff was originally reassigned to the Petrides Center, located on Staten Island, but was subsequently reassigned to a Network office  in Ozone Park, Queens, after "he refused to stay in certain areas of [Petrides] and one day was found outside of [Superintendent

Claudio's] office listening to various conversations …"  *See* Email from Andrew Gordon to David Weiner and Lawrence Becker, dated June 12, 2012, attached as Ex. BB to the Fain Decl.

105.    While Superintendent Claudio requested Plaintiff's reassignment out of Petrides, the ultimate decision-maker with respect to where Plaintiff was transferred to was Andrew Gordon, then-Executive Director, HR Connect and Employee Relations at the DOE. *See id.*; *see also* Deposition Transcript of Ermenia Claudio, taken October 6, 2014 ("Claudio Tr."), attached as Ex. CC to the Fain Decl. at 63:8-15.

106.    In June 2012, Plaintiff emailed then-Chancellor Walcott with respect to his reassignment out of I.S. 49 to a location in Queens.  *See* Email Correspondence from Francesco Portelos to Dennis Walcott, Panel for Education Policy, and Michael Bloomberg, dated June 15, 2012, attached as Ex. DD to the Fain Decl.  (NYCE-0003504).

107.    His emails were referred to Andrew Gordon for response.  *See* Email Chain, dated June 25, 2012, attached as Ex. EE to the Fain Decl., at NYCE-0003608.

**Plaintiff's Conduct Post-Reassignment**

108.    In June 2012, Plaintiff reported to SCI as well as both Principal Hill and Superintendent Claudio that Denise Diacomanolis, an Assistant Principal at I.S. 49, touched children in an inappropriate manner.  *See* Email from Erminia Claudio to Andrew Gordon, dated June 21, 2012, attached as Ex. FF to the Fain Decl.; *see also*  Fain Decl., Ex. R (3020-a Award), at 90-92.

109.    Principal Hill filed a report with SCI regarding the allegation on June 19, 2012.  *See* Report of Special Commissioner of Investigation Richard J. Condon, dated April 25, 2013 ("SCI Report"), attached as Ex. GG to the Fain Decl., at 9.

110.     Plaintiff also filed a follow-up report with SCI regarding same on June 26, 2012.  *See* Email from Erminia Claudio to Andrew Gordon, dated June 26, 2012, attached as Ex. HH to the Fain Decl.

111.     In the course of SCI's investigation, Plaintiff informed SCI that he had taken a video of Ms. Diacomanolis "placing her hands on" a student in April 2012, two months prior to reporting the filing of a report with SCI.  *See* Fain Decl., Ex. GG (SCI Report), at 10.

112.     The allegations against Ms. Diacomanolis were not substantiated.  *See* Fain Decl., Ex. R (3020-a Award), at 91.

113.     In September 2012, Plaintiff falsely reported to a parent that a teacher at I.S. 49 was unlicensed.  *See id.* at 99-100.

114.     The teacher that Plaintiff falsely reported as being unlicensed was Ms. Wolfson, who was then the fiancé (and is now the wife) of Dr. Candia.  *See id.* at 100.

115.     In the fall of 2012, Plaintiff bought the domain for the website www.welearnandgrowtogether.com, which had been a website for I.S. 49 and was referred to in the school's voice message system, and re-directed all visitors to that website to his personal website on which he aired grievances about the school.  S*ee id.* at 82-85.

116.     In November 2012, after renewing the Dreyfus49.com domain, Plaintiff altered www.dreyfus49.com to direct visitors to his personal website on which he aired grievances about the school.  S*ee id.* at 85-90.

117.     In December 2012, Plaintiff showed the video purporting to show Ms. Diacomanolis touching a student, and spoke about the report at a meeting of the Community Education Council.  *See id.* at 92-94.

118. On January 10, 2013, Plaintiff reported to SCI that Assistant Principal Joanne Aguirre engaged in corporal punishment against a student. *See* Report of Unsubstantiated Case, dated June 5, 2013, attached as Ex. II to the Fain Decl.

119. That allegation was deemed unsubstantiated after investigation by SCI. *See id*.

120. On June 14, 2013, Plaintiff filed a complaint of race, color, and gender/sex discrimination against Principal Hill. *See* Confidential OEO Report, dated January 21, 2014, attached as Ex. JJ to the Fain Decl.

121. In the course of that investigation, Plaintiff informed investigators that he was the owner of the email system associated with Dreyfus49.com and he discovered on that system an email from Principal Hill, dated July 14, 2011, in which she requested referrals for minority and male teacher candidates. *See id.* at OEO000025.

122. The allegation of discrimination was not substantiated. *See id.* at OEO000028.

## Investigations by the Special Commissioner of Investigations

123. Between January 2012 and March 2013, the office of the Special Commissioner of Investigation ("SCI") received more than 35 complaints involving misconduct at I.S. 49. *See* Fain Decl., Ex. GG (SCI Report).

