12 CV 3141 (LDH)(VS)

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

FRANCESCO PORTELOS,

Plaintiff,

-against-

CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF
EDUCATION OF THE CITY OF NEW YORK; DENNIS
WALCOTT, CHANCELLOR OF NEW YORK CITY
DEPARTMENT OF EDUCATION; LINDA HILL, PRINCIPAL
OF I.S. 49, IN HER OFFICIAL AND INDIVIDUAL
CAPACITY; ERMINIA CLAUDIO, IN HER OFFICIAL AND
INDIVIDUAL CAPACITIES AS DISTRICT
SUPERINTENDENT,

Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### GLASS KRAKOWER LLP

Attorneys for Plaintiff
100 Church Street, 8th floor
New York, NY 10007

Bryan D. Glass, Esq.
Tel: 212-537-6859
bg@glasskrakower.com

Served June 1, 2016

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................ i

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF MATERIAL FACTS...........................................................3

ARGUMENT            …………..................................................................4


POINT I

THERE ARE TRIABLE ISSUES OF MATERIAL FACT REGARDING WHETHER
PLAINTIFF HAS A CLAIM OF FIRST AMENDMENT RETALIATION .....................4

      A.  Plaintiff's Speech on Matters of Public Concern at School Leadership Team
Meetings About Budget and the Adoption of the School's Comprehensive
Education Plan Was Protected First Amendment Speech Because Plaintiff Was
Speaking as A Citizen and Not Simply as a Teacher at the School, and His Speech
on Matters of Public Concern Extended beyond the SLT to Official Investigative
Bodies and to the General Public………………………………………….5

      B.  To the Extent Not Already Decided in his favor by the 3020-a Hearing Officer,
Plaintiff's Speech on Matters of Public Concern at SLT Meetings, to Investigative
Bodies Outside his School, on Social Media, and as a UFT Advocate, Raise
Triable Issues of Fact as to Whether this Speech were Substantial Motivating
Factors for the Retaliatory Actions Against Him………..........................8

      C.  Plaintiff's Speech Was Not So Disruptive as to Justify the Retaliation he Suffered
for his First Amendment Protected Speech………………………………10

      D.  There are Triable Issues of Fact With Regard to Liability against the City of New
York and former Chancellor Dennis Walcott…………………………….11

POINT II

PLAINTIFF HAS MADE A VALID CLAIM UNDER CSL § 75-B………...................14

CONCLUSION……………………………………………………………………..17

**TABLE OF AUTHORITIES**

<u>Cases:</u>

<u>Burns v. Cook,</u>
   483 F. Supp. 29 (NDNY 2006) ............................. 2,14

<u>Burkybile v. Board of Education of Hastings-on-Hudson UFSD,</u>
   411 F. Supp. 306 (2d Cir. 2005) ........................... 4

<u>Connick v. Myers,</u>
   461 U.S. 138 (1983) ....................................... 4

<u>Garcetti v. Ceballos,</u>
   547 U.S. 410 (2006) ....................................... 4

<u>Herbert v. NYC Department of Education,</u>
   748 F.Supp.2d. 225 (SDNY 2010) ........................... 14

<u>Jackson v. City of New York,</u>
   2015 U.S. Dist. LEXIS 130386 (SDNY 2015).................... 6

<u>Jeter v. City of New York,</u>
   06 CV 3687 (EDNY July 13, 2012)........................... 13

<u>Pekowsky v. Yonkers BOE,</u>
   23 F. Supp. 3d 269 (SDNY 2014)............................. 6

<u>Ramirez v. Hempstead UFSD,</u>
   33 F. Supp. 3d 158 (EDNY 2014) ........................... 14

<u>Tucker v. City of New York,</u>
   2011 U.S. Dist. LEXIS 76814 (SDNY 2011).................... 8

<u>Ullah v. NYC Department of Education,</u>
   2014 U.S. Dist. LEXIS 112288 (SDNY 2014) .................. 5

<u>Waters v. Churchill,</u>
   511 U.S. 661 (1994) ....................................... 5

<u>Wetzel v. Town of Orangetown</u>
   2008 U.S. Dist. LEXIS 112370 (SDNY 2008) ................. 14

