| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | |
| FRANCESCO PORTELOS,<br><br>                           Plaintiff,<br><br>             -against-<br><br>CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF EDUCATION; DENNIS WALCOTT, CHANCELLOR OF NEW YORK CITY DEPARTMENT OF EDUCATION; LINDA HILL, PRINCIPAL OF I.S. 49, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; ERMINIA CLAUDIO, IN HER OFFICIAL AND INDIVIDUAL CAPACITY AS DISTRICT SUPERINTENDENT,<br><br>                           Defendants. | **PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS TO DEFENDANT'S RULE 56.1 STATEMENT**<br><br>12 CV 3141 (LDH)(VS) |

Pursuant to Rule 56.1 of the Federal Rules of Civil Procedure, Plaintiff FRANCESCO PORTELOS submits herewith his counterstatement of material facts regarding genuine issues for trial:

1. Plaintiff is a tenured teacher, employed by the DOE since May 2007. *See* Deposition Testimony of Francesco Portelos, taken on April 24, 2014, September 26, 2014, and October 22, 2014 ("Portelos Tr."), attached as Ex. A to the Declaration of Courtney P. Fain, dated May 4, 2016 (the "Fain Declaration" or "Fain Decl."), at 36:7-12; 40:2-3. *Plaintiff does not dispute paragraph 1.*

2. Prior to his employment with the DOE, Plaintiff was employed as an environmental engineer at Environmental Planning and Management. *See id.* at 31:3-7. *Plaintiff does not dispute paragraph 2.*

1

3. Plaintiff has two minor children, neither of whom are students at I.S. 49. *See id.* at 9:6-11.

   *Plaintiff does not dispute paragraph 3, except that it is misleading in that it fails to mention that Plaintiff lives approximately 1 mile from Berta Dreyfus Intermediate School 49, the school he worked at. Although his two children were too young to attend the middle school, it is their zoned middle school when they come of age. Fain Declaration, 3020-a decision attached as Exhibit R at 12-14.*


**Collective Bargaining Agreement**

4. At all times during his employment with the DOE, Plaintiff has been a member of the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO ("UFT"). *See id.* at 71:11-17.

   *Plaintiff does not dispute paragraph 4.*


5. The UFT is party to a collective bargaining agreement with the DOE that governs the terms and conditions of the employment of teachers by the DOE. *See* Collective Bargaining Agreement between the Board of Education of the City School District of the City of New York and the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO, effective October 31, 2009 (the "CBA"), attached as Ex. B to the Fain. Decl.

   *Plaintiff does not dispute paragraph 5.*

6.   Article 22 of the CBA requires that bargaining unit members follow a multi-step dispute resolution procedure, culminating in arbitration, with respect to grievances. *See id*. at 122-134.

*Plaintiff does not dispute paragraph 6, except that it omits the fact that the union can deny pursuing the multi-step procedure for dispute resolution for any reason, and there is no clause in the CBA concerning whistleblower or First Amendment retaliation.  Fain Declaration, CBA attached as Exhibit B.*

7.   A "grievance" is defined to include a complaint that an employee "has been treated unfairly or inequitably by reason of any act or condition which is contrary to established policy or practice governing or affecting employees…" *See id.* at 122.

*Plaintiff does not dispute paragraph 7.*

8.   Article 23 of the CBA provides for an alternative, expedited dispute resolution procedure relating to special complaints. *See id.* at 135-136.

*Plaintiff does not dispute paragraph 8, except that it fails to mention that an Article 23 decision that is favorable to the Plaintiff only provides a fact finding report recommendation to the employer and no mandatory resolution that must be adhered to.  Fain Declaration, CBA attached as Exhibit B at 135-136.*

9.   As set forth in Article 23, "[a] 'special complaint' is a complaint by an employee in the bargaining unit that persons or groups are engaging in a course of harassing conduct, or in acts of intimidation, which are being directed against him/her in the course of his/her employment and that the school principal or community or assistant superintendent has

not afforded the employee adequate relief against such course of conduct or acts of intimidation." *See id.* at 135.

*Plaintiff does not dispute paragraph 9, except that it fails to mention that an Article 23 decision that is favorable to the Plaintiff only provides a fact finding report recommendation to the employer and no mandatory resolution that must be adhered to. Fain Declaration, CBA attached as Exhibit B at 135-136.*

**Plaintiff's Employment at I.S. 49**

10. Plaintiff began his employment with the DOE as a substitute teacher at I.S. 49 (also known as the Berta A. Dreyfus School) in May 2007. *See* Fain Decl., Ex. A (Portelos Tr.), at 36:7-12.

    *Plaintiff does not dispute paragraph 10.*


11. I.S. 49 serves students in sixth, seventh, and eighth grades. *See id.* at 38:6-8.

    *Plaintiff does not dispute paragraph 11.*


12. Plaintiff was appointed as a full-time STEM (Science, Technology, Engineering and Math) teacher at I.S. 49 as of September 2007. *See id.* at 36:7-10; 37:13-18.

    *Plaintiff does not dispute paragraph 12.*


13. Plaintiff was hired by Linda Hill, principal of I.S. 49. *See id.* at 36:13-22.

    *Plaintiff does not dispute paragraph 13.*

14. Plaintiff became a tenured teacher in September 2010. *See id.* at 40:2-3.

    *Plaintiff does not dispute paragraph 14.*

15. In the fall of 2011, Plaintiff was elected as a UFT delegate at I.S. 49 and began attending UFT consultation committee meetings. *See id.* at 68:2-3; 71:7-10.

    *Plaintiff does not dispute paragraph 15.*

16. Dr. Richard Candia, also a teacher at I.S. 49 at that time, was the UFT chapter leader at the school. *See id.* at 208:8-10.

    *Plaintiff does not dispute paragraph 16.*

**The I.S. 49 Tech Coordinator**

17. Until June 2011, Matthew Valia, another technology teacher at I.S. 49, served as the school's Tech Coordinator, which was a compensatory position whereby Mr. Valia taught five fewer class periods per teaching cycle than other teachers and used that time to resolve technology issues for the school. *See id.* at 46:6-21; 49:19-20; 77:11-13, 17-25.

    *Plaintiff does not dispute paragraph 17.*

18. Plaintiff assisted Mr. Valia in the performance of his duties as Tech Coordinator. See id. at 46:22-24; 47:7-21; 49:21-23.

    *Plaintiff does not dispute paragraph 18.*

19. Plaintiff did not receive any compensatory periods for the time spent assisting Mr. Valia. See id. at 82:21-83:1.

*Plaintiff does not dispute paragraph 19.*

20. Mr. Valia left I.S. 49 in June 2011, and Michael Rossicone took over many of his teaching duties. See id.79:16-21.

*Plaintiff does not dispute paragraph 20.*

21. However, the role of Tech Coordinator was not filled. See id. at 103:14-16.

*Plaintiff does not dispute paragraph 21.*

22. Instead, Mr. Valia's duties relating to resolving technology issues for the school were divided among Plaintiff, Mr. Rossicone, and Sarah Blanchard (another teacher who had assisted Mr. Valia). See id. at 82:13-18

*Plaintiff objects to paragraph 22 in that it is misleading. The Tech Coordinator position requires that it should be posted for applicants when there is a vacancy. There was no posting and Principal Hill assigned related duties on her own in violation of the UFT-DOE collective bargaining agreement.  Fain Declaration, CBA annexed as Exhibit B, at 17.*

23. Plaintiff disagreed with Principal Hill's decision to appoint Mr. Rossicone to assume some of the duties previously performed by Mr. Valia, and was "upset" that he (Plaintiff) was not named Tech Coordinator. See id. at 80:1-16; 81:19-25.

*Plaintiff does not dispute paragraph 23.*

24. Plaintiff expressed his desire for the position, and dissatisfaction with Principal Hill's decision not to appoint him Tech Coordinator, in a series of emails throughout the summer of 2011. See id. at 82:1-9; see also Email from Plaintiff to Principal Hill, dated July 2, 2011 ("July 2, 2011 Email"), attached as Ex. C to the Fain Decl.

    *Plaintiff does not dispute paragraph 24.*

25. Plaintiff referred to Principal Hill's decision not to consult him about the Tech Coordinator position as a "slap in the face." See Fain Decl., Ex. C (July 22, 2011 Email), at PD00034154.

    *Plaintiff does not dispute paragraph 25.*

26. Plaintiff also requested that, beginning in September 2011, he receive the five compensatory periods to which Mr. Valia had been entitled. See Fain Decl., Ex. A (Portelos Tr.), at 82:6-9.

