UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


FRANCESCO PORTELOS,           *     Case No. 12-CV-3141(RRM)
                              *
                Plaintiff,    *     Brooklyn, New York
                              *     December 23, 2014
      v.                      *
                              *
CITY OF NEW YORK, et al.,     *
                              *
                Defendants.   *
                              *
* * * * * * * * * * * * * * * *

        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
           BEFORE THE HONORABLE VERA M. SCANLON
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:            BRYAN D. GLASS, ESQ.
                              Glass Krakower, LLP
                              100 Church Street
                              New York, NY 10007


For the Defendants:           JESSICA GIAMBRONE, ESQ.
                              New York City Law Department
                              100 Church Street
                              New York, NY  10007




Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

```
1          (Proceedings commenced at 4:43 p.m.)

2               THE COURT:  Portelos v. City of New York, 12-CV-

3     3141.  For the plaintiff?

4               MR. GLASS:  Bryan Glass with Mr. Portelos to my

5     left.

6               THE COURT:  All right. I've got to turn the various

7     mics off from the last conference.  So pull them close to

8     yourselves and make sure the green light's on.  All right.

9     For the City defendants?

10               MS. GIAMBRONE:  Assistant Corporation Counsel,

11     Jessica Giambrone.  Good afternoon, Your Honor.

12               THE COURT:  Good afternoon.  Okay. You can all stay

13     seated.  We're going to record it and we'll get a better

14     recording.

15               All right. So before we start talking about the

16     discovery, we're going to deal with the request to amend the

17     complaint, or supplement the complaint.

18               I just want to ask one question.  There's sort of

19     two kinds of allegations in there.  One is the thing about the

20     false arrest, which is a separate claim, and then there's this

21     additional information about the 3020(a) proceedings.

22               Does the 3020(a) information need to be any -- in

23     any pleading to be brought up in this case?  It seems like at

24     least it's -- there's no new claim added for it. It's just

25     additional facts.  Anybody?
```

3

1          MS. GIAMBRONE:  Well, Your Honor, I -- no, I don't

2    see how that's an independent claim.

3          So I think to the extent that it comes up in this --

4    in the original complaint it doesn't require any sort of

5    additional amendments.

6          MR. GLASS:  We're more concerned about consequences

7    of the 3020(a) so since he's been -- as we found out during

8    the last deposition of Ms. Brody, you know, there's a policy

9    of what they do with teachers after a 3020(a), which has led

10   to ATR assignment.  He hasn't been able to return to his

11   school.

12         So there are damages that flow from having been

13   subject to a 3020(a) proceeding, apart from the penalty, but

14   also the Board has policies that come into play when a teacher

15   is found guilty of any charge, including reassignment. You

16   know, you lose your -- you can't back into a school.

17         THE COURT:  But your argument is it's a retaliation

18   and it's the same process that was started that you claim in

19   your -- your first claim for relief was First Amendment free

20   speech violation, and then your second claim is a New York

21   State Civil Service law, 75(b) claim, right?

22         MR. GLASS:  Correct.

23         THE COURT:  All right.  So I'm going to deny the

24   motion to supplement and I've got the (indiscernible) on the

25   record now so just -- it's going to take me a couple of

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 4 of 51 PageID #: 868

4

1    minutes to go through it, so sit tight and then we'll get to

2    the discovery discussion.

3           So the proposed amendments, which are set forth in

4    the proposed second amended complaint, which is on the docket

5    at 59-1, includes the request that Desmond White be added as a

6    defendant and William Connors.

7           Mr. White is listed as -- official, and individual

8    capacity as a DOE chief information security officer and

9    proposed Defendant Connors is an NYPD Detective.

10          And they're listed as parties in the proposed

11   amended complaint and the main amendment, in terms of the

12   facts, is the addition of paragraphs 54 through 57, with an

13   amendment to 58 on the two types of facts that are described

14   as basically the continuation of the ongoing 3020(a) process,

15   and the general investigations of Mr. Portelos, as well as an

16   arrest that happened on or about March -- well, sorry.  Arrest

17   related incident that started on March 4th, 2014, and then Mr.

18   Portelos was arrested on March 10th, 2014.

19          And he says that he was held for about 33 hours and

20   there was a decline to prosecute.

21          There are a couple of other proposed amendments to

22   the complaint.  I'm calling them amendments. It's -- these are

23   really supplemental pleadings, but just for the ease of

24   reference the main addition is the third claim for relief,

25   which is about the false arrest.  And then there are some

5

1     additional damages. So those are really what the changes are.

2            So following up on the question that I asked, it

3     seems to me that the 3020(a) related supplement amendments are

4     really unnecessary.  They fit in with what's already been the

5     subject of this litigation and there's no new claim.

6            The false arrest claim is entirely distinct and

7     there is the suggestion, theory, proffer that the complaint

8     was made as a form of retaliation.

9            But in order to investigate any kind of false

10     arrest, false imprisonment, Section 1983, you have to get the

11     heart of the analysis that goes with false arrest, which is a

12     probable cause analysis.

13            That's very, very distinct from the First

14     Amendment/civil service kind of questions that are being asked

15     in the action more generally and requires at this very late

16     stage of the game adding two new defendants, one of whom is

17     listed as a DOE employee, but another who works for the New

18     York City Police Department, which is an entirely separate

19     entity from the parties who have had involvement in this case.

20            To underscore how late this is in this proceeding,

21     I'm going to recount some of what's in the record with regard

22     to the extensive discovery and discovery disputes that have

23     gone on in this case.

24            This case was filed in June of 2012.  There was some

25     back and forth in motion practice.  And one of the earliest

6

1    orders saying -- hard to believe it actually said this, but

2    that discovery was supposed to be over in June of 2013.  That

3    was part of the February, 2013 order that's on the docket.

4              There was an order from May of 2013 that extended

5    back discovery until September of 2013.  There was supposed to

6    have been an extensive discussion or e-discovery at that

7    stage.

8              Discovery clearly did not come to an end because we

9    ended up in September of 2013 discussing the possibility of

10   the filing of a supplemental complaint and counsel were

11   instructed to have discussions.

12             Then we had an extensive letter motion practice

13   about what the confidentiality agreement should be.

14             And they had more briefing on the supplemental

15   complaint.  And time was granted to extend those discussions,

16   but it came to a resolution on 12/17, 2013 where counsel

17   consented to the filing of the amendment.

18             So we already had the first amended complaint filed

19   back in 12/17, 2013, which is already a year -- almost a year

20   and a half after the action started.

21             And the complaint was filed at 41 on the docket a

22   year ago today, and it was answered on the 5th of February by

23   defendant's counsel.

24             We then had more discovery conferences, including

25   extensive discussions about the OSI, SEI, OEO files, which are

7

1      much in contention by plaintiff, who think they're very

2      relevant, and defendants, who they have next to nothing with,

3      what really went on here, but we had that discussion.

4            And there have been other discovery conferences

5      since then, including one on May 27th, 2014 in which we went

6      over many of the email disputes.

7            And then we had a conference in the end of July on

8      the 30th with more orders coming out of that.  Then we had one

9      in September of 2014 and then that is the conference at which

10     we had 10/24 as a close of fact discovery and it didn't happen

11     then.  That's where the issue of the supplemental complaint

12     came up and I expressed some skepticism as to whether this

13     proposed amendment was, in fact, related to the allegations

14     that had been made in the complaint.  I still have that

15     skepticism thing.

