UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

FRANCESCO PORTELOS,

                    Plaintiff,

          -against-

CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF EDUCATION; DENNIS
WALCOTT, CHANCELLOR OF NEW YORK CITY
DEPARTMENT OF EDUCATION; LINDA HILL,
PRINCIPAL OF I.S. 49, IN HER OFFICIAL AND
INDIVIDUAL CAPACITY; ERMINIA CLAUDIO, IN
HER OFFICIAL AND INDIVIDUAL CAPACITY AS
DISTRICT SUPERINTENDENT

                    Defendants.

-------------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**

12-CV-3141 (LDH) (VMS)

LaSHANN DeARCY HALL, United States District Judge:

Plaintiff Francesco Portelos brings claims against Defendants City of New York (the

"City"), the New York City Department of Education (the "DOE"), Chancellor Dennis Walcott,

Superintendent Erminia Claudio, and Principal Linda Hill for alleged retaliatory conduct in

violation of the First Amendment and New York Civil Service Law § 75-b.  Defendants move to

dismiss Plaintiff's complaint in its entirety pursuant to Federal Rule of Civil Procedure 56.

**BACKGROUND**

## I.    Plaintiff's Employment History

Plaintiff is a tenured teacher who has been employed by the DOE since May 2007.  (Pl.'s

Counter 56.1 Statement ¶ 1, ECF No. 107.)  In September 2007, Plaintiff was hired by I.S. 49, a

middle school, as a full-time teacher.  (*Id.* at ¶¶ 11-12.)  Plaintiff has been a member of the

United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO (the

"UFT") since commencing his employment with the DOE. (*Id.* at ¶ 4.) The terms and conditions of Plaintiff's employment are set forth in the collective bargaining agreement ("CBA") between the UFT and the DOE. (*Id.* at ¶ 5.) The CBA includes a mandatory, multi-step dispute resolution procedure for the determination of teacher grievances, which culminates in arbitration. (*Id.* at ¶¶ 6-7.) A grievance is defined under Article 22 of the CBA to include, among other things, a complaint that an employee has been subjected to "a violation, misinterpretation or inequitable application of any of the provisions of this Agreement," or "has been treated unfairly or inequitably by reason of any act or condition which is contrary to established policy or practice governing or affecting employees. . . ." (*See* Fain Decl. Ex. B, at 122, ECF No. 105-2; *see also* Pl.'s Counter 56.1 Statement ¶ 7.)

Under New York Education Law § 3020-a, a tenured teacher against whom disciplinary charges have been brought may request a hearing by an arbitrator on those charges. § 3020-a(2)(f), (3)(a). Pending a hearing on any charges, an employee may be suspended, with pay. *Id.* at § 3020-a(2)(b). Pursuant to Chancellor's Regulations, "[t]he authority to suspend all Board of Education employees, pending a trial of charges, rests solely with the Chancellor." (Glass Decl. Ex. 8, Chancellor's Reg. C-770(3), ECF No. 109-8.)

## II. Plaintiff's Speech Activity

Pursuant to Chancellor's Regulation A-655, every New York City public school is required to have a School Leadership Team ("SLT"). (*See* Fain Decl. Ex. F, at 1, ECF No. 105-6.) The SLT is an advisory body that works with a school "to develop education policies and ensure implementation of said policies." (Pl.'s Counter 56.1 Statement ¶ 31.) Among other things, the SLT is responsible for developing a Comprehensive Education Plan ("CEP") and aligning the CEP to the school's budget. (*Id.* at ¶ 32; Fain Decl. Ex. F, at 1.) The SLT is

2

comprised of school faculty and a select group of student parents. (Pl.'s Counter 56.1 Statement

¶ 33.) In September 2011, Plaintiff was appointed to serve as a teacher member of the SLT. (*Id.*

at ¶ 30.) Plaintiff was compensated for his service. (*Id.* at ¶ 36.)

