June 15, 2018

Hon. LaShann DeArcy Hall
U.S. District Court
Eastern District of New York
225 Cadman Plaza E,
Brooklyn, NY 11201



Re: *Portelos v Hill et al*, 12 CV 3141 (LDH)(VMS)

Dear Honorable Judge DeArcy Hall:

I am the *pro se* plaintiff in the above-captioned case. I write to oppose the Defendants' application for costs for the following reasons.

The Defendants filed an application for costs on September 20, 2016. On September 28, 2016, District Court Clerk Douglas C. Palmer ordered "…the taxation of costs shall be held in abeyance given the pendency of the motion for a new trial." On October 31, 2016 the Court denied my motion for a new trial and I subsequently filed a Notice of Appeal on November 21, 2016. The Defendant's again filed for costs on December 6, 2016. District Court Clerk Douglas C. Palmer then posted a notice to the Docket to hold the taxation of costs again given the pendency of an appeal.

After the Court of Appeals denied my request for panel reconsideration on January 8, 2018, the Defendants filed for costs again on January 29, 2018. Attorney Bryan Glass, still representing me at the time, filed a stay for taxation of costs pending a Petition of Writ for Certiorari that I had decided to file on my own *pro se*. On February 27, 2018, District Court Clerk Douglas C. Palmer posted another notice holding the taxation of costs given the pendency of my appeal to the United States Supreme Court.

I ultimately wound up not filing the Petition for Writ of Certiorari by the deadline. On April 17, 2018, I sent an email to Defendants' counsel Jessica Giambrone and informed her that I am now representing myself *pro se* and that should she file for Bill of Costs, I would have to oppose them for reasons I am sharing below. I had made an appointment to meet with Cat Itaya, Director of the Federal Pro Se Legal Assistance Project, to draft an opposition to a potential refiling of costs, but postponed it

since no filing was made as of April 17, 2018. Defendants' counsel filed for Bill of Costs on April 18, 2018, and despite me informing her that I am representing myself, she did not send me a copy of such filing in hardcopy or electronically. I was not aware of this filing and my former attorney Bryan Glass stated that he too did not receive any ECF notification. It should be noted that Mr. Glass did somehow receive an ECF notification for a subsequent May 22, 2018 order from the Court granting my May 9, 2018 motion for extension of time to file a response to Defendants costs.

The Defendants' application for costs should be rejected because: defendants have not proved that they are entitled to costs, (a) either under the relevant local rule, (b) or in equity.

The defendants have failed to comply with the local rule governing costs, because they have not stated or proven that they used the transcripts at trial or at summary judgment. EDNY Local Rule 54.1 provides that a prevailing party is entitled to costs as follows:

> Depositions. Unless otherwise ordered by the Court, the original transcript of a deposition, plus one copy, is taxable if the deposition was **used or received in evidence at the trial**, whether or not it was read in its entirety. Costs for depositions are also taxable if they were **used by the Court in ruling on a motion for summary judgment or other dispositive substantive motion**. Costs for **depositions taken solely for discovery are not taxable.**

EDNY Local Rule 51.1(c)(2). The defendants have not shown that the deposition transcripts they reference in their motion were used at trial. Nor have they shown that the transcripts were used at summary judgment. For this reason, the costs motion should be denied. In fact, the only time these deposition transcripts were referenced was when I was under cross by attorney Jessica Giambrone and she believed my testimony at trial contradicted my deposition. After opening, and sifting through my voluminous deposition transcript, Defendants counsel stated "I will abandon this, your Honor." (Trial Transcript pg 484 line 20 – 486 line 6).

In addition, the imposition of costs is inappropriate in this case. The case was not filed in a frivolous fashion, nor was I litigious. There was a good faith basis to file this case against the NYC Department of Education and the City of New York, as well as my former principal and superintendent.

The case was filed in June 2016 and ended in April 2018. We survived motions to dismiss as well as partial summary judgement. Furthermore, the equities disfavor reimbursing many of defendants' costs, which are due to defendants' own needless extravagance, and, in some cases, misrepresentations.

- My deposition ran past the allowable 1 day or 7 hours indicated in FRCP Rule 30. Furthermore, Attorney Jessica Giambrone spent much of the asking me questions about my college years at Polytechnic University School of Engineering. No evidence that my deposition was used in argument, or during trial, was proffered, yet I am being asked to pay $2,032.55 for this overly lengthy deposition alone.