124. Plaintiff was both a complainant and subject in connection with SCI's investigation. *See id.* at NYCE-0004912.

125. The scope of SCI's investigation included, but was not limited to, allegations that Plaintiff (1) engaged in personal business during time in which he was supposed to be teaching; (2) made changes to the Dreyfus49.com website, including with respect to

administrator rights; (3) reviewed and distributed private email messages sent over the Dreyfus49 service; (4) inappropriately posted student information on his personal website and on YouTube; (5) inappropriately installed software on school computers; and (6) falsely reported that a teacher was uncertified. *See id.* at NYCE-0004912 – NYCE-0004920.

126.    SCI also investigated allegations by Plaintiff that (1) Assistant Principal Diacomanolis had inappropriately touched several students; (2) he received harassing email messages from a DOE computer; (3) that a paraprofessional who was a witness in his then-pending sexual harassment claim had been "promised a future position as a teacher at the school and given per session pay … in return for providing a statement favorable to the school." *See id.* at NYCE-0004920 – NYCE-0004925.

127.    SCI also investigated a confidential complaint that the administration at I.S. 49 had engaged in misconduct in the selection of a service provider for the school. *See id.* at NYCE-0004925 – NYCE-0004926.

128.    The SCI issued its findings on April 25, 2013, and referred its findings to the DOE for further action. *See id.* at NYCE-0004926.

129.    SCI concluded that some of the conduct attributed to Plaintiff was substantiated, but none of the complaints made by Plaintiff were substantiated. *See id.*

**<u>Charges Pursuant to Education Law § 3020-a</u>**

130.    In a letter dated May 23, 2013, Laura Hemans Brantley of the Office of Legal Services at the DOE, informed Plaintiff that probable cause had been found on the charges against him and that he was suspended, with pay, effective immediately. *See* Letter from Laura Hermans Brantley to Plaintiff, dated May 23, 2013, attached as Ex. KK to the Fain Decl.

131.    Plaintiff was subsequently charged with having engaged in misconduct, insubordination, conflicts of interest, criminal conduct, conduct unbecoming his profession, and neglect of duty.  *See* Fain Decl., Ex. R (3020-a Award), at 80.

132.    After more than 20 days of hearings, the Arbitrator sustained 11 charges brought against Plaintiff, and fined Plaintiff $10,000 for his misconduct.  *See id.* at 107.

133.    Specifically, the Arbitrator concluded that Plaintiff engaged in misconduct when he:

a)    On or about January 28, 2012, unilaterally rescinded the rights of all administrators of Dreyfus49.com, including Principal Hill (*see id.* at 75-77);

b)    In February 2012, refused to transfer control and/or ownership of Dreyfus49.com to Principal Hill or the DOE after agreeing to do so (*see id.* at 78-82)

c)    On March 16, 2012, disclosed confidential witness statements made by Dr. Candia and Ms. Abramowitz in connection with the January 26, 2012 meeting on ProtectPortelos.org (*see id.* at 49-51);

d)    In March 2012, prior to terminating Dreyfus49.com, searched Dr. Candia's email account on that domain and searched for emails containing the term "Portelos" (*see id.* at 52-54);

e)    Beginning in March 2012, accessed Principal Hill's email account at Dreyfus49.com and searched for emails containing the term "Portelos" (*see id.* at 55-56);

f)      In April 2012, prior to his reassignment from I.S. 49, recorded a video of a student at I.S. 49 without permission or authority (*see id.* at 90-92);

g)      In September 2012, falsely reported to a parent that a teacher at I.S. 49 was unlicensed (*see id.* at 99-100);

h)      In October 2012, altered the website welearnandgrowtogether.com, which had been a website for I.S. 49, to direct visitors to his personal website (*see id.* at 82-85)

i)      In November 2012, after renewing the Dreyfus49.com domain, altered www.dreyfus49.com to direct visitors to his personal website (*see id.* at 85-90); and

j)      In December 2012, distributed the video referenced in subparagraph (f) above to parents, without permission or authority, "instead of leaving it to SCI to investigate a highly sensitive issue" (*see id.* at 92-94).

134.   By committing the above actions, Plaintiff "[h]ad a disruptive and/or negative impact on students, staff, and/or administration at I.S. 49 and the [DOE]" and "[c]aused negative publicity, ridicule, and notoriety to I.S. 49 and the [DOE]" (*see id.* at 101-103).

135.   Plaintiff's application to set aside the findings of the arbitrator in the § 3020-a proceeding was denied by Justice Troia of the Supreme Court of New York County, Richmond County. *See Matter of Portelos v. New York City Bd. of Educ.*, Index No. 85023/14, 2015 N.Y. Misc. LEXIS 342, at *7 (N.Y. Sup. Jan. 28, 2015).

Dated:  New York, New York
       May 5, 2016

                          **ZACHARY W. CARTER**
                          Corporation Counsel of the
                            City of New York
                          Attorney for Defendants
                          100 Church Street, Room 2-173
                          New York, N.Y. 10007
                          (212) 356-0879
                          cfain@law.nyc.gov

                          By:              /s/
                                  Courtney Fain
                                  Assistant Corporation Counsel

TO:    GLASS KRAKOWER LLP
        100 Church Street, 8th Floor
        New York, New York 10007
        212.537.6859
        Attention: Bryan Glass

22