<u>Woodlock v. Orange Ulster B.O.C.E.S.</u>
   281 F. App'x 66, 68 (2d Cir. 2008) ....................... 14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
FRANCESCO PORTELOS,

                                                  12 CV 3141 (LDH)

                        Plaintiff,

            -against-

CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF EDUCATION; DENNIS
WALCOTT, CHANCELLOR OF NEW YORK
CITY DEPARTMENT OF EDUCATION; LINDA
HILL, PRINCIPAL OF I.S. 49 IN HER OFFICIAL
AND INDIVIDUAL CAPACITIES; ERMINIA CLAUDIO
IN HER OFFICIAL AND INDIVIDUAL CAPACITIES
AS DISTRICT SUPERINTENDENT,

                        Defendants.
-----------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**<u>PRELIMINARY STATEMENT</u>**

Plaintiff FRANCESCO PORTELOS, by his attorneys, GLASS KRAKOWER LLP,

submits this memorandum of law in response to Defendants' motion for summary judgment.

Defendants' motion should be denied and this matter should proceed on the previously scheduled

August 2016 trial date on all claims.

Plaintiff, a teacher employed by the New York City Department of Education ("DOE")

and formerly teaching at Intermediate School 49 ("I.S. 49") in Staten Island, brings this action

based upon Defendants' violations of 42 U.S.C. Section 1983 and New York Civil Service Law

Section 75-b ("CSL § 75-b") as a result of a barrage of retaliatory actions taken against him as a

teacher employed by Defendants, including, but not limited to, a retaliatory (but failed) attempt to terminate his tenured teaching employment.  After years of an excellent teaching record at the school, these retaliatory actions all came on the heels of Plaintiff reporting school administrators for various allegations of fraud and misconduct at the school, including raising budgetary concerns and violations of Chancellor's regulations at School Leadership Team (SLT) meetings, reporting financial and other administrator misconduct to DOE and DOE-related investigative offices including the Special Commissioner of Investigation (SCI) and the Office of Equal Employment Opportunity (OEO), and raising issues of public concern through social media outlets.  Plaintiff also was retaliated against for his speech as a UFT delegate and eventual UFT chapter leader, which is another independent basis for a viable First Amendment retaliation claim.  *See, e.g., Burns v. Cook*, 458 F. Supp. 29 (NDNY 2006) (union advocacy is quintessential First Amendment concern).

Defendants' motion for summary judgment should be denied because Plaintiff has several legitimate First Amendment retaliation claims.  Indeed, a neutral arbitrator who heard Plaintiff's disciplinary proceeding seeking his termination of employment found that Plaintiff's protected speech on matters of public concern was clearly a motivating factor in the disciplinary charges brought against him.

Further, Plaintiff's state law claim, pursuant to New York Civil Service Law § 75-b, should not be dismissed because there are sufficient facts to support the claim that his reports of improper governmental actions by administrators led to blatant retaliatory attempts against him, and he has exhausted all his remedies under his applicable Collective Bargaining Agreement ("CBA").  In the Court's previous decision denying Defendants' motion to dismiss in this action,

2

Judge Mauskopf already essentially rejected the same arguments being made by Defendants again on this now motion for summary judgment.

In addition, there is a viable basis to try claims against the City of New York (as the suable entity for claims against SCI) and former NYCDOE Chancellor Dennis Walcott. SCI's obvious selective investigation of complaints initiated by or against Plaintiff warrants a finding of liability against the City (separate from the NYCDOE), and former Chancellor Dennis Walcott had personal knowledge of Plaintiff's situation and was on national television discussing Plaintiff and his speech on social media.

## STATEMENT OF MATERIAL FACTS

For a statement of relevant material facts in this case, please see the accompanying Plaintiff's Counterstatement of Material Facts, with the material facts from Plaintiff commencing at Paragraph 136.