    *Plaintiff does not dispute paragraph 26.*

27. However, Principal Hill informed Plaintiff, Mr. Rossicone, Ms. Blanchard, that they would receive four compensatory periods for the technology duties, with two to Mr. Rosscione and one each to Plaintiff and Ms. Blanchard. See id. at 82:13-18.

    *Plaintiff does not dispute paragraph 27.*

28. On October 8 2011, Plaintiff informed Principal Hill that because he did not receive the five compensatory periods, he would no longer assist in the technology program

for the school. See id. at 85:5-18; 86:12-22; 113:1-5; see also Email from Plaintiff to Linda Hill, dated October 8, 2011, attached as Ex. D to the Fain Decl.

*Plaintiff objects to paragraph 28 in that it is misleading. Plaintiff explained to Principal Hill that without being given five periods to work on technology issues, he instead had to spend the time concentrating on his classroom and students, and also had become a new father.  Previous to this period, Plaintiff would make up the time by staying late.  Fain Declaration, 3020-a decision annexed as Exhibit R, at 14.*


29. The dispute over the appointment to Tech Coordinator led to "relations between the admin and [Plaintiff] [to] have deteriorated more … [.]" See Email from Plaintiff to Michael Rossicone, Sarah Blanchard, and Steven Filatro, dated September 23, 2011, attached as Ex. E to the Fain Decl.

*Plaintiff objects to paragraph 29 in that it is misleading. After October 2011, relations between Plaintiff and administration actually improved, as the 3020-a hearing officer noted in the 3020-a decision. See Plaintiff's Letter of Recommendation from Principal Hill dated October 21, 2011, Glass Declaration Exhibit 1; Fain Declaration, 3020-a decision annexed as Exhibit R, at 12-14.*


**The School Leadership Team**

30. In September 2011, Plaintiff was appointed to the vacant position on the I.S. 49 School Leadership Team ("SLT") that had been held by Mr. Valia. See Ex. A (Portelos Tr.) at 97:27-98:5.

*Plaintiff does not dispute paragraph 30.*

31. SLTs are advisory bodies that work collaboratively with schools to develop education policies and ensure implementation of said polices. See Chancellor's Regulation A-655, attached as Ex. F to the Fain Decl., at 1.

    *Plaintiff does not dispute paragraph 31.*

32. The SLT is responsible for developing the Comprehensive Education Plan ("CEP"). See id.

    *Plaintiff does not dispute paragraph 32, except that the SLT is also responsible for aligning the CEP to the school's budget as well.   Fain Declaration, Chancellor's Regulation A-655 annexed as Exhibit F, at 1.*

33. Although the SLT generally is composed of faculty members and selected parents of students in the school, the only three mandatory members of the SLT are the school's principal, the Parent Association president, and the UFT Chapter Leader. See id. at 2-3.

    *Plaintiff does not dispute paragraph 33.*

34. Plaintiff's role on the SLT was as a teacher. See Fain Decl. at Ex. A (Portelos Tr.), at 131:25-132:1; see also SLT Sign-In Sheets for Meetings on September 13, 2011, October 11, 2011, November 15, 2011, and December 13, 2011 ("SLT Sign-In Sheets"), attached as Ex. G to the Fain Decl.

    *Plaintiff objects to paragraph 34 in that it implies that his only role as a member of the SLT was as a teacher, when in fact no teachers elected him (as he volunteered for*

*the position and was appointed, contrary to the Chancellor's  Regulations A-655), and he was in frequent communication with fellow school community parents about community concerns.  Fain Declaration, Chancellor's Regulation A-655, annexed as Exhibit F.*

35. Parent members of the SLT must be elected by the school Parent Association, and parents may not serve as parent members in schools in which they are employed. See Fain Decl., Ex. F, at 3.

    *Plaintiff does not dispute paragraph 35.*

36. Plaintiff received compensation for his time spent participating in the SLT. See Fain Decl., Ex. A (Portelos Tr.), at 96:14-16.

    *Plaintiff does not dispute paragraph 36.*

**Plaintiff's Ownership and Oversight of School Website**

37. In October 2009, Plaintiff created a website for I.S. 49, with the domain name Dreyfus49.com. See Fain Decl., at Ex. A (Portelos Tr.), at 88:6-11; 89:17.

    *Plaintiff does not dispute paragraph 37.*

38. Plaintiff owned the domain name, paid the yearly dues to maintain the domain, and was an administrator for the website. See id. at 89:25-90:8, 93:6-8.

    *Plaintiff does not dispute paragraph 38.*

39. All faculty members and students at I.S. 49 had e-mail addresses on the Dreyfus49.com domain. See Deposition Testimony of Linda Hill, taken on April 19, 2013 ("Hill Tr."), attached as Ex. H to the Fain Decl., at 110:24-111:8.

*Plaintiff does not dispute paragraph 39.*

40. As administrator, Plaintiff could read all of the emails sent through the domain, including those of faculty members. See id. at 93:20-24.

*Plaintiff objects to paragraph 40 as it is very misleading, to the extent it implies that as an administrator, he could freely and secretly read all emails sent through the domain.*

**Plaintiff's Conduct and Performance Throughout the Fall of 2011**

41. On November 4, 2011, Plaintiff sent an email to the I.S. 49 staff requesting that they not call for technology assistance during class time. See id. at 233:21-25; see also Email Chain between Linda Hill and Plaintiff, dated November 4, 2011, attached as Ex. I to the Fain Decl.

*Plaintiff does not dispute paragraph 41.*

42. Principal Hill replied to the email, reminding Plaintiff that she had instructed that he not send out emails to the faculty without her consent. See Fain Decl., Ex. A (Portelos Tr.) at 114:19-23; 115:24-25; see also Fain Decl., at Ex. I.

*Plaintiff objects to paragraph 42 in that it implies Principal Hill and Plaintiff had had previous conversations about emailing the faculty without her consent.  Fain Declaration, Exhibit I.*

43. Also in November 2011, Plaintiff began an investigation of Ms. Blanchard, one of the teachers who had assumed some of the duties previously performed by Mr. Valia in his role as Tech Coordinator. See Fain Decl., Ex. A (Portelos Tr.) at 111:6-20; 112:19-21.

*Plaintiff objects to paragraph 43 in that it is misleading. When a member of the collective bargaining unit believes there is a contractual violation, they need to have proof. Plaintiff was instructed by his union UFT chapter leader Richard Candia to check Ms. Blanchard's room to see if she was teaching. Plaintiff did check her classroom only during two instances over a two week period.  Portelos transcript, annexed to Fain Declaration as Exhibit A, at 113-114.*

44. Plaintiff believed that Ms. Blanchard impermissibly had been given compensatory (i.e., free) periods when she was supposed to be teaching. See Fain Decl., Ex. A (Portelos Tr.) at 111:13-17; see also Email from Plaintiff to Mala Ruzi, dated December 21, 2011 (December 21st Email), attached as Ex. J to the Fain Decl.

*Plaintiff does not dispute paragraph 44.*

45. Plaintiff launched his investigation of Ms. Blanchard because he wanted to file a grievance in connection with Principal Hill's decision not to assign him the Tech

Coordinator role (and with it, the five compensatory periods). See Fain Decl., Ex. A

(Portelos Tr.), at 110:2-13.

*Plaintiff does not dispute paragraph 45.*


46. Throughout his tenure at I.S. 49, Plaintiff's classroom was Room 229, on the second

floor of the building, but as part of his investigation, he went to the third floor and

walked repeatedly by Ms. Blanchard's classroom in order to ascertain whether she

was teaching. See id. at 69:16-20, 110:21-25, 112:19-21.

*Plaintiff objects to paragraph 46 in that it again makes the misleading implication*

*that the Plaintiff was repeatedly walking by Ms. Blanchard's classroom when in fact*

*he did so only on two occasions as per instructions by his union chapter leader*

*Richard Candia.  Portelos transcript, annexed to Fain Declaration as Exhibit A, at*

*113-114.*


47. He also made inquiries with respect to her schedule with the administration. See Fain

Decl., Ex. J (December 21st Email).

*Plaintiff does not dispute paragraph 47.*


48. Ms. Blanchard was concerned by Plaintiff's actions, and reported them to Principal

Hill. See Fain Decl., Ex. H (Hill Tr.), at 202:24-203:10.