16           You move ahead, despite the fact that the case was

17     supposed to be closing in fact discovery -- let me see what

18     the date is.  The request at 59, which was on the 15th of

19     October of this year, to supplement the complaint.  So that's

20     the one that I am denying now.

21           We had more conferences after that, although most of

22     them were finishing up discovery that had already started.  So

23     although plaintiff suggests while discovery was fairly open at

24     that stage, in my view, especially after the significant

25     amount of work that had been done in terms of identifying

8

1        discovery that was going to be produced back in the spring,

2        honing it over the summer, by the fall this was really

3        supposed to be ending.

4               Here we are a week out from the end of the year and

5        we're close to wrapping it up, but anyway the purpose of

6        having that long description on the record of the extensive

7        discovery that's happened is to highlight the fact that there

8        have been multiple scheduling orders set in this case,

9        generously extended time period for the plaintiff to ask for

10       discovery.

11              Defendants have had to put an awful lot of effort

12       into producing that discovery and I think that this case is

13       appropriately looked at in light of those scheduling orders.

14              While the language that the plaintiffs cite -- the

15       plaintiff cites in the papers in terms of wether the amendment

16       should be allowed is about Rule 15 of the Federal Rules of

17       Procedure.  This case is -- and this posture is really about

18       Rule 16.

19              Just to quote some of the relevant authority, you

20       could look at *Amusement Industry, Inc. vs. Stern*.  It's a 2014

21       Westlaw 4460393 case from September 11th of this year.

22              That case was looking at Rule 15, noted that the

23       Second Circuit had set forth standards for assessing motions

24       to amend, but it looked at prejudice and said that -- held

25       that an amendment prejudices a non-moving party when, among

9

1    other things, the assertion of a new claim or defense would,

2    one, require the opponent to expend additional resources to

3    conduct discovery and prepare for a trial or two,

4    significantly delay the resolution of the dispute.

5            That's quoting from *Monahan vs. NYC Department of*

6    *Corrections,* 214 F.3d 275 at 284, Second Circuit 2000.

7            And then it also says "Case law further explains

8    that one of the most important considerations in determining

9    whether an amendment would be prejudicial is the degree to

10   which it would delay the final disposition of the action."

11   That's quoting *MHA Inline Management, Inc., vs. County of*

12   *Nassau*, 843 F. Supp. 2d 287, 341 Eastern District of New York

13   2012.  I'm going to omit the other quotations.

14           The case also notes that while (indiscernible) the

15   delay on its own is not enough as  basis to deny leave to

16   amend, the court has discretion to deny leave to amend where

17   the motion is made.  After an inordinate delay, there's no

18   satisfactory explanation for the delay, or the amendment would

19   prejudice the non-movement.

20           So in this case -- I'm sorry.  The one that I'm

21   reading from, which is the *Ameza* (ph) *Industry* case, the

22   district court noted the moving party did not seek to file the

23   instant motion until 60 days -- less than 60 days before fact

24   discovery was set to close, which is very similar to what

25   happened here in this case.

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 10 of 51 PageID #: 874

10

 1          There's a couple of other important and helpful

 2    cases.  One is an unreported Second Circuit case, *Werking,*

 3    which is W-E-R-K-I-N-G, vs. *Andrews*.  It's 12-CV-3277.  It's a

 4    May, 2013 case.  It's in the Federal Appendix at 526 Federal

 5    Appendix 94.

 6          And in this case the circuit affirmed the district

 7    court's denial of the request to amend the complaint.

 8          In this case, which makes the point that I made

 9    earlier, that really the proper way to look at this is under

10    Rule 16 and is a scheduling question, and not solely is a

11    question of whether leave should be freely given.

12          The Circuit said although leave to amend a complaint

13    generally, open quote, "should be freely given in the absence

14    of any undue delay or prejudice," close quote, which is

15    quoting a case called *Clay vs. Martin*, 509 F.2d. 109 at 113

16    from the Second Circuit, 1975, a party must show, open quote,

17    "good cause," close quote, to amend his or her complaint if

18    the motion is filed after the deadline imposed by the district

19    court in its scheduling order.

20          And the court noted in this case that there was no

21    doubt that the plaintiff's motion was untimely. It was filed

22    eight months after the deadline set by the district court and

23    in order to be allowed to amend, you would have to show good

24    cause for the failure to propose the amendment earlier and

25    you'd have to show good cause, diligence and the amendment

11

1    would not significantly prejudice the non-moving party.

2              So here in this case I don't think I even went back

3    as far in the docket to look at the last date for an

4    amendment, but it had to be many, many, many months before the

5    close of fact discovery dates.

6              And when this motion was filed discovery was set to

7    close in a couple of weeks, and that was already a date that

8    had been extended many times.

9              Additionally, and importantly, this claimed arrest

10   that's the basis for the plaintiff's claim happened back in

11   the spring and this motion was made in October.  The whole

12   thing was raised to the court in September.

13             So it's late and it was after the deadlines and the

14   close of -- what should have been the close of discovery.

15             So a couple of other cases.  There is *Baez*, B-A-E-Z,

16   vs. *Delta Airlines, Inc.*  It's 2013 Westlaw 5272935 and it is

17   from the Southern District of New York, September 18th, 2013.

18             This case similarly talks about how one should

19   consider a scheduling order and the moving party bears the

20   burden of demonstrating a satisfactory explanation for the

21   delay and showing that there would not be prejudice.

22             In particular, the court considered the new claims

23   could cause difficulties for the defendant in the case and

24   what's described as new claims in the *Baez* case are -- they

25   are new because they're based upon different facts and would

12

1      require the application of different law.

2             As I mentioned earlier, the proper analysis for a

3      1983 case based on a false arrest claim includes at its core

4      an analysis of probable cause, which is very, very different

5      from the allegations that are made here about alleged

6      discriminatory -- retaliatory conduct that violates the first

7      amendment.

8             So to defend against these claims at this stage

9      would require a significant opening of discovery.  A, addition

10      of the parties is to individuals who the plaintiff proposes be

11      added to the case and a whole lot more work, and I don't think

12      that it would make anything really more clear.

13             Certainly, this decision is without prejudice to

14      what plaintiff's counsel had noted was a possibility, which is

15      bringing the action as a separate action.

16             My saying that is not to express the view that there

17      is any merit to it, or there's not any merit to it, but just a

18      procedural matter.

19             This is not saying that you can't have your day in

20      court. I'm saying your day in court here needs to be separate

21      from what's happening.

22             Just for the record, a helpful statement of the

23      authority to make this decision is in *Rivers vs. New York City*

24      *Housing Authority,* 2014 Westlaw 1311557, in the Eastern

25      District of New York, March 31st, 2014, and it's another --

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 13 of 51 PageID #: 877

13

1    it's a case in which the magistrate judge made a similar

2    decision about what to do with the supplemental pleading.

3          And that case also looked at whether it was feudal

4    or not.  But in this case I think the prejudice to the

5    defendants who have worked hard to have a complete production

6    of discovery that is focused on the files that belong to the

7    DOE, to the investigative units that have nothing to do with

8    the NYPD would make this very difficult to conclude discovery

9    and I think confuse the issues.

10         So the motion's denied.

11         MR. GLASS:  (Inaudible).  You had mentioned that

12   (inaudible) in denying them and leave to amend was because at

13   least some of the other facts kind of flow, like the 3028

14   consequences flow from the decision.

15         So to the extent that discovery has revealed that

16   there are a number of emails have been uncovered where the

17   Board of Education was in communication with the Police

18   Department, or you know, was aware of the arrest before it

19   occurred, are these facts that are still part of this lawsuit.