On December 13, 2011, Plaintiff attended an SLT meeting during which he inquired

about the creation of the school's CEP, which set educational goals for the 2011-2012 school

year. (Pl.'s Counter 56.1 Statement ¶¶ 55-57.) There, Plaintiff learned that on December 1,

2011, Principal Hill submitted the CEP. (*Id.* at ¶ 59.) Several days later, Plaintiff emailed

members of the SLT, informing them that he believed Principal Hill's submission of the CEP

violated Chancellor's Regulations and state law because the CEP had been submitted without

prior consultation with the SLT. (*Id.* at ¶ 63.) The SLT met again on January 9, 2012. (*Id.* at ¶

65.) At that meeting, Plaintiff expressed concerns that the educational goals stated in the CEP

were inappropriate given the size of the school and the school's student population. (*See id.* at ¶¶

66-67; Fain Decl. Ex. A, at 178:18-25, 201:2-11, ECF No. 105-1.) Plaintiff also suggested that

the CEP should include an additional goal, directed at the students not already targeted by the

current CEP. (Pl.'s Counter 56.1 Statement ¶ 67.)

On January 26, 2012, a "Liz Simpson" emailed the Special Commissioner of

Investigation (the "SCI"), alleging that Principal Hill had improperly received double payments

for her after school activities. (Pl.'s Counter 56.1 Statement ¶ 99.) The message from "Liz

Simpson," was in fact sent by Plaintiff. (*Id.* at ¶¶ 99-101.) "Liz Simpson" also sent an email to

the SCI on March 20, 2012, raising the same concerns contained in her January 26, 2012 email,

and alleging that then-Assistant Principal Diacomanolis had fraudulently completed her time

cards. (*Id.* at ¶ 100; *see also* Fain Decl. Ex. Z, ECF No. 105-26.) Beginning in March 2012,

Plaintiff engaged in other varied types of speech. In particular, Plaintiff: (1) made allegations of

3

workplace bullying on his blog; (2) reported to the SCI that the assistant principal practiced

corporal punishment; (3) alleged that false accusations were levied against him by various

administrators; (4) complained about his allegedly wrongful reassignment, on his blog and via

other media outlets; and (5) raised concerns at Community Education Council meetings about

alleged misconduct and security issues at I.S. 49.  (Suppl. Compl. ¶¶ 27, 30, 38-39, 42-43, 50,

ECF No. 41.)

## III.    SCI Investigation and the DOE's Discipline of Plaintiff

From January 2012 to March 2013, the SCI received numerous complaints made by or

against Plaintiff.  (Pl.'s Counter 56.1 Statement ¶¶ 123-24; Fain Decl. Ex. GG, at 1, ECF No.

105-33.)  Allegations raised against Plaintiff included that he:  (1) conducted personal business

during work hours; (2) improperly made changes to the school website, including altering

administrator access; (3) reviewed private messages that were sent through the school website;

(4) posted student information on his personal website and social media; (5) installed software on

school computers without proper authorization; and (6) falsely reported that a teacher was not

certified.  (Pl.'s Counter 56.1 Statement ¶ 125.)  On April 25, 2012, Plaintiff was informed by

the DOE that he was the subject of a pending investigation and was not permitted to return to his

teaching position at I.S. 49.[1]  (*Id.* at ¶ 103; Fain Decl. Ex. AA, ECF No. 105-27.)  As a result of

that investigation, Plaintiff was reassigned from I.S. 49 to Petrides Center in Staten Island.  (Pl.'s

Counter 56.1 Statement ¶ 104.)  Plaintiff was subsequently reassigned to an office in Ozone

Park, Queens.  (*Id.*)  In June 2012, while still at the Ozone Park office, Plaintiff emailed then-

Chancellor Walcott regarding his reassignment.  (*Id.* at ¶ 106.)  Chancellor Walcott, in turn,

---

[1] The SCI also investigated complaints made by Plaintiff, including claims that:  (1) the school's assistant
principal had inappropriately touched students; (2) Plaintiff received harassing messages from someone
using a DOE computer; and (3) someone had attempted to bribe a paraprofessional, who was to be a
witness in Plaintiff's sexual harassment claim.  (*See* Fain Decl. Ex. GG, at 9-14.)

referred the email to the Executive Director of HR Connect and Employee Relations at the DOE. (*Id.* at ¶ 107.)