- The Defendants' counsel ordered transcripts of pre-trial conferences and paid expedited full price costs, even during early stages of the case when the same transcripts were made available on ECF for .10 cents per page. For example, Exhibit E of the Defendants' Bill of Costs states that they paid $659.34 for a May 27, 2014 conference with Magistrate Judge Scanlon. The same transcript was acquired by me for only $9.90 from ECF. This scenario of paying top dollar for transcripts available on ECF for cheaper is repeated several times. One such other instance was shared in Defendants' Exhibit C. A conference was held before Magistrate Judge Scanlon on April 17, 2013. The transcript for that conference was ordered over a year later and Defendants' paid $6.66 a page. The transcript was made available on ECF on April 23, 2014 for $5.60 and the Defendants paid $372.06. I will not take up the Court's time in sharing every instance where the Defendants paid more for what was available for a lot less. Furthermore, the Defendants have not proffered information that the transcript from these conferences were used.

- Defendants' counsel stated in paragraph 11, that they paid for a conference before Magistrate Scanlon on October 5, 2014, while the docket does not indicate such a conference took place on that date.

3

- On many occasions Defendants' counsel Jessica Giambrone violated FRCP Rule 30 (c)2 when she more than objected to form during depositions my attorney conducted. For pages and pages, that I was charged for, Attorney Jessica Giambrone became argumentative, disrupted depositions and question flow and even began testifying for the witnesses. I raise these issues here in my opposition to the bill of costs as the entire case has been a financial hardship and Ms. Giambrone's many unnecessary arguments were transcribed and charged to me at nearly $4 a page. Throughout all the transcripts of the witnesses we deposed, Ms. Giambrone interjected 1,098 times and many were not standard objections to form.

- Gross evidence of potentially sanctionable attorney misconduct took place when Ms. Giambrone knowingly testified for witness Richard Candia. During his deposition Ms. Giambrone stated that my school's Comprehensive Education Plan (CEP), that Defendant Principal Linda Hill submitted, without the proper approval, was just a "draft." This issue was a main argument of protected speech we argued. See excerpts of FCRP Rule 30 violation and others below:

```
                                                           63
 1                      R. CANDIA
 2              A.    I don't know if he was
 3     displeased about that
 4              Q.    Was that your impression of
 5     what happened that she submitted it without
 6     --
 7              MS. GIAMBRONE:   She submitted a
 8     draft --
 9              A.    She submitted a draft.  So
10     there was still opportunity to make final
11     changes
12              Q.    Did she say it was a draft?
13              A.    She did say it was a draft
14     yeah.
```

4

[Page 84]
```
 1                 ANDREW GORDON
 2   network office, how many others were --
 3            MS. GIAMBRONE:  Counsel, how is
 4        this related to the charges in this
 5        lawsuit?
 6            MR. GLASS:  I think he's been very
 7        outspoken about this and it's his First
 8        Amendment --
 9            MS. GIAMBRONE:  And what does the
10        substance of his allegations have to do
11        with his First Amendment rights?
12            MR. GLASS:  If you want to leave
13        an objection to relevance, that's fine.
14        I'm not here to debate this.  I only
15        have two hours --
16            MS. GIAMBRONE:  I do think --
17            MR. GLASS:  It's very relevant --
18            MS. GIAMBRONE:  I do think you
19        have to do an offer of proof when --
20            MR. GLASS:  No, I don't have to do
21        an offer of proof to you.
22            MS. GIAMBRONE:  -- you're veering
23        into topics that are completely
24        irrelevant to the cause of action.
25            MR. GLASS:  If you would like to
```

[Page 85]
```
 1                 ANDREW GORDON
 2        bring Mr. Gordon back and you want to
 3        spend the next half hour arguing this
 4        point, I'll be happy to do so.
 5            But I think we have like not that
 6        much time left and if you want to waste
 7        my time with that, feel free and I'll
 8        bring it up with the judge and you can
 9        explain why I need to provide you an
10        offer of proof during my deposition.
11   Q.   My question is --
12            MS. GIAMBRONE:  How much more
13        questioning do you have?
14            MR. GLASS:  I haven't even started
15        the documents yet so we're coming back.
16            MS. GIAMBRONE:  Okay, so it's 2:00
17        o'clock so then --
18            MR. GLASS:  I would like to finish
19        this point and I think it's a fair
20        point.
21            MS. GIAMBRONE:  No, I think it's
22        2:00 o'clock and if you have a lot more
23        to go, then we're going to stop now and
24        we will take it up with the judge.
25            MR. GLASS:  It's not 2:00 o'clock.
```