**ARGUMENT**

**POINT I**

**THERE ARE TRIABLE ISSUES OF MATERIAL FACT REGARDING WHETHER PLAINTIFF HAS A CLAIM OF FIRST AMENDMENT RETALIATION**

In order to prevail on a First Amendment retaliation claim, a plaintiff must demonstrate that he engaged in speech protected by the First Amendment, that he suffered an adverse employment action, and that a causal connection between the two existed, "in that the speech was a substantial or motivating factor for the adverse employment action." *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 313 (2d. Cir. 2005). The threshold inquiry in any First Amendment retaliation case is whether the employee was speaking as a citizen on a matter of public concern. *See Connick v. Meyers*, 461 U.S. 138, 147 (1983). In determining whether a public employee has engaged in constitutionally protected speech, the court must determine "whether the employee spoke as a citizen on a matter of public concern." *Woodlock v. Orange Ulster B.O.C.E.S.*, 281 F. App'x 66, 68 (2d. Cir. 2008) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

4

### A. Plaintiff's Speech on Matters of Public Concern at School Leadership Team Meetings About Budget and the Adoption of the School's Comprehensive Education Plan Was Protected First Amendment Speech Because Plaintiff Was Speaking as A Citizen and Not Simply as a Teacher at the School, and His Speech on Matters of Public Concern Extended beyond the SLT to Official Investigative Bodies and to the General Public.

It should be emphasized that the Section 3020-a hearing officer/arbitrator assigned to hear Plaintiff's disciplinary proceeding, Felice Busto, already found that "Respondent's raising issues of public concern with the SLT played a part in bringing him into the disciplinary arena." Fain Declaration, Exhibit R at 103. Therefore, the question of whether Plaintiff suffered retaliation for protected First Amendment speech of public concern already has been decided by one neutral decisionmaker. This finding by a neutral decisionmaker should be entitled to at least some collateral estoppel effect here.

The same 3020-a hearing officer also weighed Defendants' potential disruption argument under *Waters v. Churchill*, 511 U.S. 661 (1994) raised by Defendants as their excuse to punish his protected speech, analyzed the arguments raised by the DOE, and rejected them as not a basis to terminate Plaintiff's employment. Fain Declaration, Exhibit R at 96-99.

It appears that Defendants rely almost entirely on a single report and recommendation by a magistrate judge's in a *pro se* plaintiff case called *Ullah v. NYCDOE*, 2014 U.S. Dist. LEXIS 112288 (SDNY August 8, 2014), to argue that Plaintiff's speech as part of the SLT is not a matter of public concern. However, Plaintiff's speech goes far beyond the SLT activities of the Plaintiff in Ullah, who, as chairman of the School Leadership Team ("SLT") in his school, focused primarily on school-based issues such as parking permits, missed teacher preps, and student discipline problems, and was considered part and parcel of Ullah's duties as SLT chair. In contrast,

here, Plaintiff raised concerns specifically about CEP and budget issues at SLT meetings, was on

equal footing as the parents on the committee, and had no obligation to press these issues at all at

the SLT meetings as part of his teacher duties, and in fact was actively discouraged by

administration and others from doing so.  In addition, Plaintiff's speech on matters of public

concern went well beyond his activities on the SLT, but included reporting administrator

misconduct to designated investigative bodies outside the school such as SCI and OEO (some of

his allegations regarding financial misconduct by the principal was eventually substantiated), and

eventually on social media outlets to the general public.  In addition, to the extent Plaintiff raised

administrator misconduct as a UFT delegate and then as UFT chapter leader at the school, Plaintiff

has an additional source for his First Amendment speech claims in this action.  *See Jackson v. City

of New York*, 2015 U.S. Dist. LEXIS 130386 (SDNY 2015) (finding valid First Amendment

retaliation claim based on UFT chapter leader's activities on SLT); *Pekowsky v. Yonkers BOE*, 23

F.Supp.3d  269 (SDNY 2014).

Defendants simply make a broad and sweeping *conclusory* statements that all of the factual

underpinnings of Plaintiff's speech became available to him as a result of his role as a teacher and

SLT member without fully considering any of these other factors and arguments.  Contrary to the

Defendants' contentions, Plaintiff's speech clearly was not of the type normally made as part of a

teacher's official duties.  Nowhere in Plaintiff's job description was he required to raise concerns

about the school's budget or CEP, or investigate budgetary misconduct and inappropriate financial

fraudulent actions by the school's administration. Nor have the Defendants pointed to any specific

duties of Plaintiff as an employee of the DOE which required him to make these reports or raise

these public concerns.  Plaintiff's speech was not just personal to his own self-interest (given the

blatant and relentless retaliation he faced, one could argue it was *against* his own self-interest), but involved matters affecting the welfare of his entire school and the best interest of the community at large, including his two young children who are eventually slated to attend the school.