*Plaintiff objects to paragraph 48 in that Ms. Blanchard did not actually report her*

*concerns until seven months later, in an email dated June 8, 2012, to Principal Hill.*

*Email dated June 8, 2012, Exhibit NYC-E0000405, Exhibit 2 to Glass Declaration.*

49. In late November or early December 2011, Plaintiff recorded, without Principal Hill's consent, a conversation between him and Principal Hill that took place in Principal Hill's office. See Fain Decl., Ex. A (Portelos Tr.) at 98:21-99:3, 99:19-21.

*Plaintiff does not dispute paragraph 49, but notes that such recording in not illegal under New York state law.*

50. The tape-recorded conversation pertained to comments allegedly made by Ms. Aguirre, an Assistant Principal at I.S. 49, regarding Plaintiff's election as UFT delegate. See id. at 99:8-16.

*Plaintiff does not dispute paragraph 50.*

51. Plaintiff asked Principal Hill whether "anyone in the administration [had] a problem with [him]" and she responded "not that I know of." See id. at 101:13-18.

*Plaintiff does not dispute paragraph 51.*

52. Plaintiff did not keep a copy of the recording because "it was of no use to [him]." See id. at 100:23-101:6.

*Plaintiff does not dispute paragraph 52, as Plaintiff was not perceiving any real issues with administration as of November 2011 and saw no need to keep this recording.*

14

53. On December 6, 2011, Assistant Principal Anne Marie Martino conducted a formal observation of Plaintiff's teaching. See Formal Teacher Observation, dated December 9, 2011, attached as Ex. K to the Fain Decl.

*Plaintiff does not dispute paragraph 53.*

54. While Plaintiff's observation was rated as satisfactory, the summarized comments noted concerns about his classroom management, such as the "strong need to address the problem of multiple students calling out your name simultaneously for assistance." See id. at PERS 0087.

*Plaintiff does not dispute paragraph 54.*

**The December 13, 2011 SLT Meeting**

55. On November 27, 2011, Principal Hill sent an email to the entire staff at I.S. 49, informing it that the I.S. 49 CEP was due soon, and further outlining the three educational goals set forth in the CEP for the 2011-2012 school year. See Email from Linda Hill to allsaff@drefus49.com, dated November 27, 2011, attached as Ex. L to the Fain Decl., at PD00049278.

*Plaintiff does not dispute paragraph 55.*

56. The SLT met on December 13, 2011. See Fain Decl., Ex. A (Portelos Tr.), at 125:6-12; Fain Decl., Ex. G (SLT Sign-In Sheets), at SLT Minutes 000019.

*Plaintiff does not dispute paragraph 56.*

57. Prior to Principal Hill's arrival at the SLT meeting, Plaintiff asked the members in attendance if they would be discussing the CEP. See Fain Decl., Ex. A (Portelos Tr.), at 166:4-7.

*Plaintiff does not dispute paragraph 57, but adds that Plaintiff also asked about the school's $7 million budget that the CEP is supposed to be aligned to.  SLT minutes for December 2011, Exhibit 3 to Glass Declaration.*

58. When Principal Hill arrived, Suzanne Abramowitz, another faculty member and Chairperson for SLT, informed Principal Hill that the SLT was discussing the CEP. See id. at 166:13-16.

*Plaintiff does not dispute paragraph 58.*

59. Principal Hill informed the members of the SLT that she had submitted the CEP on December 1, 2011. See id. at 126:15-16; 166:17-22.

*Plaintiff does not dispute paragraph 59.*

60. The version of the CEP submitted in December 1, 2011, was a draft. See Fain Decl., Ex. H, at 177:24-178:1, 178:17-18.

*Plaintiff disputes paragraph 60 as this was merely a draft, in that the final digital version of the 2011-2012 Berta Dreyfus IS 49 CEP, that was uploaded to the school's website by Defendants, states it was last edited on December 1, 2011.  Screenshot of official CEP file properties indicating last edited December 1, 2011, Exhibit 4 to*

16

*Glass Declaration; Network support coach Sharon Mahabir 3020-a testimony at 965-967, Glass Declaration Exhibit 5.*

*61.* The deadline for the final version of the CEP was in April 2012. See id. at 178:3-7.

*Plaintiff objects to paragraph 61 in that it is not true and the Defendants rely only on the self-serving testimony of Principal Hill.*

62. There was no further discussion about the CEP with Principal Hill at the December 13, 2011, SLT meeting. See id. at 168:8-11.

*Plaintiff does not dispute paragraph 62 insofar as it was not further discussed at the December 2011 after being initially raised at the beginning of that meeting.*

63. On or about December 14, 2013, following the SLT meeting, Plaintiff emailed certain parent members of the SLT as well as Ms. Abramowitz and Dr. Candia, that he had been informed that the submission of the CEP without the input of the SLT was in violation of the Chancellor's Regulations and New York State law. See id. at 176:12-177:23.

*Plaintiff does not dispute paragraph 63.*

64. Plaintiff did not make any inquiries regarding the school budget in December 2011. See id. at 188:8-18; 191:20-192:2.

*Plaintiff disputes paragraph 64 in that the information is false and relies on the self-serving testimony of Principal Hill.  The December 13, 2011 SLT minutes indicate*

*that concerns over the budget were brought up at that meeting.  December 2011 SLT*

*minutes, Glass Declaration Exhibit 4; 3020-a decision, Fain Declaration Exhibit R,*

*at 15.*

**The January 9, 2012 SLT Meeting**

65. The SLT met again on January 9, 2012. See Fain Decl., Ex. A (Portelos Tr.), at 185:13-14; SLT Meetings for January 10, 2012, Meeting, attached as Ex. M to the Fain Decl.

    *Plaintiff does not dispute paragraph 65.*

66. The CEP was discussed, and Plaintiff noted his objections, including that the goals set forth were, in his view, insufficient for the school. See Fain Decl., Ex. A (Portelos Tr.), at 178:18-25, 198:15-21.

    *Plaintiff does not dispute paragraph 66, except to add the discussion was moot as the CEP was already due and submitted on December 1, 2011.*

67. Plaintiff also opined that there should be a fourth goal for the CEP, geared toward the remaining students who were not targeted in the first three goals. See id. at 201:2-7; see also Fain Decl., Ex. M, at SLT Minutes 000021.

    *Plaintiff does not dispute paragraph 67.*

68. Plaintiff subsequently met with Ms. Abramowitz and Principal Hill, at his request, to discuss the fourth goal of the CEP. See Fain Decl., Ex. A (Portelos Tr.), at 208:23-209:12.

*Plaintiff does not dispute paragraph 68.*

69. Plaintiff was encouraged to work on identifying a fourth goal, but he had not identified one at that point. See id. at 209:13-22; 210:16-22.

*Plaintiff objects to being encouraged to work on a fourth CEP goal and in fact was discouraged from doing so since the CEP was already finalized and submitted by Principal Hill. Sharon Mahabir 3020-a testimony at 965-967, attached to Glass Declaration Exhibit 5.*

**Events During January, February, and March 2012**

70. On or about January 25, 2012, Plaintiff assisted the police in finding an iPhone that had been stolen from a teacher, and subsequently posted about the event on his Facebook account. See id. at 225:22-226:16, 228:3-10.

*Plaintiff does not dispute paragraph 70.*

71. The New York Post contacted Plaintiff regarding the incident. See id.. at 226:17-22.

*Plaintiff does not dispute paragraph 71, except to add that he did not discuss the incident with the NY Post reporter and hung up the phone.   Fain Declaration Exhibit A, Portelos Tr. at 226.*

19

72. On January 26, 2016, Plaintiff met with Principal Hill regarding the call from the New York Post, and Principal Hill expressed concern that Plaintiff was posting information about incidents at the school on Facebook. See id. at 231:20-232:1, 232:10-15, 232:2-9.

*Plaintiff does not dispute paragraph 72 (except for wrong date 2012 rather than 2016), but notes that it was Plaintiff who initiated the meeting with Principal Hill. In that meeting, Principal Hill began showing the Plaintiff printed copies of his Facebook posts beginning in January 2012.  Fain Declaration Exhibit A, Portelos Tr. at 231.*

73. Plaintiff recorded this meeting without Principal Hill's consent. See id. at. 237:21-24.

*Plaintiff does not dispute paragraph 73 but notes that there is no such prohibition about such recording in New York State.*

74. Plaintiff subsequently met with Ms. Abramowitz and Dr. Candia, and the three had a "heated" discussion. See id. at 235:12-19, 241:19-20.