20         I understand you're saying a separate 1983 false

21   arrest claim may be against the Police Department or the City

22   of New York, but I just wondered for clarification purposes --

23   you know, because the facts could be amended just to talk

24   about some of the -- as we're alleging that there's a

25   retaliation in having him arrested, the discovery has revealed

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 14 of 51 PageID #: 878

14

1     several emails.

2          And I think we've said in some of the letters you

3     received where, in fact, the Board was involved in that arrest

4     and made the report, and we would like to argue that that's

5     part of the retaliation against -- you know, part of the whole

6     case, which is -- there have been consequences against him

7     from the DOE initiating 3020(a), initiating a false arrest

8     against him, which may be independent of false arrest claims,

9     but may be part of the damages in this action.

10          And I -- part of the reason this wasn't raised later

11     was because the discovery revealed a lot of those emails as

12     part of these productions we were receiving over the summary,

13     which helped us put the pieces together to show that, in fact,

14     there was communications that we were not aware of between the

15     DOE people and the Police Department prior to September of --

16     you know, he didn't know in March when he was arrested exactly

17     how that came about.  Discovery has revealed some of that

18     information.

19          So I guess -- I don't want to -- obviously, you made

20     your decision. I'm just trying to understand -- some of those

21     arrests facts are part of the outflow of the retaliation and

22     to the extent that it's not, let's say, a 1983 claim against

23     the police department, it still seems to be a part of this

24     case.

25          THE COURT:  So one, it's on information that was

15

1      provided in connection with your motion.  Now to the extent

2      you thought it was relevant, you should have mentioned -- but

3      --

4              MS. GIAMBRONE:  If I can respond briefly.

5              THE COURT:  I'm not going to change the decision.

6      If you want to for the record --

7              MS. GIAMBRONE:  Yes, Your Honor.  Just for the

8      record, the actors who are named in this lawsuit are Linda

9      Hill and Armenia Claudio, and they have absolutely nothing to

10     do with the arrest that occurred in the spring of this year

11     and there are no emails that go to their involvement because

12     simply put, they were not involved.

13             Additionally, you know, First Amendment retaliation

14     flows from actors, not from the agency.

15             And in any event, plaintiff certainly could have

16     moved to supplement and then sought discovery related to that

17     to ascertain where the arrest came from.

18             The arrest was directly related to a blog posting

19     where he advised people how to hack into the Department of

20     Education's website.

21             So it certainly wasn't a surprise to him to learn

22     that the Department of Education may have been involved in the

23     filing of a complaint that they had to expend funds to

24     investigate this blog posting about how to hack into their

25     payroll system.

16

1        So we just want to make those points for the sake of

2   the record.

3            THE COURT:  So --

4            MR. GLASS:  I just --

5            THE COURT:  No.  I don't need any more discussion.

6   We've already talked about this.

7            We had an overview discussion and then I gave you a

8   chance -- that was back in I believe September, I gave you a

9   chance to put in the papers.

10           I've seen the proposed complaints and read it and,

11  you know, whether there's anything in discovery that you think

12  might be relevant I don't know, but the bottom line is it's

13  late and it would be prejudicial to the defendants to add this

14  -- October was -- I mean, there were deadlines already, which

15  I've extended to plaintiff's benefit, but I don't think should

16  be to defendant's detriment in terms of expanding this case.

17           The analysis is separate and -- in terms of probable

18  cause under the Fourth Amendment, versus this First Amendment

19  discussion that has been going on in this case.

20           And what counsel said is complimentary to what I'm

21  going to say, which is in the false arrest case, it's the --

22  you're looking at the individual actors and the actors that

23  you allege are the two who were in part the folks who took the

24  active steps with regard to the arrest.

25           And the person at the DOE, which is the DOE Chief

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 17 of 51 PageID #: 881

17

1    Information Security Officer, is not someone who's previously

2    been named as a defendant, and certainly the police officer is

3    not somebody who's had anything to do with this case.

4         So you may have ideas about whether there's some

5    attitude or something towards the plaintiff that informed the

6    complaints that were made, but the way in which one would

7    raise and proceed with a 1983 false arrest case is distinct

8    from what has been going on in this case. And at the end of

9    the day it's too late to bring an issue.

10        If you think you have a viable claim, then file it

11   as a separate 1983 action, if that's what you think should

12   happen.  All right.

13        MR. GLASS:  Just to clarify.  I understand your

14   ruling, Your honor. I'm just trying to understand, are we

15   precluded from raising issues about the arrest in the summary

16   judgment response, for example, because I think we have emails

17   that suggest coordination among the DOE people that are

18   involved in that arrest.

19        So I'm just trying to clarify --

20        THE COURT:  I'm not --

21        MR. GLASS:  Because I expect the next thing --

22        THE COURT:  All right.  Look.  We're going to have

23   this conference.  We're not going to keep going back over

24   every single thing that happens as we go along.  I don't want

25   to hear long, long narratives about what the case is when

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 18 of 51 PageID #: 882

18

1      they're not relevant.  It's not helpful.

2              And that's how many of these conferences have been.

3      We're on the eve of the end of the year. I brought you in here

4      so that we could try to wrap this up.

5              I'm not making a decision about what you can put in

6      your motion for summary judgment.  If you think it's relevant

7      and you have the evidence, put it in.  But it's not a separate

8      claim that you're bringing in this case.  We're not have a

9      false arrest claim against these two individuals, or if you

10     some idea that it involves the other people -- it doesn't --

11     the complaint doesn't explain how it would have anything to do

12     with the plaintiffs who have -- I'm sorry -- the defendants

13     who are already individually named in your case.

14             If you think that you have the information and it's

15     relevant and you think it's somehow -- some kind of damages,

16     then you can present it to the district judge, if she'll let

17     you make your motion for summary judgment, or let's you --

18     anyone makes this motion.

19             All right. Let's talk about discovery.

20             It seems like, from what I can gather from the

21     letters, and I have a couple of different things.

22             We've got the December 22nd letter, which has -- I

23     don't know, sort of goes on a bit, and it originally had an --

24     the attachments are illegible.

25             We got another copy of the privilege log, which I

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 19 of 51 PageID #: 883

19

```
1    think seems to be at the heart of this dispute.

2              Then there's some reference to the letter that's in

3    the record about discovery from September 19th, that's on the

4    docket at 49.  There's an unredacted copy that was not filed

5    on ECF.  We have a copy of it.

6              And there is -- well, it's really a more legible

7    copy of the fax.

8              It seems like what the main issue is you disagree

9    with each other about how certain communication between

10   individuals who are lawyers and other people should be

11   considered, if those lawyers have what plaintiff seems to view

12   as either non-legal or co-legal roles, I guess it seems to be

13   -- to summarize what the argument is.

14             So have you had any discussion about this log or

15   about the issue?

16             MS. GIAMBRONE:  No, Your Honor.

17             Counsel has never reached out to me to articulate,

18   and frankly, I was quite surprised to receive the email,

19   because when we had a conference with Your Honor on the 15th,

20   he actually represented that he believed there was nothing

21   substantial left. We had a deposition of Ms. Rodi.  Nothing

22   was mentioned.

23             You know, there are misrepresentations put in the

24   letter to the court.  The first misrepresentation was that the

25   issue was that there are emails to DOE personnel and non-DOE
```

20

1    personnel, which in a subsequent letter that argument is not

2    pursued, because it's just not the case.