On April 25, 2013, the SCI issued a report with its findings and referred them to the DOE for review and "any action [it] deem[ed] appropriate." (Pl.'s Counter 56.1 Statement ¶ 128; Fain Decl. Ex. GG, at 15.) On May 23, 2013, the DOE's Office of Legal Services sent Plaintiff a letter informing him that probable cause had been found as to charges brought against him, and that he was suspended without pay, effective May 31, 2013. (*See* Pl.'s Counter 56.1 Statement ¶ 130; Fain Decl. Ex. KK, ECF No. 105-37.) The letter was signed by Deputy Counsel for the Chancellor, as designee for Chancellor Walcott. (Fain Decl. Ex. KK )

Subsequently, the DOE brought thirty-eight specifications against Plaintiff, alleging that he had "engaged in violations of the City Charter, Board Rules, Chancellor's Regulations, criminal conduct, violations of Department policies, neglect of duty, conduct unbecoming his position and conduct prejudicial to the good order of the service." (Fain Decl. Ex. R, at 2, 4-11, ECF No. 105-18.) As a penalty, the DOE sought the termination of Plaintiff's employment. (*Id.* at 2.) Plaintiff requested a hearing on the specifications brought by the DOE. (*Id.*) The hearings began on September 5, 2013, and concluded on February 12, 2014.[2] (*Id.*) A final decision was rendered on April 30, 2014, pursuant to which twenty-six of the thirty-seven remaining charges brought against Plaintiff were dismissed as unfounded. (*Id.* at 107.) With respect to the eleven charges that were sustained, the hearing officer determined that there was just cause to discipline Plaintiff. (*Id.* at 103.) The hearing officer found termination of Plaintiff's employment to be

---

[2] The record was reopened on March 14, 2014, in response to information received from the SCI that it had uncovered an error in its report. (Fain Decl. Ex. R, at 2-3.) Based on this information, the DOE withdrew one of the charges against Plaintiff. (*Id.* at 3.)

unwarranted, noting that Plaintiff had the potential to "resume his career as a highly effective educator." (*Id.* at 105.) Instead, the hearing officer fined Plaintiff $10,000. (*Id.* at 106.)

On June 22, 2012, Plaintiff instituted the instant action alleging, among other things, that he had been wrongfully retaliated against for exercising his First Amendment rights. (Compl., ECF No. 1.) He alleged that this retaliation was in the form of: (1) the issuance of disciplinary letters; (2) unsatisfactory teaching observations in March and April of 2012; (3) the initiation of investigations against him; (4) reassignment from his teaching position in April 2012, pending the outcome of the investigation into complaints raised against him; (5) the initiation of disciplinary proceedings by the DOE seeking to terminate his employment; (6) lost "per session" work and tutoring opportunities; and (7) suspension of his personal email account and website. (*See* Suppl. Compl. ¶ 55.) Plaintiff also brought a claim pursuant to New York Civil Service Law § 75-b, alleging that he was retaliated against because of statements he made concerning violations of city and state laws. (*Id.* at ¶¶ 27, 57-61; Defs.' Reply 56.1 Statement ¶ 172, ECF No. 111.)

## STANDARD OF REVIEW

A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden by making a

prima facie showing that there are no genuine issues of material fact, the non-moving party may

defeat summary judgment only by producing evidence of specific facts that raise a genuine issue

for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 256. The court must credit

the evidence of the non-movant "and all justifiable inferences are to be drawn in his favor."

*Anderson*, 477 U.S. at 255.

## DISCUSSION

## I. First Amendment Retaliation Claim

Defendants seek dismissal of Plaintiff's First Amendment retaliation claim on several

grounds. *First*, Plaintiff's speech related to his role on the SLT and the adoption of the school's

CEP is not protected under the First Amendment. *Second*, a retaliation claim cannot be

supported by reports made by Plaintiff under a pseudonym, absent evidence that Defendants' had

knowledge that Plaintiff was the author of the speech. *Third*, to the extent that any speech

authored by Plaintiff is entitled to First Amendment protection, the undisputed facts demonstrate

that Plaintiff was disciplined for the disruption caused by his speech, not the substance of his

speech. The Court addresses each argument in turn.