[Page 86]
```
 1                 ANDREW GORDON
 2        It's 1:55 so we'll go five more
 3        minutes.
 4            MS. GIAMBRONE:  Well, I'm going to
 5        ask you to go on to a different topic
 6        or we'll call the judge.
 7            MR. GLASS:  The Rubber Rooms, I
 8        brought it up yesterday.  It's an issue
 9        to be discussed.  I mean I talked to
10        you about amending the complaint
11        because I think this is part of the
12        retaliation.
13            MS. GIAMBRONE:  No, you discussed,
14        for the record, you discussed amending
15        the complaint to add Erminia Claudio
16        and to add a claim of retaliation from
17        his reassignment from Petrides to
18        Queens.  I --
19            MR. GLASS:  Because they also
20        spoke about --
21            MS. GIAMBRONE:  I'm not done
22        speaking.
23            MR. GLASS:  Well, it's my
24        deposition.
25            MS. GIAMBRONE:  Can I finish my
```

[Page 87]
```
 1                 ANDREW GORDON
 2        point?
 3            MR. GLASS:  Finish your point,
 4        please.
 5            MS. GIAMBRONE:  The topic of
 6        Rubber Rooms and this issue was not
 7        brought up with the judge yesterday and
 8        if you have --
 9            MR. GLASS:  I don't believe you
10        were listening, but it was.
11            MS. GIAMBRONE:  And if you have a
12        litany of questions on this topic, I'm
13        going to ask the deposition cease at
14        this point and we will bring it up with
15        the judge.  I don't see how it's at all
16        relevant to the cause of action.
17            MR. GLASS:  It's not my burden to
18        establish relevance for you in my
19        deposition.  It's clearly related to
20        his activities at the time.
21            I've asked the last 15 minutes of
22        questions related to this topic about
23        reassignment --
24            MS. GIAMBRONE:  And I've given you
25        leeway with regards to reassignment
```

```
[Page 99]
 1                ANDREW GORDON
 2       but --
 3          MR. GLASS:  You're not the judge
 4       here.  You don't get to decide.  You're
 5       not the trial person here.
 6          We stipulated to the Federal
 7       objections to form.  It doesn't allow
 8       you to preclude areas based on your
 9       determination of what's relevant in
10       this lawsuit.  It's ridiculous.
11          MS. GIAMBRONE:  Counsel, you said
12       if I have an issue, bring it up with
13       the judge.  If the deposition is not
14       going to end, then I will.  You have a
15       lot more evidently.  You said you have
16       a list of documents so then --
17          MR. GLASS:  I would just put on
18       the record that she is interfering with
19       the deposition.  I would like to put it
20       on the record and if it's going to
21       delay things, it's going to cause harm.
22          I can move it to the next time
23       when you bring your witness back and we
24       can revisit it again, but I think
25       there's fairly a lot more questioning
```

```
14          Just because he has a little computer
15       skills doesn't mean that he did anything wrong
16       every time you accuse him of doing something.
17       That's what a big part of this case is about.
18          MS. GIAMBRONE:  Maybe you should start
19       actually lawyering in this case.
20          MR. GLASS:  I'd like to make a record of
21       that.
22          MS. GIAMBRONE:  It's on the record,
23       Bryan.
24          MR. GLASS:  We're going to ask for, you
25       know, compensation for wasting our transcript like

              NEW YORK ONE REPORTING, INC
                    (718) 996-2200
```

```
                                                    22
 1                A. Gordon
 2       she did the last time if this continues.  We'll be
 3       making application for cost.
 4          MS. GIAMBRONE:  (Laughing) let's move to
 5       something relevant.
```

Finally, it would be a tremendous hardship for me to pay for the costs requested. Despite what the case outcome turned out to be, I believe I had a good faith reason to file what turned out to be a very costly case. On top of the financial burden this case has caused, I was fined $10,000 for "disturbing the system" after alleging Defendant Principal Linda Hill engaged in misconduct. She was found guilty of doing so and paid only a $801 fine.

For all of these reasons stated above, I respectfully request that the bill of costs be denied.

Respectfully Submitted:

Francesco Alexander Portelos

Plaintiff, *pro se*

Date: 6/15/18

6

## AFFIRMATION OF SERVICE

I, FRANCESCO PORTELOS, declare under penalty of perjury that I have served a copy of the foregoing <u>opposition to defendants' application for costs</u> on opposing counsel, whose address is 100 CHURCH ST. 4TH FL., NY, NY 10007 by the following method:

*Check one*

____ US Mail.

__X__ Electronic Mail.

____ Fed Ex, UPS, or other private carrier.

Dated: 6/15/18

Staten Island, NY

FRANCESCO PORTELOS

52 WIMAN PL
STATEN ISLAND, NY 10305