Plaintiff's speech did not concern issues for which "there is no relevant citizen analogue," but rather was motivated by genuine concerns as a member of the community and parent (including improving deficiencies in the school, and by making information available to the public). Neither was Plaintiff's speech "part and parcel" of his official duties as a teacher, as a teacher's duties clearly do not encompass reporting on these issues such as budgetary irregularities. Plaintiff was not speaking generally as an advocate for his students, nor as an employee as part of his duties, but as a citizen concerned about potential misconduct affecting not just his classroom or school, but the entire community.

Plaintiff's speech was also not made as part of any official duties as a member of the SLT. The SLT is comprised equally of staff and parents and is therefore not limited to school employees. Plaintiff originally joined the SLT because as a new parent, he wanted to be in a position to make positive changes in his community, like any concerned parent. The purpose of the SLT is to create school goals and align them with the budget. The meetings are open to the public and, as evidenced by the structure of the SLT, members of the community who are not teachers are part of these meetings. Plaintiff's speech was made because he was concerned that the $7.7 million budget, which is publicly posted online and derives from taxpayer dollars, was not being spent properly. He was not motivated by his duties as a teacher or member of the SLT, but rather as a taxpayer, member of the community and especially as a new father, whose sons would be eventually

attending IS 49.  *See Tucker v. City of New York*, 2011 U.S. Dist LEXIS 76814 (SDNY 2011)

(allegations of misuse of public funds by supervisors clearly matters of public concern).

> **B. To the Extent Not Already Decided in his favor by the 3020-a Hearing Officer, Plaintiff's Speech on Matters of Public Concern at SLT Meetings, to Investigative Bodies Outside his School, on Social Media, and as a UFT Advocate, Raise Triable Issues of Fact as to Whether this Speech were Substantial Motivating Factors for the Retaliatory Actions Against Him.**

It is undisputed that Plaintiff had an extremely positive and unblemished teaching record

before he made complaints at SLT meetings in December 2011 and January 2012, and outside I.S.

49, with no unsatisfactory observations or disciplinary letters, as found by the 3020-a hearing

officer who heard his case.   However after speaking up publicly about concerns about financial

improprieties, he was labeled "a hindrance to the community" by his school principal for

exercising his First Amendment rights.   From that point forward, Plaintiff faced a hurricane of

retaliatory events by consistently being painted and characterized as an enemy to the school

administration and his coworkers, was promptly railroaded out of the school, and made the subject

of over two dozen frivolous investigations, including allegedly "making lights blink in

classrooms."

The retaliatory actions against Plaintiff for exercising his First Amendment rights that

followed were voluminous, swift, and overwhelming.  The United Federation of Teachers ("UFT")

chapter leader Richard Candia, who in a two-faced fashion was reporting Plaintiff's objections to

the school principal without his knowledge while at the same time telling Plaintiff in multiple texts

that Principal Hill was corrupt and had to be removed, coordinated with the SLT chair Suzanne

Abramowitz to portray Plaintiff as violent and threatening.  Plaintiff was immediately removed by

Mr. Candia from the UFT consultation committee on January 27, 2012, and his email access was

8

cut off by the school administration.  When Plaintiff tried to reach out to the school superintendent Erminia Claudio to question why he was under attack in February 2012, he was retaliated against even more.  Such retaliation initially included numerous disciplinary letters to file (including for such frivolous allegations as insubordination for remaining in the  school after hours to work), and loss of access to running the school website, which Plaintiff had created and maintained since its inception.