*Plaintiff does not dispute paragraph 74, except to add that the Plaintiff was cursed at by Ms. Abramowitz, and subsequently Dr. Candia and Ms. Abramowitz made false allegations that Plaintiff cursed at them and "slapped papers" out of their hands, while failing to disclose that Ms. Abramowitz cursed at Plaintiff, and that Plaintiff was found by a neutral arbitrator not to have committed any misconduct here.  3020-a decision, Fain Declaration Exhibit R.*

75. Following that meeting, Plaintiff, Ms. Abramowitz, and Dr. Candia went into another classroom where other teachers were meeting. See id. at 241:3-7.

*Plaintiff does not dispute paragraph 75.*

76. Plaintiff's phone was in his pocket, and he recorded both meetings without informing others. See id. at 237:21-24; 242:10-13.

*Plaintiff does not dispute paragraph 76 but notes that there is no such prohibition about such recording in New York State.*

77. After those meetings had ended, Plaintiff went to Principal Hill's office, where Principal Hill, Ms. Abramowitz, and Ms. Aguirre were meeting. See id. at 243:24-244:5.

*Plaintiff does not dispute paragraph 77, except to add that Dr. Candia was also present at the meeting.  3020-a decision, Fain Declaration Exhibit R, at 18.*

78. Plaintiff was told he was a "hindrance to the community," and reference was made to his Facebook posts regarding the school and his colleagues. See id. at 244:5-14.

*Plaintiff does not dispute paragraph 78.*

79. On January 27, 2012, Dr. Candia and Ms. Abramowitz submitted written statements regarding Plaintiff's conduct on January 26, 2012. See Written Statement of Richard Candia, dated January 27, 2012, attached as Ex. N to the Fain Decl.; Written Statement of Susanne Abramowitz, attached as Ex. O to the Fain Decl.

21

*Plaintiff does not dispute paragraph 79, except adds that Plaintiff's 3020-a Arbitrator Felice Busto found both Dr. Candia and Ms. Abramowitz to not be credible in their statements as they both contradicted their original statements through their testimony, and that Plaintiff was found by the neutral arbitrator not to have committed any misconduct here.  See 3020-a decision at 63-67, Fain Declaration Exhibit R.*

80. Also on January 27, 2012, Plaintiff attended a UFT meeting at I.S. 49, during which he informed those present that someone was giving Principal Hill the Facebook posts of UFT members, and asked Dr. Candia "et tu, Brutus?" See Fain Decl., Ex. A (Portelos Tr.), at 264:10-16, 266:9-15.

*Plaintiff objects to paragraph 80 in that the interpretation of his testimony of the January 27, 2012 UFT meeting is misleading. Plaintiff did not direct the phrase "et tu, Brutus?," to Dr. Candia, but rather referenced the phrase to the meeting attendees to discuss how there were much larger issues in the school.  Plaintiff discussed how he was treated by the administration in the last month after raising concerns at the December 13, 2011 SLT meeting.  Portelos testimony, Fain Declaration Exhibit A, at 266.*

81. In an email on that same date, Dr. Candia, the I.S. 49 UFT Chapter Leader, informed *Plaintiff that he was no longer* a member of the I.S. 49 UFT consultation committee, and requested Plaintiff's resignation as an I.S. 49 UFT delegate. See Email

Correspondence between Plaintiff and Richard Candia, dated January 27, 2012, attached as Ex P to the Fain Decl..

*Plaintiff does not dispute paragraph 81.*

82. Plaintiff forwarded the email, through his Dreyfus49.com account, to all members of the UFT at I.S. 49, which included nearly the entire staff of I.S. 49. See id.; see also Fain Decl., Ex. A (Portelos Tr.) at 273:3-274:2.

*Plaintiff does not dispute paragraph 82.*

83. Principal Hill immediately suspended Plaintiff's email account on Dreyfus49.com on grounds that Plaintiff once again "disobeyed [her] directive [to not email the staff without her approval] by replying to a message sent to [Plaintiff] from a staff member to the entire staff, without informing [Principal Hill] …" See Email Correspondence between Plaintiff and Linda Hill, dated January 29, 2012, attached as Ex. Q to the Fain Decl.

*Plaintiff does not dispute paragraph 83, except that it is misleading implying that the Plaintiff's action of emailing UFT members is insubordination. Arbitrator Felice Busto dismissed the charge involving that mass email to UFT members as a basis for discipline. 3020-a decision, Fain Declaration Exhibit R, at 70.*

84. On January 28, 2012, Plaintiff accessed Dreyfus49.com, and unilaterally rescinded the administrator rights of all other personnel at I.S. 49, including Principal Hill. See Opinion and Award, dated April 30, 2014, in the Matter of New York City

Department of Education v. Francesco Portelos Pursuant to Education Law § 3020-a, SED File No. 22,380 ("3020-a Award"), attached as Ex. R to the Fain Decl., at 75-77.

*Plaintiff does not dispute paragraph 84.*

85. On January 29, 2012, Plaintiff emailed Superintendent Erminia Claudio, informing her that he believed he was "under attack" after raising concerns about the SLT and union meetings. See Fain Decl., Ex. R (3020-a Award), at 22.

*Plaintiff does not dispute paragraph 85.*

86. Also on January 29, 2012, Principal Hill informed the faculty at I.S. 49 that as part of the school safety protocol, no one was permitted in the building before 6:30 a.m. or after 5:30 p.m. unless he or she had first submitted a written request for approval to Principal Hill. See Email from Linda Hill to allstaff@dreyfus49.com, dated January 29, 2012, attached as Ex. S to the Fain Decl., at PD00045650.

*Plaintiff does not dispute paragraph 86.*

87. On February 1, 2012, Plaintiff met with Principal Hill and Assistant Principal Aguirre to discuss two allegations of professional misconduct: (1) Plaintiff's use of his Dreyfus49 email account to send a mass email on January 27, 2012, without prior approval by Principal Hill and (2) Plaintiff's behavior at his meetings with Dr. Candia, Ms. Abramamowiz, and other teachers on January 26, 2012. See Letter from Joanne Aguirre to Plaintiff, dated February 7, 2012, attached as Ex. T to the Fain

Decl.; Letter from Linda Hill to Plaintiff, dated February 7, 2012, attached as Ex. U to the Fain Decl.

*Plaintiff does not dispute paragraph 87.*

88. Plaintiff received a letter to file with respect to both incidents. See Fain Decl., Exs. T & U.

*Plaintiff does not dispute paragraph 88, but adds that he was ultimately not found guilty of such misconduct by a neutral arbitrator based on these letters.  3020-a decision, Fain Declaration Exhibit R.*

89. On February 9, 2012, Plaintiff remained at I.S. 49 until 5:57 p.m. without prior approval from Principal Hill. See Letter from Linda Hill to Plaintiff, dated February 17, 2012 ("February 17th Letter"), attached as Ex. V to the Fain Decl.

*Plaintiff does not dispute paragraph 89, except to add that it implies insubordination on the part of the Plaintiff and that he was ultimately not found guilty of such misconduct by a neutral arbitrator.  3020-a decision, Fain Declaration Exhibit R.*

90. On February 14, 2012, Plaintiff, Principal Hill, Superintendent Claudio, a UFT district representative met to discuss the recent issues at I.S. 49, including access to and ownership of Dreyfus49.com. See Fain Decl., Ex. A (Portelos Tr.), at 292:13-293:9; see also Letter from Linda Hill to Plaintiff, dated March 12, 2012 ("March 12th Letter"), attached at Ex. W to the Fain Decl.

*Plaintiff does not dispute paragraph 90.*

91. At that meeting, Plaintiff agreed to transfer ownership of Dreyfus49.com to Principal Hill. See Fain Decl., Ex. A (Portelos Tr.), at 293:6-9

*Plaintiff does not dispute paragraph 91, except that it is misleading and implies that a request was made by Principal Hill and Superintendent Erminia Claudio. It was the Plaintiff who originally offered to relinquish the dreyfus49.com site.  3020-a decision, Fain Declaration, Exhibit A at 293.*

92. Also at the February 14, 2012 meeting, Principal Hill discussed Plaintiff having been in the school building past 5:30 p.m. in contravention to her directive on January 29, 2012. See Fain Decl., Ex. V (February 17th Letter).

*Plaintiff does not dispute paragraph 92, but adds that he was ultimately  not found guilty of such misconduct by a neutral arbitrator.  3020-a decision, Fain Declaration Exhibit R.*

93. Plaintiff was issued a letter to his file for insubordination as a result. See id.

*Plaintiff does not dispute paragraph 93, but adds that he was ultimately not found guilty of such misconduct by a neutral arbitrator.  3020-a decision, Fain Declaration Exhibit R.*

94. On or about March 9, 2012, Plaintiff launched his personal website, ProtectPortelos.org. See Email from taximomsla@aol.com to Principal Hill, dated March 10, 2012, attached as Ex. X to the Fain Decl.