3            Additionally, there are allegations that David

4    Brodsky is an investigator, and I actually reached out to Mr.

5    Brodsky, so that I was precise in explaining what his role is

6    and he is the -- he oversees the Office of Labor Relations,

7    serves as chief labor counsel to the general counsel and the

8    chancellor.

9            He is the lead negotiator in collective bargaining

10   on behalf of the DOE.  With respect to the Office of Labor

11   Relations, it is a legal office that among other things

12   litigates on behalf of the DOE at contract arbitrations, at

13   Curb hearings, et cetera.  They also administer the pre-

14   arbitration grievance process for all unionized DOE employees.

15           The Office of Labor Relations provides guidance and

16   advice to supervisors across the DOE regarding matters

17   pertaining to interpretation of collective bargaining

18   agreements, employee performance and other related matters.

19           This is an individual who acts as an attorney day in

20   and day out.

21           Additionally, I certainly understand the case law

22   that states that simply by virtue of being an attorney ones

23   communications are not privileged and counsel is aware of that

24   because Ms. Rodi is an attorney and -- as was Mr. Becker --

25   not Mr. Becker.  I'm sorry.  Andrew Gordon, and a number of

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 21 of 51 PageID #: 885

21

 1    their emails and correspondences throughout that were

 2    exchanged were not redacted because they work in more of a

 3    personnel capacity, rather than a legal capacity.

 4            So the matters that have been redacted are the

 5    portions in which attorneys at the DOE are working in a legal

 6    capacity, are offering legal advice, are being asked for legal

 7    advice and are offering opinion.

 8            And I frankly was quite surprised to see that we

 9    were revisiting issues which I had believed had already been

10    discussed and exhausted at this point.

11            THE COURT:  All right.  For the plaintiff.

12            MR. GLASS:  First I'd like to explain why there

13    hasn't been any discussion about this because as you recall,

14    Your Honor, after we finished Rodi's deposition, the next day

15    you asked for a status letter.

16            I put a status letter on the -- I didn't hear from

17    Ms. Giambrone, so I wrote her own status letter, and I wrote

18    basically that I was asking for additional time to consider

19    any privilege log issues which we hadn't fully vetted and

20    finished it.

21            And so what happened was as soon as I put in a

22    letter asking for a couple of weeks, Ms. Giambrone called me

23    up, scolded me and said you know I'm going on leave. This is

24    atrocious. I'm going to write to the court and basically

25    proceeded to yell at me for 20 minutes.

22

1          So basically -- then I got the court order that said

2     to do this by Monday, since her letter went on a Thursday or

3     Friday, and so we've had to rush to put this letter together.

4          And we didn't want to close discovery without -- you

5     know, I consulted with my client and we discussed some of

6     these privilege log issues on a very short basis.  We were

7     going to take some time with it.

8          Given that Ms. Giambrone wanted to rush the issue,

9     that's why we're here today.

10          And these privilege log issues, I think as Ms.

11     Giambrone is admitting, is basically her perception of who

12     qualifies as a lawyer, where she decides she deems to be

13     appropriate serving in a dual role.  You know, everyone is an

14     attorney here.  Bronsky's an attorney.  Rodi's an attorney.

15     McClaren is an attorney.

16          Everyone at the Board of Ed. serves as dual

17     functions and it seems like Ms. Giambrone is making her own

18     call as to decide which -- I appreciate she's made some

19     liberal calls and she's given us Mr. Gordon's emails after we

20     had to come back to the court, because we had one -- but when

21     we came back to Your Honor they decided to give us 789.

22          And then there was -- with Ms. Rodi they gave us

23     nothing and then they decided to give us most of her emails.

24     And these have been very helpful emails.

25          So I appreciate that, but Mr. Bronsky's serving as a

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 23 of 51 PageID #: 887

23

1    labor relations counsel.  He's not serving as a lawyer.  Yes,

2    he was a colleague of mine in corporation counsel.

3           Now he's the labor relations counsel. He's not

4    serving for Portelos in this case, as necessarily the attorney

5    in charge here.  He's a labor relations person. McClaren is an

6    investigator.

7           And so I think the appropriate thing would be some

8    kind of -- you know, we would like some kind of in-camera

9    inspection on the privilege log on these particular emails and

10   the court should make the call.  Because you know we're

11   basically -- as we've expressed several times in this case,

12   we're sort of at the mercy of the DOE and how they want to

13   classify their people.

14          Everyone in that office is part of the DOE. Most of

15   them are attorneys and they're just deciding on their own

16   basis what's important and what's not and sometimes we might

17   get something in one production that's excluded in another

18   production.

19          I think we presented Exhibit 1 because we were

20   showing -- we got that as part of the SEI investigation but it

21   was not part of Hill's disclosure.

22          So there's -- it's just -- you're relying on the

23   good faith aspects of the corporation counsel and to the

24   extent -- you know, I'm not saying they're arguing in bad

25   faith, but there is some anger in this case.   The corporation

Case 1:12-cv-03141-LDH-VMS   Document 113-4   Filed 06/30/16   Page 24 of 51 PageID #:
1958
Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 24 of 51 PageID #: 888

24

1    counsel's not exactly involved with my client and so she can

2    make calls -- she has discretion to make these calls on her

3    own without really any legal basis.

4            And so all we're really asking for, Your Honor,

5    you've asked us to identify the privilege log emails. I think

6    it would make sense that the court take a look at them and

7    make its own conclusion rather than to rely on the good faith

8    aspects of the corporation counsel in this case.

9            And it's not a lot of discovery.  The reason we're

10   rushed here today is Ms. Giambrone wanted to finish this

11   before she leaves and I understand that.

12           It's going to be difficult for someone else to take

13   over, but that should not necessarily short circuit the

14   plaintiff from getting what he's entitled to in this case.

15           MS. GIAMBRONE:  Your Honor, I don't intend to go

16   back and forth all evening, but at the deposition of Ms. Rodi,

17   I told counsel I believe discovery is closed.  We have to

18   write a letter to the court tomorrow.

19           If you think differently, let me know and I will

20   respond to whatever it is you take issue with.

21           Counsel talks about rushing discovery. Discovery

22   closed at the end of October and every time we come before

23   Your Honor it's I need a little more time. I need a little

24   more time.

25           The privelege log is a formality.  The two and from,

25

1   the date, the subject, has always been revealed to plaintiff's

2   counsel and he certainly has had plenty of time to peruse

3   these emails

4          And if be believed that there was something that was

5   not privileged there was nothing in my privilege log that

6   illuminated the issue.

7          Your Honor has ordered that in early December he was

8   to identify specific emails that the believed were not

9   appropriately redacted and covered by privilege.

10          So yes, I was surprised when on December 15th I

11   conveyed to the court that I was starting maternity leave on

12   January 1st and out of the blue he requested an extension

13   until December 31st.

14          And I did not call him and yell at him. I called him

15   and said that I believe that his letter was extremely

16   suspicious in its timing and I believed unprofessional and

17   discourteous in making this request at this late juncture.

18          Discovery was closed at the end of October.  The

19   things that were brought up in the letter days ago are things

20   that I can point have been -- counsel has known about since

21   August.

22          THE COURT:  So let me understand.

23          So this -- so when you produce the document, you

24   leave like the header --

25          MS. GIAMBRONE:  Yes.

26

1          THE COURT:  The date, the person --

2          MS. GIAMBRONE:  The subject.

3          THE COURT:  So just taking this list, for example.

4     It says document 1 OSI SEI 5924.  So you know what it is.  You

5     know it's an email.  The date is there.  The subject line was

6     shown?