### A. SLT-related Speech

To succeed on a First Amendment retaliation claim, a plaintiff must demonstrate that: (1)

his speech was protected by the First Amendment; (2) defendant took an adverse employment

action against him; and (3) there was a causal connection between the protected speech and the

subsequent adverse action. *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015). It

has long been settled that speech made by a government employee pursuant to his job

responsibilities is not protected by the First Amendment. *Weintraub v. Board of Educ. of City*

*Sch. Dist. of New York*, 593 F.3d 196, 201 (2d Cir. 2010). This rule stems from "the common

sense realization that government offices could not function if every employment decision

became a constitutional matter." *Connick v. Myers*, 461 U.S. 138, 143 (1983). Thus, in deciding any First Amendment retaliation claim, a court must assess whether the employee spoke as a citizen or pursuant to his duties.

There is not always a clear line between speech made pursuant to an employee's official duties, and that which is made as a citizen. Indeed, the Supreme Court has cautioned that, in analyzing speech in this context, "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform." *Matthews*, 779 F.3d at 173 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 424-25 (2006)). That is, speech may fall within an employee's official responsibilities even if not explicitly included in those duties. *See Garcetti*, 547 U.S. at 424-25 ("[T]he listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes."). As such, the crux of the inquiry must focus on whether the speech was "part-and-parcel" of the employee's "ability to properly execute his duties." *Weintraub*, 593 F.3d at 203 (quoting *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007)) (affirming dismissal at summary judgment of teacher's retaliation claim for filing grievance with union after principal failed to discipline a student because speech was made pursuant to his duties); *Ross v. Breslin*, 693 F.3d 300, 306-08 (2d Cir. 2012) (reversing denial of summary judgment after finding payroll clerk's speech about pay discrepancies was made pursuant to her official duties, and thus not protected).

Plaintiff argues, as a threshold matter, that the Court need not undertake this analysis because the hearing officer already made a determination as to the "question of whether Plaintiff suffered retaliation for protected First Amendment speech of public concern," a finding which is

entitled to collateral estoppel in the current proceedings. (Pl.'s Opp'n 5, ECF No. 120-1.[3])

Factual findings made at a § 3020-a proceeding may, under certain circumstances, be given

preclusive effect. *See Burkybile v. Board of Educ. of Hastings-on-Hudson Union Free Sch.*

*Dist.*, 411 F.3d 306, 312 (2d Cir. 2005) (holding that factual findings were entitled to preclusive

effect where there was "an adequate, full and fair opportunity to litigate the question of cause for

[plaintiff's] termination"). For collateral estoppel to apply, however, "the issue in the second

action [must be] identical to an issue which was raised, necessarily decided and material in the

first action." *Cobb v. Pozzi*, 363 F.3d 89, 113 (2d Cir. 2003) (quoting *Parker v. Blauvelt*

*Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (N.Y. 1999)). Here, the hearing officer's determination,

even if applied, does not reach, as this Court must, the issue of whether Plaintiff's SLT-related

speech was protected by the First Amendment. At most, the hearing officer found that Plaintiff's

speech touched on matters of public concern. (*See* Fain Decl. Ex. R, at 42 (finding that Plaintiff

"rais[ed] issues of public concern with respect to the SLT's compliance with Chancellor's

Regulations").) That does not go far enough.

   Based on the current record, the Court finds that Plaintiff's speech made in connection

with his participation on the SLT is not entitled to First Amendment protection. Plaintiff's

service on the SLT was as a teacher member, not a parent citizen. It is undisputed that Plaintiff

was appointed to serve on the SLT to fill a vacancy created by the departure of another teacher.

(Pl.'s Counter 56.1 Statement ¶ 30.) Plaintiff's children did not attend I.S. 49 during the relevant

time period. (*Id.* at ¶ 3.) Moreover, as an employee of I.S. 49, Plaintiff would not have been

able to serve as a parent on the SLT committee, even if his children were students at the school.