When Principal Hill learned about Plaintiff's report of her own fraud against her to SCI, she wrote numerous letters to file and, for the first time, coordinated an unsatisfactory observation report to be written about his teaching pedagogy, and caused Plaintiff to be removed from the school and to be banned from per session pay opportunities.  When Plaintiff objected to his reassignment, he was then banished twenty miles and two boroughs away to Queens to sit in the notorious "rubber room" with no duties to perform.  Plaintiff, who had previously been repeatedly lauded for his contributions to his school, found himself placed in a basement storage room with two small gated windows and nothing to do. This was done counter to the Defendant's own Chancellor's regulations.  While reassigned, Plaintiff continued to publicly raise matters of public concern through social media, including the fact that he was being paid by taxpayers to do nothing, which was addressed on national television by former Chancellor Dennis Walcott.   Plaintiff continued to chronicle his unfair treatment on his website, raise additional matters of public concern, and share with the public the retaliatory acts taken against him and others.  In May 2013, the DOE coordinated a vague report with SCI to substantiate some allegations of misconduct against Plaintiff (some of which were planted and had to be later recanted), and then promptly brought up on 3020-a disciplinary charges seeking termination of his employment.  Plaintiff also

was eventually falsely arrested, at the behest of the DOE, for continuing to speak up publicly about the retaliatory treatment he was being subjected to. After being detained for thirty-three hours, the Kings County District Attorney declined to prosecute.

Based on the above, to the extent collateral estoppel has not already resolved these issues in his favor by the 3020-a arbitrator's specific finding of a link between his public speech and the disciplinary actions taken against him, there clearly are material issues of fact about the retaliatory actions taken against Plaintiff for his ongoing speech on matters of public concern.

**C. Plaintiff's Speech Was Not So Disruptive as to Justify the Retaliation he Suffered for his First Amendment Protected Speech.**

At his Section 3020-a hearing, Defendants argued that Plaintiff's speech was so disruptive to the NYCDOE that he should be terminated.  This argument was rejected by Hearing Officer Busto.  As noted above, triable issues of material fact clearly exist as to whether Plaintiff was retaliated against for disclosing legitimate fraud at the school (later substantiated) and speaking out against his school administration.  Plaintiff's January 26, 2012 report to SCI about Principal Hill's double dipping was ultimately substantiated by SCI years later after the federal magistrate judge in this case ordered the DOE to disclose the resolution of the reports Plaintiff filed against the school administration.  Incredibly, Defendants argue that Plaintiff's speech was disruptive and warranted punishment; rather than take any real action against the actual financial fraud and corruption belatedly acknowledged by the school administration. Even during her deposition, Defendant Superintendent Erminia Claudio stated that if Principal Hill was found guilty of double-dipping, it would only warrant a "letter to file." Indeed, the principal's financial fraud for double-dipping (reported in January 2012) was not promptly investigated and addressed until the spring

of 2015 (with only an $801 fine and no further disciplinary action against the principal), and inferentially only substantiated at all because the federal magistrate judge in this case ordered City Defendants (i.e., SCI and OSI) during the course of discovery to disclose the outcome of the investigations that Plaintiff had reported to SCI.  In contrast, SCI and DOE caused Plaintiff to be removed from his duties for years on false allegations, such as conducting a real estate practice while at work, and only begrudgingly recanted those allegations at the end of Plaintiff's disciplinary hearing where it sought to terminate his employment.  While Defendants repeatedly try to characterize Plaintiff as a dangerous and out of control man, this case illustrates a disturbing pattern of government power run amok by various DOE legal staff and administrators (repeatedly trying to hide their retaliatory actions under a broadbrush assertion of attorney-client privilege) coordinating to try to silence and punish a legitimate whistleblower who exposed and chronicled the retaliatory actions against him effectively in social media.   Consequently, to the extent it may be argued that Plaintiff's speech is disruptive, it is only insofar as it disclosed legitimate fraud against his school administration and attempted to prevent government abuse of power.   Since Plaintiff is currently working as a teacher in City schools now, as an Absent Teacher Reserve (ATR) teacher, and has been to almost twenty other schools since his 3020-a decision without issue, clearly Defendants' assertions of disruption were overblown.

**D. There are Triable Issues of Fact With Regard to Liability against the City of New York and former Chancellor Dennis Walcott.**

Defendants argue that the City of New York and Chancellor should be dismissed as Defendants at this juncture. Defendants' motion on these grounds should be denied.