*Plaintiff does not dispute paragraph 94.*

95. Despite repeated requests that he comply with his promise to transfer ownership of Dreyfus49.com to Principal Hill, Plaintiff had not done so by mid-March, 2012. See Fain Decl., Ex. R (3020-a Award), at 80; see also Fain Decl., Ex. W (March 12th Letter).

   *Plaintiff does not dispute paragraph 95.*

96. Plaintiff never transferred ownership, but instead terminated the Dreyfus49.com website on March 19, 2012. See Fain Decl., Ex. R (3020-a Award), at 80.

   *Plaintiff does not dispute paragraph 96, except to add the Principal Hill directed Plaintiff to terminate the site.*

97. Prior to the termination, however, Plaintiff improperly accessed the email accounts of Principal Hill and Dr. Candia to search for emails discussing him. See id. at 52-56.

   *Plaintiff disputes paragraph 97 that accessing the email accounts of Principal Hill and Dr. Candia to search for emails on a website he owned was "improper".*

98. Plaintiff also posted the confidential written statements of Dr. Candia and Principal Hill, referenced above in ¶ 78, on his personal website. See id. at 49-61.

   *Plaintiff disputes paragraph 98, to the extent that the written witness statements of Candia and Abramowitz (Defendants mistakenly write Hill rather than Abramowitz) are not "confidential."*

27

**Allegations of Financial Misconduct by Administrators at I.S. 49**

99. On the evening of January 26, 2012, Liz Simpson sent an email to the Special Commissioner of Investigation ("SCI") alleging that Principal Hill was improperly receiving double payment for afterschool activities. See Case Form, dated February 1, 2012, attached as Ex. Y to the Fain Decl.

*Plaintiff does not dispute paragraph 99, except notes that he sent the email under that pseudonym.*


100. Liz Simpson sent additional email correspondence to SCI on March 20, 2012, reiterating her original concerns, and making additional allegations against Assistant Principal Diacomanolis. See Case Form, dated April 4, 2012, attached as Ex. Z to the Fain Decl.

*Plaintiff does not dispute paragraph 100, except notes that he sent the email under that pseudonym.*


101. Plaintiff subsequently acknowledged that he sent the emails to SCI under the pseudonym "Lizzy Simpson." See Fain Decl., Ex. A (Portelos Tr.) at 247:19-21.

*Plaintiff does not dispute paragraph 101.*

102.   Principal Hill was not aware of the reports to SCI regarding alleged financial misconduct until at least April 2012. See Fain Decl., Ex. R (3020-a Award), at 43, n.17

*Plaintiff disputes paragraph 102 as based on the entirely self-serving testimony of Principal Hill, as a clear inference could be drawn that the emails were sent by Plaintiff at that point. In addition, during the meeting discussed in paragraph 90, Principal Hill made reference to "He [Plaintiff] has been looking into my timecards." And she stated she saw her timecards being mentioned in text messages between Plaintiff and Dr. Candia that were given to her on January 29, 2012.  Fain Declaration Exhibit A, at 293, Principal Hill testimony from PERB complaint, Glass Declaration Exhibit 6 at 439.*

**Plaintiff's Reassignment from I.S. 49 in April 2012**

103.   On April 25, 2012, Plaintiff was notified that, as a result of a pending investigation he was (i) being reassigned from I.S. 49; (ii) not to return to I.S. 49 without prior written permission; and (iii) no longer permitted to perform per session or other after school activities pending resolution of the investigation. See Letter from Andrew Gordon to Plaintiff, dated April 25, 2012, attached as Ex. AA to the Fain Decl.

*Plaintiff does not dispute paragraph 103.*

104.    Plaintiff was originally reassigned to the Petrides Center, located on Staten Island,
but was subsequently reassigned to a Network office in Ozone Park, Queens, after
"he refused to stay in certain areas of [Petrides] and one day was found outside of
[Superintendent Claudio's] office listening to various conversations …" See Email
from Andrew Gordon to David Weiner and Lawrence Becker, dated June 12, 2012,
attached as Ex. BB to the Fain Decl.

*Plaintiff disputes paragraph 104 insofar as the reasons he was assigned to Ozone*
*Park, Queens, as shown by an email from Michelle Nacht that he was transferred*
*mainly because the DOE was not comfortable with the supervision there and not for*
*any particular actions of Plaintiff.   This transfer also violated Chancellor's*
*Regulation C-770 regarding reassignment of personnel.  Michelle Nacht email, Glass*
*Declaration Exhibit 7; Chancellor's Regulation C-770, Glass Declaration Exhibit 8*

.

105.    While Superintendent Claudio requested Plaintiff's reassignment out of Petrides,
the ultimate decision-maker with respect to where Plaintiff was transferred to was
Andrew Gordon, then-Executive Director, HR Connect and Employee Relations at
the DOE. See id.; see also Deposition Transcript of Ermenia Claudio, taken October
6, 2014 ("Claudio Tr."), attached as Ex. CC to the Fain Decl. at 63:8-15.

*Plaintiff objects to paragraph 105 since the exhibits cited do not make clear that Mr.*
*Gordon was the "ultimate decision maker" as to who assigned him to the various*
*locations, and SCI never investigated Mr. Portelos's complaint on the issue.*
*Defendants' Supplemental Discovery Response, investigation #1, Glass Affirmation*
*Exhibit 9.*

106.   In June 2012, Plaintiff emailed then-Chancellor Walcott with respect to his reassignment out of I.S. 49 to a location in Queens. See Email Correspondence from Francesco Portelos to Dennis Walcott, Panel for Education Policy, and Michael Bloomberg, dated June 15, 2012, attached as Ex. DD to the Fain Decl. (NYCE-0003504).

*Plaintiff does not dispute paragraph 106.  It is noteworthy that Chancellor Walcott was in the national media about Plaintiff in October 2012.  Screenshot of Fox 5 news clip of Dennis Walcott discussing Plaintiff, Glass Affirmation Exhibit 10.*

107.   His emails were referred to Andrew Gordon for response. See Email Chain, dated June 25, 2012, attached as Ex. EE to the Fain Decl., at NYCE-0003608.

*Plaintiff does not dispute paragraph 107.*

**Plaintiff's Conduct Post-Reassignment**

108.   In June 2012, Plaintiff reported to SCI as well as both Principal Hill and Superintendent Claudio that Denise Diacomanolis, an Assistant Principal at I.S. 49, touched children in an inappropriate manner. See Email from Erminia Claudio to Andrew Gordon, dated June 21, 2012, attached as Ex. FF to the Fain Decl.; see also Fain Decl., Ex. R (3020-a Award), at 90-92.

*Plaintiff does not dispute paragraph 108.*

31

109.    Principal Hill filed a report with SCI regarding the allegation on June 19, 2012.
See Report of Special Commissioner of Investigation Richard J. Condon, dated April
25, 2013 ("SCI Report"), attached as Ex. GG to the Fain Decl., at 9.

*Plaintiff does not dispute paragraph 109.*


110.    Plaintiff also filed a follow-up report with SCI regarding same on June 26, 2012.
See Email from Erminia Claudio to Andrew Gordon, dated June 26, 2012, attached as
Ex. HH to the Fain Decl.

*Plaintiff does not dispute paragraph 110.*


111.    In the course of SCI's investigation, Plaintiff informed SCI that he had taken a
video of Ms. Diacomanolis "placing her hands on" a student in April 2012, two
months prior to reporting the filing of a report with SCI. See Fain Decl., Ex. GG (SCI
Report), at 10.

*Plaintiff does not dispute paragraph 111, and did not report it immediately under the
belief that another individual who told him she was reporting it had reported it
already.*


112.    The allegations against Ms. Diacomanolis were not substantiated. See Fain Decl.,
Ex. R (3020-a Award), at 91.

*Plaintiff does not dispute paragraph 112 insofar as SCI did not substantiate the
allegations, but is unclear why SCI did not substantiate the allegations given video
evidence and the fact that SCI did not interview other eyewitnesses despite Plaintiff*

32

*disclosing their names to SCI, and notes that Ms. Diacomanolis was never brought up on Section 3020-a charges similar to how he was, to have misconduct allegations adjudicated by a neutral arbitrator, nor was she reassigned pending any investigation like Plaintiff was.  Also, it appears from a document provided by SCI discovery by Defendants indicated that a corporal punishment allegation against AP Diacomanolis was in fact substantiated.  Screenshot profile inquiry, Glass Declaration, Exhibit 14.*

113.    In September 2012, Plaintiff falsely reported to a parent that a teacher at I.S. 49 was unlicensed. See id. at 99-100.