7          MS. GIAMBRONE:  Yes.

8          THE COURT:  And then you know that it's between

9     Tracy Cooney and I don't know who the other attorneys are,

10    including Courtney Jackson Chase.

11         MS. GIAMBRONE:  Yes. I have always exchanged the

12    parties to the email and the subject and the date.

13         THE COURT:  And so you know when these different

14    document were produced?  Or what -- I don't know if there's a

15    better way to ask that question.

16         When was the last production or --

17         MS. GIAMBRONE:  The last production -- I'm sorry. I

18    have a production log here somewhere.

19         The last production was on October 17th, the Kay

20    Rodi emails.

21         THE COURT:  And how about before that?  Do you know?

22         MS. GIAMBRONE:  Let's see.  The emails from Andrew

23    Gordon were exchanged -- the inadvertent production was

24    September 30th.  So certainly counsel had them to review at

25    that point.

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 27 of 51 PageID #: 891

27

1    And then the subsequent production, which merely

2    redacted privileged matters, were October 17th.

3    THE COURT:  All right.  Why am I only getting this

4    complaint now?  And you're suggesting that this privilege log

5    is the issue, but if you have had the document since October,

6    it's more than two months.  And that's the latest, right?

7    Some of this came earlier, right?

8    MS. GIAMBRONE:  Oh, yes.  The first e-discovery

9    exchange was in August of 2013 and at that point there were

10   3,000 emails exchanged.

11   MR. GLASS:  I don't think we got the privilege log

12   till December though.

13   THE COURT:  Yes, but the point is you had the

14   documents. I mean, this is a nice --

15   MR. GLASS:  Well, they're supposed to provide a

16   privilege -- that is -- the privilege log -- if you know, if

17   you have all the information that is a proxy to the privilege

18   log, which counsel is telling me now that you had.

19   So looking at this for OSC SCI, 5924. You knew it

20   was an email.  You knew it was dated May 22nd, 2014.  You knew

21   what the line was.  Staten Island's principal's misconduct

22   case left open indefinitely and you knew that it was at least

23   between Tracy Cooney and Courtney Jackson Chase.  I don't have

24   it in front of me. But maybe you knew that the other people

25   were attorneys.

28

1           Number two, OSI SCI 5928, 5929 the same -- is that

2    date supposed to be --

3           MS. GIAMBRONE:  December -- yes, that would be

4    wrong.

5           THE COURT:  There's a typo there.

6           MS. GIAMBRONE:  But the date --

7           THE COURT:  The email is about Hill.  It's from

8    McClaren to Cocoolis (ph).  I mean, you had all the

9    information.

10           MR. GLASS:  I think we got it at the end of October,

11    initially.  It has 800 pages and to take a month and then get

12    the privilege log --

13           THE COURT:  No, no, no.  That's not what happened,

14    at least according to what counsel just said.

15           I asked her what the last date of the production

16    was, which was mid-October --

17           MR. GLASS:  No.  October 27th.  We have the letter

18    right here.  Enclosed is -- these are over -- how many pages

19    were there -- there were 700 pages disclosed on October 27th

20    in a letter that we received.

21           MS. GIAMBRONE:  But those were the Kay Rodi emails

22    which are not the subject of plaintiff's complaint.

23           THE COURT:  Right.   Right.  Do you have other dates

24    for the production?  Maybe you can tell by the Bates numbers?

25           MS. GIAMBRONE:  Yes.

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 29 of 51 PageID #: 893

29

1              The A. Gorden emails --

2              THE COURT:  So what's the Bates range?

3              MS. GIAMBRONE:  Which is 3092 to 3846 --

4              THE COURT:  Okay.  So that's -- hold on.  Let me

5    write it down.  Tell me that again.

6              MS. GIAMBRONE:  3090 to 3846.

7              THE COURT:  All right.  So those -- so that's

8    starting with 8 and I think -- so your complaints that go from

9    8  through --

10             MR. GLASS:  Your Honor --

11             THE COURT:  I'm sorry.  That's all.  Basically, from

12   8 to 54, which are the NYCE -- right?  Am I reading this

13   correctly?  Yes.

14             MS. GIAMBRONE:  It seems to cover a bulk of them.

15             THE COURT:  Okay.  That's everything that's there.

16             So you're complaining about the Gordon -- the emails

17   made in the Gordon production.  When was that made?

18             MS. GIAMBRONE:  The inadvertent production was

19   September 30th and the subsequent production was hand

20   delivered on October 17th.

21             MR. GLASS:  Your Honor, it's our recollection that

22   Your Honor suggested the privilege log as a way to get through

23   these issues.

24             THE COURT:  That's for me.  I'm not trying to make -

25   -

30

1          MR. GLASS:  But I'm just trying to say that we

2     didn't get the privilege log that the court suggested until

3     December.  So for us to come back two or three weeks later and

4     say this is our questions, all we're asking Your Honor to do

5     is take a look at these documents in camera.  I'm not asking

6     for a huge production and new discovery here.

7          I'm saying these are timely objections and -- I

8     mean, she raised the privilege log.  We're raising some

9     questions.  I'm just --

10          THE COURT:  Mr. Glass --

11          MR. GLASS:  -- before we close discovery, all I

12     wanted to do is take a look at these emails.

13          THE COURT:  I heard you.  I mean, I'm going to say

14     this again.

15          Every conference you repeat yourself over and over

16     again. I'm listening. I hear it.  It is not helpful, or

17     productive or efficient to do it that way.

18          I understand. You want me to look at it in camera.

19     I can read it on the side. I read your letter and I heard your

20     earlier.

21          My question is you -- according to what counsel just

22     said you had the production that included the emails 3090 --

23     I'm sorry.  This is the Bates numbers for these documents.

24     3090 through 3846, which my looking at this list looks like

25     that includes the privilege log from item 8 through item 54.

31

1          So the vast bulk of this privilege log, about which

2     you are complaining, came in the Andrew Gordon related

3     production, which was made in the middle of October.

4          And in fact --

5          MS. GIAMBRONE:  And the --

6          THE COURT:  Hang on.  Even though it was a problem,

7     you had some documents sooner and we corrected that problem,

8     but you actually -- you had them.

9          So the privilege log is a summary of what's going on

10    here, but there is no explanation that you have made yet as to

11    why you think that you were entitled to wait around for the

12    privilege log when you had the information that basically they

13    typed up and the only addition is privilege.

14         But given that this is -- and had been the point of

15    the discussion, that there is this dispute about Mr. Gordon

16    and a couple of other people as to whether they should be

17    considered lawyers for the sake of the privilege being

18    asserted, you already knew all this.

19         So how come I should be dealing with this on the

20    very, very close of discovery, two months after you had the

21    information?  You say it's timely.  I don't see how it is

22    timely.

23         MR. GLASS:  I mean, given that there are months of

24    production to get -- for the City to come up -- for months and

25    months to get 1,400 emails, for us to do it within a matter of

32

1    five or six weeks that you were suggesting, to say that we're

2    so late that we waited for the last minute, just doesn't

3    strike me as reasonable because honestly, the privilege log

4    does kind of set forth what should have been provided.

5           We had previous discussions about the privilege log

6    earlier and I even suggested let's try to avoid it, because

7    it's going to cause her a mountain of work.

8           Then we finally decided to have the privilege log,

9    which we received in December.

10          I mean, to say that we're dragging this on forever

11   when we're limiting it to -- there's no prejudice to the City

12   at this point to just turn over for the in camera inspection.