---

[3] References to Plaintiff's memorandum of law in opposition to Defendants' motion for summary
judgment refer to the amended memorandum of law filed with this Court on July 22, 2016. (ECF No.
120-1.)

(*Id.* at ¶¶ 3, 35.)  Next, the speech at issue fell squarely within his responsibilities as a teacher member of the SLT.  The SLT is a Chancellor-mandated committee which functioned to create the CEP and ensure that the CEP was aligned with the school's budget.  (*Id.* at ¶¶ 31-32; Fain Decl. Ex. F, at 1.)  That Plaintiff's job description did not expressly require him to raise concerns about the school's budget or the CEP is of no consequence.  (*See* Pl.'s Opp'n 6.)  Speech can be "'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub*, 593 F.3d 196, 203 (2d Cir. 2010); *see also White v. City of New York*, No. 13-cv-7156, 2014 WL 4357466, at \*10 (S.D.N.Y. Sept. 3, 2014) ("Arguments that job responsibilities do not expressly encompass the speech in question are particularly unpersuasive.") (citing cases). As an SLT member, Plaintiff had an irrefutable obligation to report budgetary inconsistencies and issues with the CEP.  (*See* Fain Decl. Ex. F, at 1.)  For these reasons, the Court finds that Plaintiff's speech made in connection with the SLT was "part and parcel" of his job responsibilities.

The Court's conclusion is not undermined by Plaintiff's argument that his speech while on the SLT related to matters of public concern.  Simply because speech raises issues of public concern does not automatically cloak it in the protections of the First Amendment.  To be protected, the speaker also must have spoken as a private citizen.  *See Ross v. Breslin*, 693 F.3d at 306 (finding that even though plaintiff's speech concerning improper payments to school employees was a matter of public concern, it was not protected by the First Amendment because it related to her duties as a payroll clerk typist).  Plaintiff did not.  Finally, Plaintiff's contention that he was motivated to speak purely out of concern for the school and its students is belied by

the fact that he was compensated by the DOE for his service on the SLT.  (*See* Pl.'s Counter 56.1

Statement ¶ 36; Fain Decl. Ex. A, at 96:14-16.)

## B.  Plaintiff's Speech as "Liz Simpson"

To prevail on a First Amendment retaliation claim, a plaintiff must demonstrate that there

was a causal connection between the protected speech and the subsequent adverse action.  *See*

*Matthews*, 779 F.3d at 172.  Here, Plaintiff maintains that he was subjected to certain retaliatory

conduct as a result of complaints he made to the SCI under the pseudonym "Liz Simpson."

(Pl.'s Opp'n 12-13; *see also* Pl.'s Counter 56.1 Statement ¶¶ 99-101.)  Plaintiff fails to cite to

record evidence that creates a genuine issue of fact as to whether any of the Defendants were

aware prior to mid-April 2012 that Plaintiff made these complaints.  Furthermore, the hearing

officer already determined that there was no credible evidence that Principal Hill knew Plaintiff

had made the "Liz Simpson" reports before mid-April 2012.  (Fain Decl. Ex. R, at 43 n.17.)  This

finding is entitled to preclusive effect.  *See Burkybile*, 411 F.3d at 312 (holding that factual

findings of § 3020-a hearing were entitled to preclusive effect).  Because Plaintiff has failed to

create a genuine issue of material fact that any of the Defendants were aware he made these

complaints under the "Liz Simpson" pseudonym prior to mid-April 2012, as a matter of law, he

cannot establish that he was wrongfully retaliated against for these complaints prior to that time.

## C.  Adequate Justification

Defendants argue that, to the extent the Court finds any of Plaintiff's remaining speech

serves as a basis for a First Amendment retaliation claim, it must nonetheless be dismissed.