Extensive discovery in this case established that the action or inaction of both the SCI office, and the DOE's Office of Special Investigation (OSI), was a substantial part of the retaliatory

11

actions Plaintiff suffered.  SCI and OSI failed to timely investigate the various reports Plaintiff filed with the agency against his school principal and administration for fraud and other misconduct.  Indeed, SCI failed to timely investigate the report about Principal Hill's double dipping financial fraud, first made by Plaintiff on January 26, 2012 anonymously, then publicly in his own name, which was eventually substantiated in October 2013 (though Defendants failed to disclose that this misconduct was substantiated until February 2015, and incredibly do not even acknowledge Principal Hill's admitted substantiated misconduct in their current motion papers, nor that shortly thereafter Principal Hill retired and/or resigned from the school as of June 2015). In contrast, investigations filed by Plaintiff's school administration with SCI against him were promptly investigated, even if frivolous, often often falsely as found by the 3020-a hearing officer. In addition, Plaintiff's whistleblower complaint to SCI was similarly summarily denied despite discovery in this case showing that SCI investigators and attorneys failed to adequately investigate Plaintiff's claims.

As Defendants' Rule 56.1 statement makes clear, SCI routinely "unsubstantiated" allegations made by Plaintiff against his school administrators, frequently without providing any details or rationale therefore.  Fain Declaration paragraphs 119, 122.  In fact, Defendants state that none of the complaints made by Plaintiff were substantiated; however, as noted above, discovery in this case demonstrated by Hill's doubledipping conduct being substantiated demonstrates the falsity of this claim. Many of the more than two dozen allegations made against Plaintiff were turned into disciplinary charges against him seeking to terminate his tenured employment as part of his Section 3020-a proceeding, while the misconduct he reported against Hill and other administrators were buried without full investigations.  Fain Declaration Paragraph 129.  What

12

Defendants fail to disclose in the Rule 56.1 Statement is that in fact the allegation—double dipping against Linda Hill—was eventually substantiated and led to her resignation shortly after, while at least one of the allegations against Plaintiff --concerning  selling real estate on the job, initially been substantiated by SCI, was later retracted by SCI, as false. It was also discovered that SCI improperly planted files into the investigation against Plaintiff.

To the extent that SCI is not an independent suable entity, but rather must be sued in the name of the City of New York, the City of New York should remain as the viable named Defendant in this action, in addition to the NYCDOE.  *See Jeter v. City of NY, NYCDOE*, 06 CV 3687 (July 13, 2012).

Defendants further concede that Chancellor Walcott was personally aware of the circumstances of his reassignment by the emails Plaintiff sent to him, and specifically referred Plaintiff's emails to his human resources personnel to deal with.  *See* Defendants' Rule 56.1 P 106. Former Chancellor Walcott was also personally aware of Plaintiff's circumstances and livestreaming from a DOE rubber room, because he was interviewed on various media outlets, including Fox 5, about why Plaintiff was doing so in October 2012, well before Plaintiff was served with 3020-a disciplinary charges in May 2013.

**POINT II**

<u>**PLAINTIFF HAS MADE A VALID CLAIM UNDER CSL § 75-B**</u>

It should be noted initially that Judge Mauskopf essentially dismissed Defendants' same

arguments in denying Defendants' motion to dismiss at the outset of this case.  See *2/28/13*

*decision denying Defendants' motion to dismiss.*  Discovery only has amplified the triable issues

of fact and viability of this claim.

In order to state a claim under CSL § 75-b, a plaintiff must disclose a violation of a law,

rule or regulation for which he reasonably believes constitutes an improper government action, to

a governmental body, and show a causal connection between the disclosure and an adverse

personnel action.  *Wetzel v. Town of Orangetown*, 2008 U.S. Dist. LEXIS 112370, *35-37 (SDNY

2008); *Herbert v. NYCDOE*, 748 F. Supp.2d 225 (SDNY 2010) (explaining retaliation against

individual reporting about financial misconduct in schools also violates New York Education Law

Section 302 and 3028-d).  Improper governmental action is action taken by a public employer in

connection with their official duties, in violation of rule, regulation, law or statute.  *Id.; see also*

*Burns v. Cook*, 458 F. Supp. 29 (NDNY 2006)(denying motion to dismiss on CSL 75-b claim);

*Ramirez v. Hempstead UFSD*, 33 F.Supp.3d 158 (EDNY 2014) (same).