*Plaintiff disputes paragraph 113 that he falsely reported the teacher being unlicensed, as in fact a screenshot of the teacher from a New York State teacher certification website showed her to be unlicensed at the time.  Screenshot for Jennifer Wolfson, Glass Declaration Exhibit 11; 3020-a testimony of Jennifer Wolfson, Glass Declaration Exhibit 12.*

114.    The teacher that Plaintiff falsely reported as being unlicensed was Ms. Wolfson, who was then the fiancé (and is now the wife) of Dr. Candia. See id. at 100.

*Plaintiff disputes paragraph 114 that he falsely reported the teacher being unlicensed.  Screenshot for Jennifer Wolfson, Glass Declaration Exhibit 11.*

115.    In the fall of 2012, Plaintiff bought the domain for the website www.welearnandgrowtogether.com, which had been a website for I.S. 49 and was

referred to in the school's voice message system, and re-directed all visitors to that website to his personal website on which he aired grievances about the school. See id. at 82-85.

*Plaintiff does not dispute paragraph 115, but was not aware the website was mentioned in the school's voice message system and was not "airing grievances" on this website but rather reporting public data about the school.*

116.  In November 2012, after renewing the Dreyfus49.com domain, Plaintiff altered www.dreyfus49.com to direct visitors to his personal website on which he aired grievances about the school. See id. at 85-90.

*Plaintiff does not dispute paragraph 116.*

117.  In December 2012, Plaintiff showed the video purporting to show Ms. Diacomanolis touching a student, and spoke about the report at a meeting of the Community Education Council. See id. at 92-94.

*Plaintiff does not dispute paragraph 117, and the 3020-a hearing officer dismissed this allegation as misconduct for merely speaking as "a public citizen on a matter of public concern" Section 3020-a decision, Fain Declaration Exhibit R, at 97-99.*

118.  On January 10, 2013, Plaintiff reported to SCI that Assistant Principal Joanne Aguirre engaged in corporal punishment against a student. See Report of Unsubstantiated Case, dated June 5, 2013, attached as Ex. II to the Fain Decl.

*Plaintiff does not dispute paragraph 118.*

119.    That allegation was deemed unsubstantiated after investigation by SCI. See id.

*Plaintiff does not dispute paragraph 119 insofar as SCI did not substantiate the allegations, but is unclear why SCI did not substantiate the allegations, and notes that Ms. Aguirre was never brought up on Section 3020-a charges like he was to have misconduct adjudicated by a neutral arbitrator, nor was she reassigned pending investigation, and furthermore the OSI investigator assigned to the case, and the DOE, refused to disclose a school surveillance video of the incident as part of discovery in this case.  3020-a decision, Fain Declaration Exhibit R at 26.*

120.    On June 14, 2013, Plaintiff filed a complaint of race, color, and gender/sex discrimination against Principal Hill. See Confidential OEO Report, dated January 21, 2014, attached as Ex. JJ to the Fain Decl.

*Plaintiff does not dispute paragraph 120.*

121.    In the course of that investigation, Plaintiff informed investigators that he was the owner of the email system associated with Dreyfus49.com and he discovered on that system an email from Principal Hill, dated July 14, 2011, in which she requested referrals for minority and male teacher candidates. See id. at OEO000025.

*Plaintiff does not dispute paragraph 121.*

122.    The allegation of discrimination was not substantiated. See id. at OEO000028.

*Plaintiff does not dispute paragraph 122 insofar as OEO did not substantiate the allegations, but is unclear why OEO did not substantiate the allegations, and notes that Ms. Hill was never brought up on Section 3020-a charges nor reassigned from duties pending investigation like he was to have misconduct adjudicated by a neutral arbitrator.*

**Investigations by the Special Commissioner of Investigations**

123.   Between January 2012 and March 2013, the office of the Special Commissioner of Investigation ("SCI") received more than 35 complaints involving misconduct at I.S. 49. See Fain Decl., Ex. GG (SCI Report).

*Plaintiff does not dispute paragraph 123.*

124.   Plaintiff was both a complainant and subject in connection with SCI's investigation. See id. at NYCE-0004912.

*Plaintiff does not dispute paragraph 124.*

125.   The scope of SCI's investigation included, but was not limited to, allegations that Plaintiff (1) engaged in personal business during time in which he was supposed to be teaching; (2) made changes to the Dreyfus49.com website, including with respect to administrator rights; (3) reviewed and distributed private email messages sent over the Dreyfus49 service; (4) inappropriately posted student information on his personal website and on YouTube; (5) inappropriately installed software on school computers;

and (6) falsely reported that a teacher was uncertified. See id. at NYCE-0004912 – NYCE-0004920.

*Plaintiff does not dispute paragraph 125, except notes that many of these reports against Plaintiff were falsely reported or filed in retaliation against Plaintiff for filing SCI reports against the school administration.*

126.    SCI also investigated allegations by Plaintiff that (1) Assistant Principal Diacomanolis had inappropriately touched several students; (2) he received harassing email messages from a DOE computer; (3) that a paraprofessional who was a witness in his then-pending sexual harassment claim had been "promised a future position as a teacher at the school and given per session pay … in return for providing a statement favorable to the school." See id. at NYCE-0004920 – NYCE-0004925.

*Plaintiff does not dispute paragraph 126, except notes that he is unclear what exactly SCI investigated, as it appears to have selectively investigated allegations against him and ignored or did surface investigations when he initiated the reports.*

127.    SCI also investigated a confidential complaint that the administration at I.S. 49 had engaged in misconduct in the selection of a service provider for the school. See id. at NYCE-0004925 – NYCE-0004926.

*Plaintiff does not dispute paragraph 127, except notes that he is unclear what exactly SCI investigated, as it appears to have selectively investigated allegations against him and ignored or did surface investigations when he initiated the reports.*

37

128.   The SCI issued its findings on April 25, 2013, and referred its findings to the DOE for further action. See id. at NYCE-0004926.

*Plaintiff does not dispute paragraph 128.*

129.   SCI concluded that some of the conduct attributed to Plaintiff was substantiated, but none of the complaints made by Plaintiff were substantiated. See id.

*Plaintiff largely does not dispute paragraph 129, except notes that he is unclear what exactly SCI investigated and substantiated, as it appears to have selectively investigated allegations against him and ignored or did surface investigations when he initiated the reports.  Defendants neglect to omit that at least one allegation he reported about Principal Hill double-dipping in connection with her time cards was in fact substantiated, and in fact led to her resignation and/or retirement from the school shortly thereafter in June 2015 (made public in February 2015) after paying an $800 fine.  3020-a decision, Fain Declaration Exhibit R at 26; PERB testimony of Linda Hill 3/17/15, Glass Declaration Exhibit 6.  Emails in discovery produced by Defendants showed that the DOE planned to substantiate the allegation against Principal Hill as early as October 2013.   Glass Declaration Exhibit 13.*

**Charges Pursuant to Education Law § 3020-a**

130.   In a letter dated May 23, 2013, Laura Hemans Brantley of the Office of Legal Services at the DOE, informed Plaintiff that probable cause had been found on the charges against him and that he was suspended, with pay, effective immediately. See

Letter from Laura Hermans Brantley to Plaintiff, dated May 23, 2013, attached as Ex. KK to the Fain Decl.

*Plaintiff does not dispute paragraph 130.*

131.    Plaintiff was subsequently charged with having engaged in misconduct, insubordination, conflicts of interest, criminal conduct, conduct unbecoming his profession, and neglect of duty. See Fain Decl., Ex. R (3020-a Award), at 80.

*Plaintiff does not dispute paragraph 131 but notes that many of these charges (27 of the 38 specifications) were ultimately dismissed as false or unfounded by a neutral arbitrator, and he was not found of any guilty of any criminal conduct.*

132.    After more than 20 days of hearings, the Arbitrator sustained 11 charges brought against Plaintiff, and fined Plaintiff $10,000 for his misconduct. See id. at 107.