13          We're not dragging on discovery here forever and

14   it's being perceived that we're dragging our feet on this when

15   the City -- you know, to blame us for discovery delays just

16   seems completely unfair in this matter given that this is not

17   us causing discovery delays, the bulk of the discovery delays.

18          Most of the discovery delays were due to getting

19   these documents in the first place.

20          And to say that we have to turn it over in a week or

21   two, or we should have done it a week earlier, what is the

22   prejudice to the City before we move for summary judgment,

23   which they want to -- I think they're putting it off until

24   some time in late January to do this final little piece. I

25   don't see how anyone prejudiced by this.

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 33 of 51 PageID #: 897

33

1          So to say that we were dragging our feet, I take

2     objection to that because I don't think we've dragged our feet

3     at all.

4          To say that we have to from 1500 emails while we're

5     trying to finish six depositions and get through all these

6     depositions and we're not spending every hour on this the

7     minute we get it, it doesn't seem unreasonable that we take a

8     few weeks to do that.

9          And to just ask at the very end of the case to say

10    let's just make sure that we have complete discovery, that the

11    Board hasn't -- the City has not just willy nilly -- you know,

12    we raised these issued before.  We raised these issues in

13    September and this is working out the process.  This is a

14    natural outgrowth of the process.

15         We've had these discussion back in -- they were

16    squarely raised in my September letter and we came up

17    solutions.  And now this is just a final wrapping up -- we

18    move forward to get this completed.

19         I mean, this is not the first time I raised this.  I

20    raised this in September and I believe it was the court that

21    suggested let's do the privilege log.  We were originally

22    given a couple of weeks to look at the privilege log, to raise

23    our concerns about particular emails and that's where we're at

24    at this point.

25         It's not undilatory delay at this point and to say

34

1    the Board keeps perceiving this like this case has dragged on

2    forever.  I mean, these dates were established because the

3    facts were growing during the course of the case.  He didn't

4    get arrested till March of 2014.  That's why we don't -- we

5    can't do anything overnight because these facts are developing

6    as the case grew.

7                    THE COURT:  Mr. Glass, stop arguing the whole case.

8                    MR. GLASS:  Well, you wanted a response and --

9                    THE COURT:  I didn't --

10                   MR. GLASS:  -- these things are coming up because --

11   it's because we dragging our feet.  And to say that we're

12   dragging our feet on this, new facts arise during the course

13   of this litigation that require amended complaints, that

14   require raising privilege log, getting documents when the

15   Board decides to finally give it to us, and then to say we

16   have to turn it over in two weeks or we should have thought

17   about this when we got the privilege log in December.  We

18   should have thought to do it the next day. Its just

19   unreasonable.  So --

20                   THE COURT:  Again, you're not answering my question.

21   The last production, which seems to be the bulk of your

22   concern with regard to the dual identity seemingly of some of

23   the employees who are attorneys with the DOE, was produced to

24   you in the middle of October.

25                   They're redacted.  So it's not as if you had to go

35

1    through the papers and imagine where it was that they were

2    asserting privelege. There are redactions in these pages.

3    That's how they presented to you.

4             So it was not a big task to go through hundreds of

5    pages.  It was looking at approximately -- I don't know --

6    maybe -- I don't know how many are in this, but it looks like

7    something like -- fewer than a hundred pages.

8             MR. GLASS:  It was over 800 pages.

9             THE COURT:  Not of issues, not of pages that have

10   anything to do with this privilege dispute.  And you could

11   tell that those were the pages that would be the subject of

12   some dispute, or at least you were concerned because those

13   were the pages with the redactions on them.

14            All right. I think it's late.  Look.  What's your

15   basis for saying something like there's an issue when somebody

16   -- let's look at number one.  So we're going back to the OSI

17   SCI files.

18            The communication between the chief deputy counsel

19   and the general counsel.  And there is nobody else listed

20   who's not an attorney. I don't have the names of the other

21   people, but they're identified as all being attorneys.

22            MR. GLASS:  Your Honor, I just want to make sure,

23   the copy that you're looking at, the privilege log, you have

24   plaintiff notes --

25            THE COURT:  Yes.  You say they were then forwarded

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 36 of 51 PageID #: 900

36

1    to somebody, Candice McClaren, who's the OSI director.

2        (Pause.)

3        MS. GIAMBRONE:  Your Honor, I'd be curious to ask if

4    Mr. Glass has actually looked at these emails or if he's just

5    accepting his client's legal interpretations.

6        THE COURT:  I'm not going to ask about what's going

7    on in their relationship, in the same way I'm trying to avoid

8    asking what's going on in your client.  So what's the basis

9    for saying that communication among lawyers is not privileged?

10       MR. GLASS:  Well, to the extent it's forwarded

11   beyond the lawyers, the privilege is broken.   I mean, it's

12   going to OSI --

13       THE COURT:  It's going to their client.

14       MR. GLASS:  Non-lawyers.

15       THE COURT:  It's going to their client.  Isn't that

16   who that is?  I mean, these are communications between the --

17       MR. GLASS:  Well, who is the client here?  I mean,

18   there's this question -- and then -- that's the tricky part of

19   this case is, you know, is the client Linda Hill?  Is the

20   client --

21       THE COURT:  All right. This is what we're going to

22   do.  Do you have all these documents together?

23       MS. GIAMBRONE:  Not here, Your Honor.

24       THE COURT:  I'm going to do the in camera

25   inspection.  If there is no basis for this, you're going to be

37

1    sanctioned for making a request that has no basis, because I

2    don't see it here, but there is no quick way to resolve this.

3              If it turns out that you're right, that there is

4    some problem with the dual agency, then that's fine.  But four

5    things that seem on their face to be protected, such as

6    communications between the attorneys for an agency, the

7    general counsel's office offering a legal opinion, I don't see

8    any legal basis. It's just going to take too long to do this

9    and I can look at it more quickly.

10             So what do you -- this is what?  800 pages.  Can you

11   flag them?  What's the easiest way for you to give them to me?

12             MS. GIAMBRONE:  I believe I have them all separate.

13             THE COURT:  All right.  So when can you send them

14   over.

15             MS. GIAMBRONE:  I was taking off the rest of the

16   week, but I'll try to get to my office by Friday to put them

17   together.

18             THE COURT:  Is there somebody else who could just

19   mail them over or --

20             MS. GIAMBRONE:  Yes, I'll find a way to get them to

21   you, Your Honor.

22             THE COURT:  All right.

23             MS. GIAMBRONE:  Should we email them, hand deliver -

24   -

25             THE COURT:  You can do either one. If you want to

38

1        email it, it's Scanlon_chambers@nyed.uscourts.gov.   I think

2        if the file is very, very big, it might bounce back.  And you

3        should just call --

4                   MS. GIAMBRONE:  I'll probably hand deliver them.

5                   THE COURT:  Call my deputy and tell her that you're

6        emailing it so that she knows to look there.

7                   All right. So if you want to withdraw your request

8        you can, but if I look at it and there's no basis for this and

9        you have more than sufficient information to make that

10       decision, then I'm going to consider sanctioning this, because

11       we've gone around, and around and around on discovery in this

12       case with a lot of wasted time.

13                  All right.  What else?  Anything else in terms of

14       discovery?

15                  MS. GIAMBRONE:  No, Your Honor.  I think it's

16       concluded at this point.

17                  THE COURT:  How about for plaintiffs -- plaintiff?

18                  MR. GLASS:  I guess I just want a clarification.  To

19       the extent the documents have been provided about the false

20       arrest, are we able to use them in our other action?