Specifically, Defendants contend that they had an "adequate justification" for their conduct,

which defeats any retaliation claim as a matter of law.  (Defs.' Mem. Supp. Mot. Summ. J. 16-

19, ECF No. 103.)  It is true that where protected speech of a government employee has

disrupted or may potentially disrupt the functions of a government entity, that entity has

11

discretion to restrict any such speech. *See Waters v. Churchill*, 511 U.S. 661, 673 (1994) ("[W]e have consistently given greater deference to government predictions of harm used to justify restriction of employee speech than to predictions of harm used to justify restrictions on the speech of the public at large."). However, where the facts underlying the motivation for the adverse conduct suffered by the plaintiff are in dispute, it creates a genuine dispute as to a material factual issue. *See id.* at 681-82 (reversing grant of summary judgment upon finding "[plaintiff] has produced enough evidence to create a material issue of disputed fact about petitioners' actual motivation" for firing her); *see also Caruso v. Massapequa Sch. Dist.*, 478 F. Supp. 2d 377, 383-84 (E.D.N.Y. 2007) (denying defendants' motion for summary judgment on First Amendment retaliation claim where there were "numerous factual issues" as to whether speech caused adverse employment action); *see also Reuland v. Hynes*, 460 F.3d 409, 419 (2d Cir. 2006) (finding "[t]he jury should have resolved whether [defendant] was in fact motivated by a desire to avoid disruption, rather than retaliation, and whether his concern about disruption was reasonable").

Here, there remain questions of fact as to the motivation for the restrictions placed on Plaintiff's speech concerning: (1) allegations of workplace bullying made on Plaintiff's blog; (2) allegations of corporal punishment made against the assistant principal; (3) Plaintiff's statements that false accusations were levied against him by various administrators; (4) Plaintiff's speech relating to his allegedly wrongful reassignment, made on his blog and via media outlets; and (5) Plaintiff's statements at Community Education Council meetings concerning misconduct and security issues at I.S. 49. And, contrary to Defendants' urging, the hearing officer's findings do not resolve this issue. (*See* Defs.' Mem. 16-19.) Indeed, the hearing officer even noted in her opinion that "the causes of the disruption are diverse and . . . are not all attributable to the

misconduct by Respondent." (Fain Decl. Ex. R, at 104.) As such, Defendants' motion on this point is denied. *See Matusick v. Erie County Water Auth.*, 757 F.3d 31, 48 (2d Cir. 2014) (finding no preclusive effect of hearing officer's findings as to basis for employee's termination where there was no evidence hearing officer addressed discrimination claims presented to court)

## II. First Amendment Claim Against Chancellor Walcott and the DOE

### A. Liability of Chancellor Walcott

Defendants contend that Chancellor Walcott is an improper defendant because Plaintiff has failed to put forth any evidence that Chancellor Walcott was personally involved in any of the alleged retaliatory conduct. (Defs.' Mem. 19-20.) The record demonstrates, however, that Chancellor Walcott was involved in at least some of the retaliatory conduct alleged by Plaintiff. Pursuant to Chancellor's Regulation C-770, Chancellor Walcott authorized Plaintiff's suspension pending a determination of the charges brought against him. (*See* Glass Decl. Ex. 8; Fain Decl. Ex. KK.) This is a sufficient basis for Chancellor Walcott to be named as a defendant. *See Nagle v. Marron*, 663 F.3d 100, 113-14 (2d Cir. 2011) (finding potential for liability on retaliation claim against school principal and superintendent based on their decision not to recommend plaintiff teacher for tenure).

To the extent there is a factual finding that Plaintiff's constitutional rights were violated, Chancellor Walcott is nonetheless entitled to qualified immunity as a matter of law. Qualified immunity is applied to protect governmental officials from exposure to civil liability for the exercise of discretionary functions, if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jones v. Bay Shore Union Free Sch. Dist.*, 2016 WL 1056567, at *13 (E.D.N.Y. Mar. 16, 2016) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (citation omitted)). Considering the number and severity of the complaints lodged against Plaintiff that were unrelated to his allegedly protected

speech, and which were detailed in the SCI report sent to Chancellor Walcott prior to his

approval of Plaintiff's suspension, (*see* Fain Decl. Ex. GG), no reasonable juror could find that

Chancellor Walcott's conduct violated any clearly established constitutional rights of Plaintiff.