Plaintiff has demonstrated a triable issue of fact on this claim.  Plaintiff reported numerous

improper governmental actions of his school administration to the attention of SCI, a non-DOE

government body.  He specifically alleged violations of the Chancellor's Regulations and New

York State Education Law regarding the adoption of I.S. 49's Comprehensive Education Plan and

budget, and even researched the SLT violations outside the school through an SLT expert named

John Calantjis.  Principal Hill specifically told Plaintiff that she knew he had been inquiring about

14

her per session activities to Superintendent Erminia Claudio, and Plaintiff did report Principal Hill's double-dipping financial fraud to SCI as improper government action, first anonymously and then publicly, which Hill certainly became aware of.  As a result, Plaintiff clearly suffered numerous adverse personnel actions, as he faced an increasingly hostile work environment from school administration after years of consistently positive praise including, *inter alia*, (1) his personal email and website, which he had developed specifically for the school, were suspended; (2) SCI investigators came to Plaintiff's school and seized a computer from his classroom as well as to his home to seize school equipment that he had been authorized by the school to take home for lessons and research; (3) he received his first ever disciplinary letters and Unsatisfactory-rated observation report; (4) he was reassigned from his teaching duties to a reassignment center, and then banished to another offsite in violation of Chancellor's Regulations; (5) his personal email account was blocked from sending to any NYCDOE email account; and (6) he was eventually made subject of an SCI investigative report in May 2013 and promptly brought up on Section 3020-a disciplinary charges seeking to terminate his employment. This pattern of adverse actions commenced almost immediately after Plaintiff reported the improper governmental actions of his school administration.

Defendants argue that even if Plaintiff did raise legitimate questions or concerns about violations of law or regulations, there is no indication that Plaintiff gave the DOE a reasonable time to take the appropriate action.  This argument is without merit. There is no strict standard for what constitutes a reasonable time to report, as indicated by the Defendants' vague and unspecific argument. Here, Plaintiff followed the standard SLT procedure by notifying the SLT Chairperson, Susan Abramowitz, of his concerns.  He also notified his UFT Chapter Leader and parents of

15

students at his school, as well as the PTA of the school.   *Id.* ¶¶ 17-18.  At this point, Plaintiff reasonably believed that this information would be transmitted to the Principal and any other relevant DOE designee.  Further, this was a time-sensitive matter.  The CEP was set to be implemented in 2012.  Because Plaintiff did not become aware of these violations until mid-December 2011, he was forced to act quickly, and did so by contacting SLT experts outside the school.  Given the circumstances, Plaintiff provided the DOE with more than ample time to rectify or address the situation, but no action was taken.

Defendants also argue that CSL § 75-b is inapplicable to the Plaintiff because his union's contract afforded him an ample procedural mechanism to challenge the employment actions about which he complains.  Plaintiff in fact did pursue these grievances. His Step 1 grievance regarding unwarranted letters in his file was filed in March 2012, and denied by his Principal. The Step 2 grievance was denied by the Chancellor's representative and failed to address Petitioner's retaliation allegations. His Step 1 grievance regarding the location of his reassignment took place on May 8, 2012, and he received a denial letter on June 6, 2012. His Step 2 grievance took place on September 20, 2012, and he was denied once against on October 18, 2012. Most recently, he grieved the time he has been in the reassignment center without being issued charges on November 16, 2012.  CSL § 75-b applies to those who are not protected by a CBA grievance procedure. Plaintiff has not been protected by these grievance procedures because they are controlled by the very people who are retaliating against him.  CSL § 75-b is the only proper mechanism by which he can properly be protected for his whistleblower behavior.

16

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants'

motion for summary judgment in its entirety against all Defendants, order the case to proceed to

trial on the scheduled trial date, and grant such other and further relief as the Court may deem just

and proper.

Dated:  New York, New York
        June 1, 2016

**GLASS KRAKOWER LLP**
Attorneys for Plaintiff Francesco Portelos
100 Church Street, 8th Floor
New York, NY 10007
(212) 537-6859

By:      _____s/_____
         BRYAN D. GLASS, ESQ.

17