*Plaintiff does not dispute paragraph 132 but notes that many of these charges were ultimately dismissed as false or unfounded by a neutral arbitrator.*

133. Specifically, the Arbitrator concluded that Plaintiff engaged in misconduct when he:

a) On or about January 28, 2012, unilaterally rescinded the rights of all administrators of Dreyfus49.com, including Principal Hill (see id. at 75-77);

b) In February 2012, refused to transfer control and/or ownership of Dreyfus49.com to Principal Hill or the DOE after agreeing to do so (see id. at 78-82)

c) On March 16, 2012, disclosed confidential witness statements made by Dr. Candia and Ms. Abramowitz in connection with the January 26, 2012 meeting on ProtectPortelos.org (see id. at 49-51);

d) In March 2012, prior to terminating Dreyfus49.com, searched Dr. Candia's email account on that domain and searched for emails containing the term "Portelos" (see id. at 52-54);

e) Beginning in March 2012, accessed Principal Hill's email account at Dreyfus49.com and searched for emails containing the term "Portelos" (see id. at 55-56);

f) In April 2012, prior to his reassignment from I.S. 49, recorded a video of a student at I.S. 49 without permission or authority (see id. at 90-92);

g) In September 2012, falsely reported to a parent that a teacher at I.S. 49 was unlicensed (see id. at 99-100);

h) In October 2012, altered the website welearnandgrowtogether.com, which had been a website for I.S. 49, to direct visitors to his personal website (see id. at 82-85)

i) In November 2012, after renewing the Dreyfus49.com domain, altered www.dreyfus49.com to direct visitors to his personal website (see id. at 85-90); and

j) In December 2012, distributed the video referenced in subparagraph (f) above to parents, without permission or authority, "instead of leaving it to SCI to investigate a highly sensitive issue" (see id. at 92-94).

*Plaintiff does not dispute paragraph 133 but notes that many of these charges were ultimately dismissed as false or unfounded by a neutral arbitrator.*

134. By committing the above actions, Plaintiff "[h]ad a disruptive and/or negative impact on students, staff, and/or administration at I.S. 49 and the [DOE]" and "[c]aused negative publicity, ridicule, and notoriety to I.S. 49 and the [DOE]" (see id. at 101-103).

*Plaintiff disputes paragraph 134 to the extent that the quotes are out of context in a 107-page decision, and notes that the neutral arbitrator also found that Plaintiff was disciplined at least in part for his public speech.*

135. Plaintiff's application to set aside the findings of the arbitrator in the § 3020-a proceeding was denied by Justice Troia of the Supreme Court of New York County, Richmond County. See Matter of Portelos v. New York City Bd. of Educ., Index No. 85023/14, 2015 N.Y. Misc. LEXIS 342, at *7 (N.Y. Sup. Jan. 28, 2015).

*Plaintiff does not dispute paragraph 135.*

**ADDITIONAL STATEMENTS OF UNDISPUTED FACTS**

136. Plaintiff and his wife, also a teacher, live in the vicinity of I.S. 49. They have two young children, the first of which was born on May 12, 2011, just a few months before the Plaintiff became more active and raised matters of public concern at I.S. 49. Fain Declaration Exhibit R at p. 12.

137. Between 2007 and 2011, Plaintiff was highly regarded by the Principal and other administrators at I.S. 49, and Principal Hill described her working relationship with Plaintiff as very positive, and wrote a letter of recommendation for him to be an administrator in October 2011, *well after* he was "disappointed" about being denied a

Technology Coordinator position at the school.  Fain Declaration Exhibit R at p. 12-13, 37-38.

138. Plaintiff also received recommendation letters from several other Assistant Principals at the school as well as by an after school program supervisor.  Fain Declaration Exhibit R at p. 13.

139. Principal Hill encouraged Plaintiff to become more involved in the school.  Fain Declaration Exhibit R at p. 14.

140. Plaintiff was encouraged by the UFT chapter leader Richard Candia to join the union consultation committee and encouraged him to run for UFT delegate, which Plaintiff did and won.   Fain Declaration Exhibit R at p. 14.

141. UFT chapter leader Richard Candia repeatedly texted Plaintiff about Principal Hill's problematic leadership at the school and was extremely critical of Principal Hill, despite disclosing Plaintiff's supporters against her to Principal Hill.  Fain Declaration Exhibit R at p. 22.

142. At the December 13, 2011 SLT meeting, Plaintiff asked if the group was ever going to review the CEP and budget.  Fain Declaration Exhibit R at p. 15.

143. When Principal Hill arrived to the December SLT meeting late, and was asked about the CEP by the principal, Principal Hill replied that the CEP was due December 1st and she had already submitted it.  Fain Declaration Exhibit R at p. 15.

144. In Plaintiff's 3020-a hearing, Defendants' own witness and SLT member Diane Vines-Monohan stated that the December 13, 2011 SLT meeting where the Plaintiff raised concerns "changed everything." Vines 3020-a testimony, Glass Declaration Exhibit 15.

145. Plaintiff thereafter contacted an SLT support person, James Calantjis, for direction about Principal Hill's submission of the CEP without the consultation of the SLT and her not reviewing the budget with the SLT. Mr. Calantjis's response that Principal Hill violated Chancellor's regulations A-655, B-801 and NYS Education Law 2590-h, was forwarded to Ms. Abramowitz, Mr. Candia and parents on the SLT.  Fain Declaration Exhibit R at 15-16.

146. SLT Chair Abramowitz specifically informed Principal Hill of Plaintiff's contacts with Mr. Calantjis, and Plaintiff's comments on Mr. Calantjis' public blog (sltsupport.blogspot.com) and Principal Hill was "not pleased" with Plaintiff's efforts regarding the CEP and budget.  Fain Declaration Exhibit R at 16; Calantjis email, Glass Declaration Exhibit 16.

147. SLT Chair Abramowitz stopped talking to Plaintiff after his December 14, 2011 outreach to Mr. Calantjis and unbeknownst to the Plaintiff, meetings took place with Principal Hill, Susanne Abramowitz and Dr. Candia where they discussed Plaintiff's vocal concerns about the CEP and the budget in December 2011 to January 2012. Abramowitz deposition testimony, Glass Declaration Exhibit 17.

148. At the next SLT meeting on January 10, 2012, the SLT reviewed the principal's already submitted CEP, and Principal Hill scolded and mocked him at the meeting when Plaintiff asked questions about it, as confirmed by two other witnesses at the meeting.   3020-a decision, Fain Declaration Exhibit R at  p. 17.

149. Despite Principal Hill stating that she "already submitted" the CEP on December 1, 2011, after Plaintiff pursued the matter, the rhetoric changed to she only submitted a draft.  When Plaintiff made a Freedom of Information Law request for the mandated

SLT member signature page for the 2011-2012 CEP, he was informed it could not be found.  FOIL Request, Glass Declaration Exhibit 38.

150. When Plaintiff became concerned that SLT chair Abramowitz was sharing his private Facebook posts with Principal Hill, he called a morning meeting on January 26, 2012, with SLT chair Abramowitz and Richard Candia.  At that meeting, Ms. Abramowitz used the word "fuck" towards him.  3020-a decision, Fain Declaration Exhibit R at 18.

151. Ms. Abramowitz and Dr. Candia then wrote handwritten statements against Plaintiff, dated January 27, 2012, regarding the conduct of the meeting, which later became the subject of 3020-a charges against him, and were ultimately dismissed by a neutral arbitrator.  3020-a decision, Fain Declaration Exhibit R at 18, 62-66.

152. On January 26, 2012, Plaintiff reported to SCI under a pseudonym that Principal Hill was doubledipping regarding per session work she was performing at the school and also that Assistant Principal Diacomanolis was alleged to be involved in per-session timecard misconduct.  3020-a decision, Fain Declaration, Exhibit R at 26.

153. On January 29, 2012, after demanding Plaintiff to resign from his UFT consultation committee duties and Plaintiff refused, Dr. Candia sent an email to Principal Hill disclosing individual teachers in support of Mr. Portelos and that ¾ of the staff supported Plaintiff and wanted him to be the chapter leader of the school, which Plaintiff eventually was elected to be at the school even after being removed by the DOE from the school.  3020-a decision, Fain Declaration, Exhibit R at 21.

154. On January 29, 2012, after demanding Plaintiff to resign from his UFT consultation committee duties and Plaintiff refused, Dr. Candia sent an email to Principal Hill

disclosing individual teachers in support of Mr. Portelos and that ¾ of the staff supported Plaintiff and wanted him to be the chapter leader of the school, which Plaintiff eventually was elected to be at the school even after being removed by the DOE from the school.  3020-a decision, Fain Declaration Exhibit R at 21.

155. Principal Hill falsely assumed that Plaintiff was responsible for a NY Post article about a theft of a cellphone in the school and wrongly assumed he was responsible for the article, when in fact he refused to discuss it with a reporter who contacted him.  3020-a decision, Fain Declaration Exhibit R at 22.