21                  THE COURT:  I don't know what your confidentiality

22       order says.

23                  MR. GLASS:  We'll raise it in a letter brief.

24                  THE COURT:  Well, what's the -- I mean --

25                  MR. GLASS:   I do (indiscernible) on the sanctions.

39

1    I mean, a lot of these on their face are talking about --

2    we've raised the government attorney/agency privilege before

3    and a lot of these involve Candice McClaren and other people.

4            So I think it's unfair to put this burden on you to

5    make it -- I have to decide based on what I'm presented with

6    to see if whether there's a good faith basis to just ask the

7    court to look at these emails.

8            We've narrowed it and to say -- we've to put a

9    sanction over -- the latest sanction over my head for trying

10   to just say we'd like someone to look at this is -- some of

11   these questions -- you know, some of these people are serving

12   multiple roles, doesn't seem --

13           THE COURT:  I've asked you over, and over and over

14   what's the basis for saying that you don't think that these

15   particular documents are protected by privilege.  And I

16   started with going back to the paper -- I started with number

17   one, which is identified and you haven't told me anything

18   different.

19           MR. GLASS:  Well, let's look at number two.  Candice

20   McClaren.  Is she serving as a government attorney or regular

21   -- in what capacity is she serving here?  Candice McClaren is

22   the head of OSI.  You're referencing her as an attorney.

23   Andrew Gordon.  There's an email here about Andrew Gordon now

24   acting as an attorney in one case.  You know, now she's

25   claiming privilege because Andrew Gordon is acting as an

40

1      attorney in this situation. I think I saw an email from Andrew

2      Gordon.

3               So I think it's just unfair to put a burden over me

4      to say well, I'm going to sanction you if I conclude that none

5      of these -- these are very complicated questions.

6               You know, David Brosky serves multiple roles for the

7      DOE.  He's a labor relations counsel. He's cited in a number

8      of these descriptions of the documents.

9               So you know, are some of these -- you're going to

10     probably say that they're -- it may be very true that some of

11     these are protected by privilege and some of them are not.

12     And we're just raising a question if they are.

13              THE COURT:  Yes, but you refuse to take out the ones

14     that seem -- based on the information provided, and you're not

15     offering any reason to say why this is wrong.

16              For example, number five.  Communication between

17     Attorneys Candice McClaren and Courtney Jackson Chase

18     discussing varying legal opinions and questions.

19              And the subject line is need guidance on PE's and

20     per session.  And that was part of the OSI SCI chain.

21              If you have some reason for saying that the two of

22     them are not engaged in an attorney/client  -- an attorney

23     communication for the benefit of their client, then let me

24     know.

25              You have -- let's see.  It's not -- let me just be

41

1   clear. It's not a sanction.  This is the rules are.  If you

2   make a meaningless request for discovery or application for

3   which there's not a good faith basis, then that's the

4   situation. I'm not adding anything to the rules.

5        You have -- let's see. Number ten.  DOE employee

6   seeking legal advice from general counsel, forward 202 days no

7   charges.

8        No. 11, email to general counsel's office requesting

9   legal review of draft. No. 12. Communication between DOE

10  general counsel and DOE employee Andrew Gordon about a legal

11  issue.

12       So even if Andrew Gordon is not acting as an

13  attorney, he's discussing with the general counsel legal

14  issue.

15       You have -- let's see.  No. 18, communication from

16  superintendent to DOE attorney seeking legal counsel.  No. 22,

17  communication to chief deputy counsel forwarding email for

18  legal review.

19       Next one, 23, communication to David Brodsky, agency

20  attorney, regarding issues of labor relations seeking legal

21  advice.  I mean, what -- counsel for the defendant may have

22  made a mistake.  That's possible.  Maybe there's -- I agree.

23       If you want to look at the discussion of the fact

24  that I've recently considered, you can look at a case called

25  *Koumoulis*, which goes through this notion that sometimes

42

1     people act in a dual capacity and you don't have a privilege.

2     It's a case about human resources.

3              So I'm aware of the tension in multiple roles, but

4     you don't have any information here that suggests that at

5     least the emails -- many of these email communications are not

6     properly categorized as attorney/client privilege information.

7              So if you want to look at -- it's a parallel.  Just

8     so the record is here, it's *Koumoulis vs. Independent*

9     *Financial Marketing Group, Inc.* --

10             MR. GLASS:  Can you give me the --

11             THE COURT:  290 -- *Koumoulis* -- K-O-U-M-O-U-L-I-S.

12    It's 296, FRD, 28. It's a November 1st, 2013 case. So you can

13    look at what I read and what Judge Chen wrote in adopting it.

14             MR. GLASS:  295 FRD 28?

15             THE COURT:  Yes.

16             MR. GLASS:  Would it be acceptable perhaps to look

17    at the case and then get back to you by the end of the week as

18    to whether we want to pursue or --

19             THE COURT:  Yes.  I think I'm only going to get the

20    -- sure.  But -- well, then what do you want to do?

21             MS. GIAMBRONE:  Well, presumably, I -- I'm assuming

22    that plaintiff has actually looked at the emails for which

23    he's asking for a follow up inspection.

24             So I would ask that he look at the case tonight and

25    follow up with the court tomorrow as to whether or not he

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 43 of 51 PageID #: 907

43

1    continues to pursue further action on these points.

2              THE COURT:  I mean, the case is going to weigh out

3    in a human resources context that sometimes the documents are

4    not privileged.

5              So what that case does is draw a line between the

6    legal advice and conducting the investigation.

7              But the descriptions that are included in the

8    privilege log and more importantly, the subject lines with the

9    individual players make it clear that -- what these kinds of

10   communications are.

11             So it's going to say that yes, there is some merit

12   to this kind of argument.  It's not going to tell you one way

13   or another whether there's to any particular item on the list

14   that's here bears any merit to it.

15             And based on the information I have, there is no

16   merit.

17             MR. GLASS:  The reason I'm asking for a little more

18   time is because the privilege log issue was expedited and due

19   very quickly because of the way the timing works.

20             So I'm just -- I need, as I explained to your clerk

21   last night, I said I haven't had time to fully research the

22   issues.

23             So what I'd like to do is take a little time to --

24   you know, maybe I can reduce the log, perhaps shorten it quite

25   and -- all she'd have to do is have the emails available.  She

44

1     doesn't have -- I know she's going on leave. She'd just have

2     to have them accessible to the next person and that would be

3     it.

4          I mean, I'm not asking her to -- I'm just saying she

5     could pull the email. She represented she has them

6     undredacted, so she could just tell the person these are the

7     emails that we need.

8          I don't think this is like a huge task here.

9          MS. GIAMBRONE:  Well, frankly, this is not all

10    related to the fact that I'm going out on leave.

11         As far back as May 27, 2014 there was an issue where

12    plaintiff brought up privileges and emails and said that if

13    there's an advice of counsel defense, so on and so forth, and

14    at page 62 Your Honor discussed if there's no advice of

15    counsel defense, then there are, in fact, valid privileges

16    that can be asserted.

17         This is not a new issue. This is an issue that has

18    been brought up repeatedly.

19         The privilege log was exchanged at the end of

20    November.  Certainly, counsel was the one who asked for the

21    privilege log and that was done on October 30th.

22         And as I've put on the record, ultimately these

23    emails -- there's no new information contained in the

24    privilege log.