*See Coollick v. Hughes*, 699 F.3d 211, 221 (2d Cir. 2012) (finding as a matter of law that

defendant was entitled to qualified immunity where her acts were "not objectively unreasonable

in light of the law that existed at the time of her conduct"); *Plofsky v. Giuliano*, 375 F. App'x

151, 154 (2d Cir. 2010) (summary order) (reversing summary judgment and finding defendants

were entitled to qualified immunity on First Amendment retaliation claim where there was

question as to whether a reasonable official would have known speech was protected).

Accordingly, the claims against Chancellor Walcott are dismissed.

## B. Liability of the DOE

"Establishing the liability of the municipality requires a showing that the plaintiff

suffered a tort in violation of federal law committed by the municipal actors and, in addition that

their commission of the tort resulted from a custom or policy of the municipality." *Askins v.*

*Does No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (citing *Monell v. Dep't of Soc. Servs. of City of*

*New York*, 436 U.S. 658, 690-91 (1978)). A plaintiff can successfully allege the existence of

municipal policy or custom by demonstrating:

> (1) the existence of a formal policy which is officially endorsed by the municipal
> entity; (2) actions taken or decisions made by municipal officials with final
> decision making authority, which caused the alleged violation of plaintiff's civil
> rights; (3) a practice so persistent and widespread that it constitutes a custom of
> which constructive knowledge and acquiescence can be implied on the part of the
> policymaking officials; or (4) a failure by policymakers to properly train or
> supervise their subordinates, amounting to "deliberate indifference" to the rights
> of those who come in contact with the municipal employees.

*Saunders v. N.Y.C. Dep't of Educ.*, No. 07-cv-2725, 2010 WL 2816321, at *21 (E.D.N.Y. July 5,

2010).

14

Defendants seek to dismiss Plaintiff's claims against the DOE, arguing that Plaintiff has failed to identify a policy or custom that led to the alleged retaliation. (Defs.' Mem. 20.) However, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *see also Joinnides v. Floral Park-Bellerose Union Free Sch. Dist.*, No. 12-cv-5682, 2016 WL 3841096, at *10 (E.D.N.Y. Jul. 13, 2016) (denying, in part, defendants' motion for summary judgment on § 1983 claim after finding school official was a final policymaker with respect to harm alleged by plaintiff). Where "an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy." *Nagle*, 663 F.3d at 116 (quoting *Clue v. Johnson*, 179 F.3d 57, 62 (2d Cir. 1999)).

Under Chancellor's Regulation C-770, the power to suspend Plaintiff pending a determination of the charges brought against him rested solely with Chancellor Walcott. (*See* Glass Decl. Ex. 8.) This decision was an act of a final policymaker sufficient to create potential liability for the DOE for the alleged retaliation.[4] *See Nagle*, 663 F.3d at 117 (finding superintendent's decision not to recommend teacher for tenure could be final decision giving rise to *Monell* liability); *see also Giscombe v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 396, 406 (S.D.N.Y. 2014) (finding New York City Department of Education could be liable under *Monell*, in part, because it is "well-settled that the Chancellor of the DOE is a 'policymaker' for purposes of § 1983"). Defendants' motion for summary judgment as to Plaintiff's First Amendment claim is denied as to the DOE.

---

[4] Potential liability of the DOE is unaffected by the Court's determination that Chancellor Walcott is entitled to qualified immunity because the defense of qualified immunity is available only to individuals and does not act as a bar against a finding of municipal liability. *See Lynch v. N.Y.C. Board of Elections*, No. 13-cv-4499, 2014 WL 5470795, at *2 (E.D.N.Y. Oct. 28, 2014) (rejecting argument that finding that individual defendants were entitled to qualified immunity necessitated finding that claims could not proceed against municipality).

**III.    Liability of the City**

Plaintiff asserts that the City is a properly named defendant based on investigations conducted by the SCI and the DOE's Office of Special Investigation. Plaintiff's theory of liability is premised on the failure of these entities to timely investigate and substantiate complaints reported by Plaintiff, whereas complaints made against Plaintiff were investigated without delay, and validated, even when lacking factual support. (Pl.'s Opp'n 12-13.)