156. On or about January 30, 2012, Plaintiff contacted SCI again using his classroom phone and reiterated the complaints emailed January 26, 2012. He also informed other UFT members of his allegation against Principal Hill including Staten Island UFT representatives Sean Rotkowitz and Emil Pietromonaco. Transcript of audio, Glass Declaration, Exhibit 25.

157. Only after a discovery order of Magistrate Judge Scanlon to Defendants to disclose to Plaintiff the results of his SCI filing, the doubledipping report was ultimately substantiated against Principal Hill, who resigned her position shortly thereafter. This allegation was first reported in January 2012 and SCI referred the case to OSI. The case was substantiated as early October 2013, when Plaintiff's 3020-a just began, but report was not issued until February 2015, without any explanation for the long delay.   OSI report against Linda Hill, Glass Declaration Exhibit 20, and 10/1/13 email exchange, Glass Declaration Exhibit 13.

158. The OSI investigation omitted many incidents of double dipping and per-session misconduct of the school principal, including exceeding billable hours in their

findings despite being given concrete evidence by the Plaintiff.  Hill overtime hours, Glass Declaration Exhibit 23.

159. Principal Hill did not receive a disciplinary letter nor was she reassigned or charges pursuant to NYS Education Law 3020-a for her substantiated misconduct.  FOIL response, Glass Declaration Exhibit 21.

160. On Sunday, January 29, 2012, Plaintiff emailed Superintendent Claudio to express concerns about the retaliation he was feeling after raising concerns at IS 49.  She responded that she would call him at home that night and she did.  Email between Plaintiff and Claudio, Glass Declaration Exhibit 24.

161. On January 30, 2012, less than 24 hours after speaking with Superintendent Claudio, Principal Hill contacted SCI to allege the first three allegations of misconduct of Plaintiff's career--Principal Hill alleged that Plaintiff text a student using an phone app called "Fake a message."; Plaintiff engages in real estate business during work hours and on his work computer; and Plaintiff made administrative changes to the school website he owns.   3020-a decision, Fain Declaration Exhibit R at 23; SCI investigator Laino memo, Glass Declaration Exhibit 27.

162. Principal Hill issued three disciplinary letters to Plaintiff, within a ten day period, in early February 2012, the first time he had received disciplinary letters in his career. They became the subject of 3020-a charges and later dismissed by a neutral arbitrator.  3020-a decision, Fain Declaration Exhibit R at 23, 24, 61-62.

163. On February 28, 2012, SCI investigators confiscated Plaintiff's DOE desktop from his classroom, in the presence of his students, and iPad and laptop from his home. This was because of the allegations of real estate business being conducted on work

time, which were eventually unfounded.   3020-a decision, Fain Declaration, Exhibit R at 24.

164. SCI initially substantiated the allegations and sent its findings to over 50 members of the press.  Almost a year later, SCI recanted them after Plaintiff blogged about how SCI fabricated these files in his investigation. The charges were dismissed at Plaintiff's Section 3020-a hearing.  3020-a decision, Fain Declaration Exhibit R at 23, 45-48; SCI recanting allegations against Plaintiff to Hearing Officer Busto, Glass Declaration Exhibit 28.

165. Plaintiff activated his protectportelos.org website on March 7, 2012, where he publicly explained the retaliatory actions he was being subjected to and to create "awareness and transparency."  3020-a decision, Fain Declaration, Exhibit R at 24-25.

166. Plaintiff notified the staff about protectportelos.org on March 9, 2012 and was then subsequently out for jury duty the next four school days. Upon his first day back, Plaintiff was observed for the first 90 minutes of the day by Assistant Principal Joanne Aguirre and Network representative Sharon Mahabir. He then received the first unsatisfactory observation of his career.  Aguirre 3020-a testimony, Glass Declaration Exhibit 29.

167. Superintendent Claudio made an official request to have the Plaintiff removed from the school, but was denied by DOE Executive Director of Employee Relations Andrew Gordon because the information provided to him "at that time wasn't sufficient to have him [Plaintiff] reassigned."  Andrew Gordon deposition testimony and Superintendent Claudio email, Glass Declaration Exhibits 31 and 32.

168. After not seeing any movement from any investigatory agency on the case involving Principal Hill and the alleged doubledipping, Plaintiff submitted his own Freedom of Information Law request for Principal's overtime per session time cards. The request was made via email on Saturday March 24, 2012 to Records Officer Joseph Baranello who is a subordinate of Senior Associate Field Counsel Robin Singer, Esq. During the next several days, Robin Singer, Esq. and Principal Hill's Senior Field Counsel Marisol Vazquez, Esq. communicated on the topic of reassigning the Plaintiff.  Email thread, Glass Declaration Exhibit 33.

169. Principal Hill also made requests about reassigning Plaintiff in March 2012, but was told she did not have enough.   PERB testimony, Glass Declaration Exhibit 35.

170. Principal Hill created a log of incidents against Plaintiff starting with the June 2011 Tech Coordinator vacancy. However, testimony showed this log was backdated and actually was created on March 27, 2012.  3020-a decision, Fain Declaration Exhibit R at 18, Hill 3020-a hearing testimony, Glass Declaration Exhibit 19.

171. Principal Hill falsely reported to the DOE's OEO on April 4, 2012, that Plaintiff had sent an harassing email to SLT parents, but OEO told her the next day that they saw no issue of discrimination in Plaintiff's email.  3020-a decision, Fain Declaration, Exhibit R at 26-27.

172. On April 5, 2012, Plaintiff received his first ever Unsatisfactory observation from Assistant Principal Aguirre in his teaching career.  3020-a decision, Fain Declaration, Exhibit R at 27.

173. On April 26, 2012, Plaintiff was reassigned from I.S. 49 pending an undisclosed investigation, and directed to the Petrides complex in Staten Island.  3020-a decision, Fain Declaration, Exhibit R at 27.

174. On June 15, 2012, Plaintiff was elected chapter leader of I.S. 49 despite being reassigned to nonteaching duties.  3020-a decision, Fain Declaration, Exhibit R at 27.

175. The DOE affirmatively sought to prevent Plaintiff from being recognized as the UFT chapter leader a IS 49 since his reassignment, and lost both decisions at arbitration and in state Supreme Court.  3020-a decision, Fain Declaration, Exhibit R at 28.

176. SCI did not substantiate Plaintiff's allegation that he was a whistleblower under the New York State Whisteblower Law.  3020-a decision, Fain Declaration, Exhibit R at 28.  SCI is not an independent suable entity and can only be sued in the name of the City of New York and not the DOE.

177. On April 26, 2013, well after this federal litigation was commenced, SCI issued a final report vaguely substantiating some of the allegations against Plaintiff, while unsubstantiating all allegations initiated by Plaintiff. In their conclusion they did not recommend discipline, but rather stated "…some of the conduct described here may violate the conflicts of interest provisions of the New York City Charter…" 3020-a decision, Fain Declaration, Exhibit R at 29.

178. Many of these "substantiated" allegations were dismissed by the neutral hearing officer at Plaintiff's subsequent 3020-a hearing, which was commenced in September 2013.  3020-a decision, Fain Declaration, Exhibit R at 29.

179. The DOE did not have any social media guidelines in place until the spring of 2013. Despite the guidelines stating an employee cannot be disciplined for violating them, Plaintiff was still disciplined. 3020-a decision, Fain Declaration, Exhibit R at 30.

180. Plaintiff was subsequently arrested at the behest of the DOE on March 10, 2014. He spent 33 hours in a cell and was then released when the Brooklyn District Attorney declined to prosecute.

181. The neutral 3020-a hearing officer Busto recognized Plaintiff's First Amendment rights despite DOE's arguments of potential disruption in her 3020-a decision.  3020-a decision, Fain Declaration, Exhibit R at 95-99.

182. "[P]rior to January 26, 2012, [P]laintiff had an unblemished and stellar record." 3020-a decision, Fain Declaration, Exhibit R at 103.

183. "[Plaintiff's] raising issues of public concern with the SLT played a part in bringing him into the **disciplinary** arena."  3020-a decision, Fain Declaration, Exhibit R at 103.

Dated:  New York, New York
        June 1, 2016

                                    GLASS KRAKOWER LLP

                                    By:
                                    _____s/_____

                                    Bryan Glass, Esq.
                                    100 Church Street, Suite 800
                                    New York, NY 10008
                                    (212) 537-6859

To: Zachary Carter
    Corporation Counsel of the City of New York
    Attorney for Defendants
    100 Church Street
    New York, New York   10007


Attn: Courtney Fain and Jessica Giambrone
     Assistant Corporation Counsels