25         So frankly, it's not that I'm going out on leave.

Case 1:12-cv-03141-LDH-VMS   Document 80   Filed 02/02/15   Page 45 of 51 PageID #: 909

45

1    It's the fact that plaintiff is now trying to use my leave for

2    a further extension and to delay these proceedings when I am

3    trying to set up this case so that it can finally be decided

4    on the merits with my successor.

5         And I would hope that he has looked at these

6    materials in order to make the application to the court so it

7    shouldn't be an onerous task to mull over his request

8    overnight and to advise the court and counsel whether or not

9    he does indeed intend to proceed on this.

10        THE COURT:   Okay.  Let me ask. You have all these

11   documents separate. Is that right?

12        MS. GIAMBRONE:  They should be yes,

13        THE COURT:  All right.  Just send it to us. If the

14   list gets reduced, we just won't look at the ones that are not

15   on the list. So it's not going to impede what you're doing.

16        The point you made earlier is that you're saying you

17   identified this issue in September and we've been talking

18   about it in October. So you either know what you're talking

19   about or you don't.

20        And for the record, again, you had all the

21   information that is really relevant, the latest being October

22   -- the middle of October.

23        So we've already talked about his ad nauseam.  So

24   let me know by Friday, close of business, or 5 o'clock on

25   Friday, what it is your position is. I don't need a long

46

1    description.  I just want to know which documents you are

2    asking for me to review in camera.

3              MR. GLASS:  Thank you, Your Honor.

4              THE COURT:  All right. So let's see.

5              All right.  So you have -- that's it, except for

6    this issue, we're done.

7              Just to go back to this police record issue. I don't

8    know -- I have not read -- reread the confidentiality

9    agreement that you have in this case, so I don't know whether

10   it's -- what information in this case could be used in another

11   case. Obviously, if it's the plaintiff's own information, you

12   could use it.

13             MS. GIAMBRONE:  These are emails -- I assume they're

14   contained in the emails which defendants have repeatedly asked

15   for, a confidentiality order, but have been denied.

16             So to the extent -- I don't know what other police

17   documents he's referencing.

18             THE COURT:  I don't either, but I'm not going to

19   make any ruling without knowing what the document is and which

20   document -- which -- what confidentiality you're referring to,

21   so --

22             MS. GIAMBRONE:  Can we just have an affirmative

23   statement from plaintiff that this the last issue and that

24   discovery can be deemed closed?

25             THE COURT:  Do you agree with that statement?

47

1    MR. GLASS:  Just one other question I have about the

2    -- I know you made an order about denying the leave to amend.

3    Is that something that would have to -- if we took issue with

4    it.

5         I'm not saying we are, but if we did, is that

6    something that could addressed before the summary judgment or

7    is that something that has to wait for the end of the case,

8    because it's an interim --

9         THE COURT:  Or you can go to the district judge on

10   it, if you want.

11        MR. GLASS:  I mean, it's just something that - I

12   don't know. I'd have to kind of -- federal jurisdiction,

13   whether it has to wait to the end of the case, if that was the

14   situation.  But --

15        THE COURT:  You can appeal my decision to the

16   district judge.

17        MR. GLASS:  I see.

18        THE COURT:  So you should look at the fairness

19   appellate rules for appealing a decision of a magistrate

20   judge.

21        MR. GLASS:  And we just got that leave to amend

22   issue.

23        THE COURT:  That's fine with me if you want to bring

24   it up before the district judge, but you just need to do it in

25   a timely way.

48

1              MR. GLASS:  Yes.

2              THE COURT:  All right. So you have a date for the --

3              MS. GIAMBRONE:  So is that set for the

4       representation?

5              THE COURT:  I don't know yet.

6              All right.  Besides the privilege issue that we are

7       in the process of resolving, is there any other discovery

8       issue?

9              MR. GLASS:  Part of our letter had raised the issue

10      -- just the one issue about the conflict of interest board and

11      the --

12             THE COURT:  Which letter are you looking at?

13             MR. GLASS:  The letter that we just filed.

14             And there was a representation made that it can't be

15      turned over at the conclusion because it's -- that a conflict

16      of interest board decision would be privileged in some way.

17             THE COURT:  I thought we dealt with that many months

18      ago.  Is that something different or --

19             MR. GLASS:  Well, it's addressed there as an

20      authority for that, but if you --

21             MS. GIAMBRONE:  I responded to that issue, Your

22      Honor, in an August 20th, 2014 supplemental response to

23      plaintiff, whereby he identified these redactions and I

24      explained that they were pursuant to the conflict of interest

25      law.

49

1        THE COURT:  I thought that -- go ahead.

2        MS. GIAMBRONE:  It's been brought up at previous

3   conferences and seemingly plaintiff did not pursue it.

4        So I, again, was surprised that it came up in

5   yesterday's letter.

6        THE COURT:  All right. I'm not ordering them to

7   produce that discovery at this stage.  Plus we already talked

8   about the merits and it didn't seem like it was necessary

9   discovery.

10        All right.  What else?

11        MR. GLASS:  That is part of the privilege log, so

12   we'll address it in our --

13        THE COURT:  We're not revisiting it.

14        MR. GLASS:  No, we're not revisiting it, but to the

15   extent it's raised in the privelege log --

16        THE COURT:  I'm not revisiting that decision.  Go

17   ahead.  What else?

18        MR. GLASS:  I have nothing further at this point.

19        THE COURT:  Not at this point.  Is there any more

20   discovery besides this privilege issue that we've been talking

21   about today?

22        MR. GLASS:  I don't believe we have any outstanding

23   requests at this point.

24        THE COURT:  So do you agree that discovery is

25   closed, except for the privilege issue that's going to be

50

1    resolved by the submission of the documents for in camera

2    review and your confirmation of which, maybe all, maybe some

3    of the items identified on the privilege log?

4            MR. GLASS:  Can I just take one minute with my

5    client just to make sure?

6            THE COURT:  Yes.

7            MR. GLASS:  Thank you.

8        (Off the record from 5:48 p.m. until 5:51 p.m.)

9            THE COURT:  Okay.  So what's the story.  Any other

10   discovery besides the privilege issue that we've been talking

11   about?

12           MR. GLASS:  Well, this is it for this case.  We may

13   have another case, but we'll save it for that case.

14           THE COURT:  All right.  I'm going to resolve the

15   issue of the privilege and certify it to the district judge

16   that discovery's done and let me just go back to the early

17   order.

18           You're going to put in pre-motion conference

19   letters?  Yes?

20           MS. GIAMBRONE:  Yes, I believe at the moment we are

21   to file that by the 29th.

22           MR. GLASS:  29th of January?

23           MS. GIAMBRONE:  December.

24           THE COURT:  Is it -- plaintiff, are you making a

25   motion or you're just going to respond?

51

1          MR. GLASS:  Respond.

2          THE COURT:  All right.  So I'm just going back to

3    what you're going to send over. Do you want to email it?  You

4    could do that or you could send over the paper copies.  Just

5    let us know where to look.

6          All right. I think that's it.  You are soon to be

7    Judge Mauskopf's good hands and I think we're done.  All

8    right.

9          MS. GIAMBRONE:  Thank you for your help.

10         (Proceedings concluded at 5:53 p.m.)

11     I, CHRISTINE FIORE, court-approved transcriber and

12   certified electronic reporter and transcriber, certify that

13   the foregoing is a correct transcript from the official

14   electronic sound recording of the proceedings in the above-

15   entitled matter.

16

17   *Christine Fiore*

18   _____          January 30, 2015

19      Christine Fiore, CERT

20

21

22

23

24

25