As with any other municipality, Plaintiff must allege *Monell* liability when bringing claims against the City. Plaintiff has failed to allege, or cite to evidence in the record, of any municipal policy, practice, or custom of the SCI or the DOE's Office of Special Investigation, let alone one that suggests responsibility for a deprivation of Plaintiff's constitutional rights. The failure of Plaintiff to put forth evidence of such a policy, practice, or custom necessarily means that no reasonable jury could find that the City took any adverse employment action against Plaintiff for his allegedly protected speech. *See McKie v. Laguardia Community C.*, No. 04-cv-5555, 2008 WL 4489796, at *4 (E.D.N.Y. Sept. 30, 2008) (granting summary judgment where plaintiff failed to demonstrate *Monell* liability because there was no evidence she was wrongly terminated pursuant to a municipal custom, policy, or practice). For this reason, Defendants' motion for summary judgment as to all claims against the City is granted.

**IV.    Plaintiff's Claims Pursuant to New York Civil Service Law § 75–b**

New York Civil Service Law § 75-b prohibits a public employer from dismissing, disciplining, or otherwise taking adverse personnel action against an employee based on an employee's report to a governmental body of a violation of a law or rule, which "presents a substantial and specific danger to the public health or safety," or which constitutes "improper governmental action." § 75-b(2)(a). Defendants argue that Plaintiff's claims against the individual defendants pursuant to § 75-b must be dismissed because this provision does not

permit claims against individual employees. They are correct. *See Shanahan v. New York*, No. 10-cv-0742, 2011 WL 223202, at \*11 (S.D.N.Y. Jan. 24, 2011) ("Nor may a plaintiff assert a Section 75–b claim against individuals. Section 75–b allows suits only against 'public employers,' which is defined to include the State, but not State officials. Thus, numerous courts have concluded that individuals may not be sued under Section 75-b."); *see also Fry v. McCall*, 945 F. Supp. 655, 666 (S.D.N.Y. 1996) (same).

Next, Defendants argue that Plaintiff's § 75-b claim against the remaining Defendants must be dismissed because the CBA provides a grievance procedure, through which Plaintiff could have raised this claim. (Defs.' Mem. 21-23.) It has long been settled that a public employer can be subject to suit for a violation of § 75-b only if the employee is not subject to a collective bargaining agreement that permits such a claim to be raised in arbitration. N.Y. Civ. Serv. L. § 75-b(3)(b),(c); *see also Munafo v. Metropolitan Transp. Auth.*, No. 00-cv-0134, 2003 WL 21799913, at \*31 (E.D.N.Y. Jan. 22, 2003) (finding public employee could not bring claim under § 75-b where collective bargaining agreement provided plaintiff opportunity to assert claim as a defense in arbitration); *Singh v. City of New York*, 418 F. Supp. 2d 390, 406 (S.D.N.Y. 2005) (same).

Plaintiff does not dispute that he is a member of the UFT, which is a party to a collective bargaining agreement with the DOE that provides a multi-step dispute resolution procedure, which includes arbitration. (*See* Pl.'s Counter 56.1 Statement ¶¶ 4-6; Fain Decl. Ex. B, at 129-31.) In opposing the motion, Plaintiff has made only conclusory allegations that these channels were somehow not available to him. (*See* Pl.'s Opp'n 16-17.) But Plaintiff has not presented any evidence to substantiate these claims. Because Plaintiff was subject to a collective bargaining agreement that provided him with access to an alternative forum in which he could

have raised a § 75-b violation, the Court must dismiss Plaintiff's § 75-b claim as to all

Defendants.

## CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment is hereby

granted, in part, and denied, in part.  Plaintiff's First Amendment claim is dismissed to the extent

it is based on Plaintiff's SLT-related speech, and allegedly retaliatory conduct prior to mid-April

2012 based on Plaintiff's complaints made under a pseudonym.  Plaintiff's claim pursuant to

§ 75-b is dismissed in its entirety.  All claims against Chancellor Walcott and the City of New

York are dismissed.



SO ORDERED:

 /s/ LDH
LaSHANN DeARCY HALL
United States District Judge


Dated: Brooklyn, New York
        August 13, 2016